**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | |
|---|---|
| ANNA GONZALEZ, on behalf of herself and all others similarly situated,<br><br>                          Plaintiff,<br><br>vs.<br><br>STATE FARM LIFE INSURANCE COMPANY,<br><br>                          Defendant. | Civil Action No.  5:20-cv-00617<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Anna Gonzalez ("Plaintiff"), on behalf of herself and all others similarly situated, brings this Complaint against Defendant State Farm Life Insurance Company ("State Farm" or "Defendant"), and states as follows:

## NATURE OF THE ACTION

1.    This is a class action brought on behalf of Plaintiff and similarly situated holders of universal life insurance policies issued by State Farm and its predecessors in interest issued using FORM-94030 (the "Subject Policies").

2.    Plaintiff seeks to represent a class of Texas consumers who own or owned a Subject Policy and who have been forced to pay unlawful and excessive cost of insurance ("COI") charges to State Farm or its predecessors in interest (the "Class"). Defendant has caused material harm to Plaintiff and the proposed class by improperly draining monies they have accumulated in the Subject Policies.

3.    Plaintiff's claims and those of the proposed class are exclusively supported by the plain language of the Subject Policies and are not derived from any alleged conversations had, or

documents reviewed, at the time of sale. Indeed, the Subject Policies are form contracts, and Plaintiff and the Class did not—and were not able to—negotiate any of the terms in these contracts.

4. The Subject Policies "unbundle" the various charges and credits charged to the policy owner; that is, the monthly deductions are broken down into an array of discrete charges and credits.[1] State Farm is contractually bound to deduct only those charges that are explicitly identified and authorized by the terms of the Subject Policies.

5. Despite unambiguous policy language in a fully integrated agreement, State Farm deducts monthly COI charges from the Subject Policies in excess of amounts specifically permitted by the terms of those policies. Every unauthorized dollar taken from policy owners is one less dollar that can be used to: invest through the Subject Policies; pay future premiums; increase the death benefit; use as collateral for policy loans; or withdraw as cash.

6. The plain language of the Subject Policies establishes that the COI charge is used to cover the insurer's mortality risk (*i.e.*, the expected probability that the insured will die in a given policy year).[2] The fact that the COI charge is intended to reflect the insurer's mortality risk (and not its profit) is also established by the fact that these policies contain a separate line item for the "Expense Charge" to be paid by the insurer to State Farm.

7. Because COI charges are intended to compensate the insurer for mortality risk, insurers—including State Farm and its predecessors in interest—are contractually obligated to compute these charges based on their expectations of future mortality, not their desire to garner a

---

[1] *See* DICTIONARY OF INSURANCE TERMS at 550 (6th ed. 2013) (defining UL policies as "coverage in which the investment features, mortality element and cost factors of a life insurance policy are separated, permitting each part to be independently analyzed"); *see also, id.* at 557-58.

[2] For that reason, it is commonly referred to in the industry as the "mortality charge" or the "pure cost of protection."

---

greater profit on the Subject Policies. Thus, when mortality rates are projected to decline because life expectancy is *increasing*, insurers are required to *reduce* their COI charges. Conversely, when mortality rates are projected to go up because life expectancy is *decreasing*, insurers may increase their COI charges, subject to certain requirements and constraints (*e.g.*, the "maximum monthly cost of insurance rates").

8.    That mortality expectations have improved significantly over the past several decades is now well-documented, and this trend is widely projected by the life insurance industry to continue. Notwithstanding the substantially improved mortality expectations, State Farm breached its contracts with Plaintiff and the Class and abused its contractual discretion by not reducing its COI charges.

9.    Policyholders' comfort with this arrangement is due to their trust—and the insurer's contractual commitment—that the insurer will dutifully decrease COI charges to reflect improved life expectancy (*i.e.*, reduced projected mortality).

10.  State Farm, however, has been abusing this trust and breaching its contractual commitment by (a) basing its COI charges on non-permissible considerations, such as lapse rates, and (b) not reducing its COI charges in light of the well-established decreased mortality rates. These breaches allowed State Farm to convert COI charges from a cost-recovery mechanism into a profit vehicle. By retaining the difference between its projected mortality expenses and the COI charges incurred by Plaintiff and the Class, State Farm has earned tens—if not hundreds—of millions of dollars in extra profit.

## **THE PARTIES**

11.  Plaintiff Anna Gonzalez is a resident of California. Plaintiff Anna Gonzalez entered into a Subject Policy with State Farm (Policy No. LF-2153-7359) that became effective on May

17, 2004 (the "Anna Gonzalez Policy"). Ms. Gonzalez's policy was issued while she resided in Texas. Ms. Gonzalez was both the "owner" and the "insured" under the Anna Gonzalez Policy, State Farm was the effective and liable insurer of the Anna Gonzalez Policy, and to Plaintiff Anna Gonzalez's knowledge, State Farm has never reduced the COI charges it deducts from this policy. A copy of the Anna Gonzalez Policy[3] is attached hereto as **Exhibit A**.[4]

12.  Defendant State Farm is a life insurance company organized and existing under the laws of the State of Illinois, and maintains its principal place of business in Bloomington, Illinois. Defendant is authorized to transact business within the state of Texas.

## JURISDICTION AND VENUE

13.  This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1332(d) because this is a class action with diversity between at least one class member (including Plaintiff) and one defendant and the aggregate amount of damages exceeds $5,000,000. This action therefore falls within the original jurisdiction of the federal courts pursuant to the Class Action Fairness Act, 28 U.S.C § 1332(d).

14.  This Court has personal jurisdiction over State Farm because it is licensed to sell insurance in this District and because it sold the Subject Policies to residents of this District, including to Ms. Gonzalez.

---

[3] Because the named Plaintiff's UL policy is a Subject Policy, references herein to the Subject Policies refer jointly to the Plaintiff's Policy and the Subject Policies held by the Class.

[4] Sensitive personal and health information has been redacted from the Exhibit attached hereto.

15.   Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because the events giving rise to Ms. Gonzalez's cause of action primarily occurred in this District.

## FACTUAL ALLEGATIONS

**A.**    **The Subject Policies**

16.   State Farm issued the Subject Policies in the United States using standardized contracts notated as FORM-94030 between roughly January 1, 1994 and June 30, 2004. On information and belief, State Farm continues to accept payments on the '94 Policy from roughly 540,000 policyholders in the United States.

17.   Owners of the Subject Policies were not permitted to negotiate any of the terms; the terms of the Subject Policies are not subject to individual negotiation and are materially the same across the Class. They cannot be altered by an agent's representations at the time of sale, and any endorsements, amendments, or riders must be signed by an officer to be valid.

18.   State Farm has administered and currently administers all aspects of Subject Policies. In this capacity, State Farm has (and continues to) collected premiums and set, assessed, and deducted policy charges, including the COI charge, on the Subject Policies.

19.   Unlike standard term life insurance policies, the Subject Policies provide policy holders an investment, savings, or interest-bearing component. The Subject Policies refer to this component as "Cash Value," "Account Value," or something similar.[5]

20.   Under the terms of the Subject Policies, the policy owners make premium payments to State Farm, and State Farm deducts the monthly charges authorized by the policies. The

---

[5] This Complaint refers to this component as the "Cash Value," but regardless of the specific terminology used, the purpose of this component is the same in each of the Subject Policies.

remaining amount is then deposited into the Cash Value, which consists of an interest-bearing account that accumulates over time.

21. The funds in the Cash Value belong to the policy owner. State Farm holds these funds in trust for the policy owners and may only access or withdraw these funds as expressly authorized by the Subject Policies.

22. The Subject Policies, including the Plaintiff's Policy (Ex. A at 9), authorize State Farm to take a "Monthly Deduction" from the Cash Value of each policy each month. The Subject Policies expressly define the Monthly Deduction as follows:

> **Monthly Deduction.** This deduction is made each month, whether or not premiums are paid, as long as the cash surrender value is enough to cover that monthly deduction. Each deduction includes:
> (1)   the cost of insurance,
> (2)   the monthly charges for any riders, and
> (3)   the monthly expense charge.

23. The Subject Policies, including Plaintiff's Policy, set the "monthly expense charge" at a specific dollar amount. In the case of the Plaintiff's Policy, the expense charge is set at $5.00. *See* Ex. A at 3.

24. The Subject Policies, including Plaintiff's Policy (Ex. A at 10), also expressly define how the COI charge is determined and calculated:

> **Cost of Insurance.** This cost is calculated each month. The cost is determined separately for the Initial Basic Amount and each increase in Basic Amount. The cost of insurance is the monthly cost of insurance rate times the difference between (1) and (2), where:
> (1)   is the amount of insurance on the deduction date at the start of the month divided by 1.0032737, and
> (2)   is the account value on the deduction date at the start of the month before the cost of insurance and the monthly charge for any waiver of monthly deduction benefit rider are deducted.
> Until the account value exceeds the Initial Basic Amount, the account value is part of the Initial Basic Amount. Once the account

value exceeds that amount, if there have been any increases in Basic Amount, the excess will be part of the increases in order in which the increases occurred.

25.   The Subject Policies, including Plaintiff's Policy (Ex. A at 10), explicitly establish the factors State Farm may use to determine "Monthly Cost of Insurance Rates" (the "COI Rates"), which are in turn used to calculate the COI charge (as set forth above) that is deducted from the Cash Value each month:

> **Monthly Cost of Insurance Rates.** These rates for each policy year are based on the Insured's age on the policy anniversary, sex, and applicable rate class. A rate class will be determined for the Initial Basic Amount and for each increase. The rates shown on page 4 are the maximum monthly cost of insurance rates for the Initial Basic Amount. Maximum monthly cost of insurance rates will be provided for each increase in the Basic Amount. We can charge rates lower than those shown. Such rates can be adjusted for projected changes in mortality but cannot exceed the maximum monthly cost of insurance rates. Such adjustments cannot be made more than once a calendar year.

26.   Thus, under the explicit terms of the Subject Policies, State Farm is authorized only to use the Insured's age, sex, applicable rate class, and projected changes in mortality when determining the Subject Policies' COI Rates.

27.   Indeed, State Farm has previously admitted that a rate "based on" factors explicitly identified in the Subject Policies must be determined using only those identified factors. For example, in *Alleman v. State Farm Life Insurance Co.*, 334 Fed. App'x 470, 472 (3rd Cir. 2009), the court affirmed summary judgment in State Farm's favor and rejected the plaintiff's argument that a provision in a life insurance policy stating that a charge would be "based on the Insured's age last birthday and sex" should be read to include other undisclosed factors because, "[b]y the plain language of these policies, it is clear that the insureds' age and sex are the only mortality factors relevant to that rate . . . ."

---

28. Recently, the United States District Court for the Western District of Missouri, reviewing the language in a later issued policy that is identical to the language at issue here, determined that "no reasonable lay person would expect that State Farm was permitted to use any factor it wanted to calculate the cost of insurance. While an insurance company would be expected to make a profit, the terms of the insurance policy at issue are so dense, *a lay person would not understand that State Farm expected to derive profit from the COI*." *Vogt v. State Farm Life Ins. Co.*, No. 2:16-CV-04170-NKL, 2018 WL 1747336, at *4 (W.D. Mo. Apr. 10, 2018) ("*Vogt*") (emphasis added).

29. As the above establishes, the "Expense Charge" and the "charges for any riders" are the only means by which State Farm was contractually permitted to earn a profit margin on the Subject Policies; the cost of insurance charge was only intended to reimburse State Farm for its mortality risk.

**B.** **State Farm, in Breach of its Contracts with Plaintiff and the Class, Considered Impermissible Factors in Setting the COI Rates**

30. Age, sex, and rate class are factors commonly used within the life insurance industry to determine the mortality expectations of an insured or group or class of insureds.

31. An insured would reasonably read age, sex, and rate class, in combination with the disclosure that rates can only be adjusted for "projected changes in mortality," and understand that only mortality expectations are used to determine COI Rates.

32. By specifically identifying age, sex, and rate class as the defining components of the COI Rate, Plaintiff and the Class, on the one hand, and State Farm, on the other, agreed that mortality expectations are what determines the COI Rates under the Subject Policies. This is

further confirmed where the Subject Policies states that "[s]uch rates can be adjusted for projected changes in mortality." Ex. A at 10.

33. Notwithstanding the clear terms of the Subject Policies limiting the factors State Farm may consider in determining the COI Rates, State Farm uses other factors, which are not authorized by the Subject Policies, when determining these rates, including but not limited to the following:

    a. Expense experience;

    b. Persistency;

    c. Taxes;

    d. Profit assumptions;

    e. Investment earnings;

    f. Capital and reserve requirements; and

    g. Other unspecified factors.

34. By including these impermissible factors in the calculation of its COI Rates, State Farm knowingly caused the COI Rates to be higher than what is explicitly authorized under the terms of the Subject Policies, thereby assessing COI charges to the owner's premiums in amounts greater than those authorized in the Subject Policies. This reduced the monies deposited into the Cash Accounts (which also reduced the amount of money earning interest), causing a substantial financial injury to Plaintiff and the Class.

35. As an additional consequence of State Farm knowingly charging COI Rates higher than what was authorized by the Subject Policies, the Cash Values of some Class members were so depleted that State Farm cancelled their policies, thereby depriving them of their insurance proceeds (even after years of payment).

36.   As a direct and proximate result of State Farm's breach, Plaintiff and the Class have been damaged and those damages are continuing in nature in that State Farm has deducted and will continue to deduct expenses, including without limitation, maintenance, administrative, and other expenses, from the Cash Values of Plaintiff and the Class in amounts not authorized by the Subject Policies.

**C.**     **State Farm, in Breach of its Contracts with Plaintiff and the Class and the Implied Covenant of Good Faith and Fair Dealing, Failed to Reduce its COI Charges**

37.   The above language contractually requires State Farm to reduce its COI rates when its expectations of future mortality improve.

38.   As shown below, State Farm, in breach of its contracts with Plaintiff and the Class, did not do so.

39.   That monthly COI rates are based on sex, age, and rate class means that State Farm was required to determine the COI rates by reference to mortality tables. Mortality tables are charts showing the rate of death (either as a percentage or as the number of deaths per thousand individuals) at a given age. There are separate mortality tables for males and females, tobacco-use, underwriting status, and duration since underwriting. Actuaries and insurers use mortality tables to calculate insurance rates and are intended to reflect expectations of future mortality.

40.  Beginning at least as early as 1941, the National Association of Insurance Commissioners ("NAIC") has periodically issued a series of Commissioners Standard Ordinary ("CSO") mortality tables. These are industry standard mortality tables that are commonly used by insurers to calculate reserves and to set maximum permitted cost of insurance rates in UL policies.

41. The 1980 table issued by the NAIC was called the 1980 Commissioners Standard Ordinary Smoker or Nonsmoker Mortality Table ("1980 CSO Mortality Table"). That table was the industry-standard table until 2001.

42. In 2001, at the request of the NAIC, the Society of Actuaries ("SOA") and the American Academy of Actuaries (the "Academy") produced a proposal for a new CSO Mortality Table. The accompanying report from June 2001 explained that (a) the 1980 CSO Mortality Table was still the industry-standard table and (b) expected mortality rates had improved significantly each year since the 1980 table issued. The report stated: "The current valuation standard, the 1980 CSO Table, is almost 20 years old and mortality improvements have been evident each year since it was adopted. . . . [C]urrent mortality levels . . . are considerably lower than the mortality levels underlying the 1980 CSO Table.[6] The report further explained that "[f]or most of the commonly insured ages (from about age 25 to age 75), the proposed 2001 CSO Table mortality rates are in the range of 50% to 80% of the 1980 CSO Table."

43. This means the tables are showing a substantial improvement in mortality in a 20-year time-period. These mortality improvements represent a substantial benefit that State Farm should have passed on to Plaintiff and the Class. The final proposed tables were adopted as the 2001 Commissioners Standard Ordinary Mortality Table ("2001 CSO Mortality Table"). The 2001 CSO Mortality Table reflected vastly improved mortality experience as compared to the 1980 CSO Mortality Table.

---

[6] *Report of the American Academy of Actuaries' Commissioner's Standard Ordinary (CSO) Task Force*, Presented to the National Association of Insurance Commissioners' Life and Health Actuarial Task Force (LHATF), June 2001, available at http://www.actuary.org/pdf/life/cso2_june01.pdf.

44.  Since the 2001 CSO Mortality Table was published, the SOA and the Academy have periodically published, from surveys of life insurers, new tables showing consistent and significant mortality improvement. For example, the Academy's 2015 report observed: "The current CSO table was created in 2001 based on experience from 1990-1995 and thus, is at least 20 years old. *Since that time, industry experience studies performed by the Society of Actuaries Individual Life Experience Committee (ILEC) have shown significant improvement in the mortality rates experienced by the industry from that underlying the 2001 CSO table development*."[7]

45.  Other surveys of insurers conducted by the SOA between 2002 and 2009 also show that mortality has steadily decreased since issuance of the 2001 CSO Mortality Table. For instance, the SOA published Individual Life Experience Reports for the periods 2002-2004,[8] 2005-2007,[9] 2008-2009,[10] and 2009-2013,[11] each of which showed strong rates of improvement in mortality. State Farm was one of the surveyed companies included in each of these studies.

---

[7] Am. Academy of Actuaries, *Report on the 2017 CSO and 23017 CSO Preferred Structure Table Development* (Oct. 2018), https://www.soa.org/Files/Research/Exp-Study/research-2017-cso-report.pdf (emphasis added).

[8] Society of Actuaries, *Report of the Individual Life Insurance Experience Committee Mortality under Standard Individually Underwritten Life Insurance Between 2002 and 2004 Policy Initiatives* (Dec. 2004), https://www.soa.org/resources/experience-studies/2005-2009/02-04-iindividual-life-exp-rpt/.

[9] Society of Actuaries, *Report of the Individual Life Insurance Experience Committee Mortality for Standard Individually Underwritten Life Insurance Between 2005 and 2007 Policy Anniversaries* (Feb. 2010), https://www.soa.org/resources/experience-studies/2010/2005-2007-ind-life-report/.

[10] Society of Actuaries, *2008-09 Report of the Individual Life Insurance Experience Committee* (April 2013), https://www.soa.org/experience-studies/2017/2009-13-indiv-life-ins-mort-exp/.

[11] Society of Actuaries, *2009-2013 Individual Life Insurance Mortality Experience Report* (Oct. 2017), https://www.soa.org/experience-studies/2013/research-2008-2009-ind-life-exp/.

---

46. The SOA also periodically publishes updated mortality tables that reflect insurers' changing experience, including (a) 1990-95 Basic Select and Ultimate Mortality Tables;[12] (b) 2001 Valuation Basic Mortality Table;[13] (c) 2008 Valuation Basic Table;[14] and (d) 2015 Valuation Basic Table.[15] Consistent with the foregoing, these tables confirm that mortality continued to improve substantially since issuance of the Subject Policies.

47. Other surveys have also noted significant improvements in mortality expectations. In May of 2013, for instance, the reinsurance company RGA published a report sponsored by the SOA enumerating mortality rates and mortality improvements at older ages.[16] This study, which was based on a survey of insurance companies—including State Farm—showed material rates of mortality improvements. As another example, in March 2014 the actuarial firm Milliman published a report sponsored by the SOA—also based on a survey of insurance companies that included State Farm—called the "Select Period Mortality Survey," that also showed that select rates of mortality improved significantly since 2001.[17]

---

[12] Society of Actuaries, *1990-95 Basic Select and Ultimate Mortality Tables for Individual Life Insurance*, https://www.soa.org/experience-studies/2000-2004/90-95-basic-select/.

[13] Society of Actuaries, *Final Report of the Individual Life Insurance Valuation Mortality Task Force 2001 – Valuation Basic Mortality Table [2001 VBT]* (April 2005), https://www.soa.org/experience-studies/2005-2009/final-report-life-insurance-valuation/.

[14] Society of Actuaries, *2008 Valuation Basic Tables [VBT] Report* (June 16, 2009), https://www.soa.org/experience-studies/2005-2009/2008-vbt-report-tables/.

[15] Society of Actuaries, *2015 Valuation Basic Report and Tables* (Sept. 13, 2018), https://www.soa.org/experience-studies/2015/2015-valuation-basic-tables/.

[16] Tim Rozar, Catie Muccigrosso, Susan Willeat, RGA, *Report on the Survey of Older Age Mortality and Other Assumptions* (May 2013), https://www.rgare.com/docs/default-source/default-document-library/older-age-mortality.pdf?sfvrsn=dc9ad888_0.

[17] Allen M. Klein, Michelle L. Krysiak, Milliman, *Select Period Mortality Survey* (March 2014), available at https://www.soa.org/research-reports/2014/research-2014-select-period/.

---

**CLASS ACTION COMPLAINT**                                                                    **PAGE 13**

48. These mortality improvements since issuance of the Subject Policies represent a substantial financial benefit to State Farm in the form of decreased costs of providing insurance.

49. State Farm was contractually required to share this financial benefit with holders of the Subject Policies through decreased COI charges on the Subject Policies, but failed to do so.

50. At a minimum, State Farm abused its contractual discretion by failing to do so. Indeed, the Subject Policies provide: "[The COI] can be adjusted for projected changes in mortality but cannot exceed the maximum monthly cost of insurance rates." State Farm is therefore vested with contractual discretion to adjust COI based on "changes in mortality." It abused its contractual discretion by failing to adjust its COI in response to mortality improvements.

**D.** **State Farm Concealed its Wrongdoing**

51. Because State Farm did not disclose its mortality expectations or the monthly COI Rates it used to calculate the COI charges, Plaintiff and the Class could not have discovered State Farm's breach of the Subject Policies until recently.

52. Moreover, the nature of Defendant's conduct is such that Plaintiff and each member of the Class would be, and Plaintiff indeed was, unaware that State Farm was engaging in wrongdoing by taking inflated charges and improper amounts from Cash Values and failing to reduce COI rates in light of the substantial improvements in mortality rates. Plaintiff and the Class were automatically assessed inflated COI charges, but they were not privy to the back-end calculations that caused these charges to be inflated. Defendant possesses the actuarial information and equations underlying the computation of rates and charges for the Subject Policies. The COI Rates actually used to calculate the COI charges are not disclosed to policy owners, nor are the components or factors that comprise those rates. Even if they were, Plaintiff and the Class would

lack the knowledge, experience, and training to reasonably ascertain how State Farm calculated the rates and charges.

53.     State Farm was aware of its non-disclosure because of its superior knowledge of the aforementioned computations. As the only party with access to the actuarial information and equations for computing COI Rate, State Farm successfully concealed the information that led to this cause of action. The means by which State Farm fraudulently concealed the information included stating in the Subject Policies that COI Rates are "based on the Insured's age on the policy anniversary, sex, and applicable rate class." Plaintiff exercised reasonable care and diligence with regard to her Subject Policy but had no reason to believe State Farm was not computing her COI Rate as it said it would in the information it provided to Plaintiff and the Class. Concealment of its conduct and failure to disclose its conduct to Plaintiff and the Class constitutes fraudulent concealment and therefore tolls the statute of limitations for Plaintiff and the Class.

54.     Plaintiff did not learn of Defendant's breaches supporting Plaintiff's claims until approximately Summer 2019, when she engaged counsel. Plaintiff was not at fault for failing to discover the breaches and had no actual or presumptive knowledge of the breaches.

55.     Plaintiff did not learn that State Farm was breaching the Subject Policies because the facts showing breach were not reasonably discoverable by Plaintiff nor was the harm that was caused by State Farm's breaches.

## CLASS ACTION ALLEGATIONS

56.     This action is brought by Plaintiff individually and on behalf of a class pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure.

57.     The Class is defined as follows:

All persons who own or owned a universal life insurance policy issued by State Farm Life Insurance Company on FORM-94030 in the State of Texas.

58. Excluded from the Class is State Farm, its officers and directors, members of their immediate families, and the heirs, successors or assigns of any of the foregoing.

59. *Numerosity.* The Class consists of hundreds or thousands of consumers of life insurance and is thus so numerous that joinder of all members is impracticable.

60. *Ascertainability.* The identities and addresses of all members of the Class can be readily ascertained from State Farm's business records.

61. *Typicality.* The claims asserted by Plaintiff are typical of the claims of members of the Class inasmuch as State Farm breached its contracts with Plaintiff and with members of the Class in the same manner: by considering extra-contractual factors when determining the COI charges and by failing to reduce the COI Rates to reflect falling mortality rates.

62. *Adequacy.* Plaintiff will fairly and adequately protect the interests of the members of the Class and do not have any interests antagonistic to those of the other members of the Class. In addition, Plaintiff has retained attorneys who are knowledgeable and experienced in class and complex litigation.

63. *Commonality and Predominance.* Common questions of law and fact affecting members of the Class predominate over any individualized issues. These predominating common questions include the following:

    a.    Whether State Farm is permitted by the Subject Policies to use factors other than those disclosed in the Subject Policies to determine the COI Rates used to calculate the policy deductions;

b.      Whether State Farm used, added, or included factors not specified in the Subject Policies when determining the COI Rates used to calculate the COI charges or deductions;

c.      Whether State Farm added or included factors unrelated to its mortality expectations in setting and determining rates that the Subject Policies provide are "based on" specified mortality factors and no other disclosed factors;

d.      Whether State Farm's expectations as to future mortality experience have improved;

e.      Whether State Farm was required to decrease the COI Rates it imposed on Plaintiff and members of the Class in light of improved mortality;

f.      Whether State Farm breached the terms of the Subject Policies and/or abused its discretion under the Subject Policies;

g.      Whether Plaintiff and members of the Class sustained damages as a result of State Farm's breaches of the Subject Policies;

h.      Whether Plaintiff and members of the Class are entitled to damages, restitution, and/or other relief as a remedy for State Farm's breaches of the Subject Policies; and

i.      Whether Plaintiff and members of the Class are entitled to declaratory relief stating the proper construction and/or interpretation of the Class Policies.

64. *Superiority.* A class action is superior to other available methods for the fair and efficient adjudication of this controversy for at least the following reasons:

a.  The complexity of issues involved in this action and the expense of litigating the claims, means that few, if any, class members could afford to seek legal redress individually for the wrongs that defendant committed against them, and absent class members have no substantial interest in individually controlling the prosecution of individual actions;

b.  This action will cause an orderly and expeditious administration of the class claims and foster economies of time, effort and expense, and ensure uniformity of decisions;

c.  Without a class action, many class members would continue to suffer injury, and State Farm's violations of law will continue without redress while defendant continues to reap and retain the substantial proceeds of their wrongful conduct; and

65.  ***Manageability.*** This action does not present any undue difficulties that would impede its management by the Court as a class action.

## FIRST CLAIM FOR RELIEF:
## BREACH OF CONTRACT

66.  Plaintiff realleges and incorporates herein the allegations of paragraphs 1 through 66 above of this Complaint as if fully set forth herein.

67.  This claim is brought on behalf of Plaintiff and the Class.

68.  The Subject Policies are binding and enforceable contracts.

69.  State Farm breached its contracts with Plaintiff and the Class by (a) basing its COI charges on non-permissible considerations, such as lapse rates, and (b) not reducing its COI charges in light of the well-established decreased mortality rates.

70.  By so doing, State Farm knowingly caused the COI charges to be higher than what is explicitly authorized by the Subject Policies.

71.  Plaintiff and the Class have performed all of their obligations under the policies, except to the extent that their obligations have been excused by State Farm's conduct as set forth herein.

72.  As a direct and proximate cause of State Farm's material breaches of the policies, Plaintiff and the Class have been—and will continue to be—damaged as alleged herein in an amount to be proven at trial.

## SECOND CLAIM FOR RELIEF:
## BREACH OF THE CONVENANT OF GOOD FAITH & FAIR DEALING

73.  Plaintiff realleges and incorporates herein the allegations of paragraphs 1 through 66 above of this Complaint as if fully set forth herein.

74.  This claim is brought on behalf of Plaintiff and the Class.

75.  The Subject Policies are binding and enforceable contracts.

76.  Each of the contracts include an implied covenant that State Farm will act in good faith and deal fairly with Plaintiff, and that neither party shall do anything that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.

77.  State Farm breached the implied covenant of good faith and fair dealing with Plaintiff and the Class by not reducing its COI charges in light of the well-established decreased mortality rates. As a consequence thereof, Plaintiff and the Class suffered financial losses and were therefore injured.

78.  State Farm's decision to not reduce its COI charges in light of the well-established decreased mortality rates also frustrated the purposes of the COI charge clauses of Subject Policies, which was to reimburse State Farm for its actual mortality risk.

79. As a direct and proximate cause of these breaches of the implied covenant of good faith and fair dealing and of State Farm's frustration of the purposes of the COI charge clauses of the Subject Policies, Plaintiff and the Class have been damaged as alleged herein in an amount to be proven at trial.

**THIRD CLAIM FOR RELIEF:**
**CONVERSION**

80. Plaintiff realleges and incorporates herein the allegations of paragraphs 1 through 66 above of this Complaint as if fully set forth herein.

81. This claim is brought on behalf of Plaintiff and the Class.

82. Plaintiff and the Class had a property interest in the funds State Farm deducted from their Cash Values in excess of the amounts permitted by the terms of the Subject Policies.

83. By deducting COI Charges and Expense Charges in unauthorized amounts from the Cash Values of Plaintiff and the Class, State Farm misappropriated or misapplied specific funds placed in the custody of State Farm for the benefit of Plaintiff and the Class for use consistent with the terms of the Subject Policies, without authorization or consent, and diverted those funds for its own use.

84. As a direct and proximate result of State Farm's conduct, Plaintiff and the Class have been damaged.

85. Although requiring expert testimony, the amounts of unauthorized COI Charges and Expense Charges State Farm took from Plaintiff and the Class are capable of determination, to an identified sum, by comparing Plaintiff's actual COI Charge each month to a COI Charge computed using a Monthly COI Rate determined using the mortality factors disclosed in the Subject Policies.

86.   On behalf of herself and the Class, Plaintiff seeks all damages and consequential damages proximately caused by State Farm's conduct.

87.   State Farm intended to cause damage to the Plaintiff and the Class by deducting more than it was authorized to deduct from their Cash Values. Its conduct was, therefore, malicious and State Farm is also guilty of oppression in that its systematic acts of conversion subject Plaintiff and the Class to cruel and unjust hardship in conscious disregard of their rights. Plaintiff and the Class are therefore entitled to punitive or exemplary damages.

### FOURTH CLAIM FOR RELIEF: 
### DECLARATORY RELIEF

88.   Plaintiff realleges and incorporates herein the allegations of paragraphs 1 through 66 above of this Complaint as if fully set forth herein.

89.   This claim is brought on behalf of Plaintiff and the Class.

90.   An actual controversy has arisen and now exists between Plaintiff and the Class, on the one hand, and State Farm, on the other, concerning the respective rights and duties of the parties under the Subject Policies.

91.   Plaintiff contends that State Farm has breached the Subject Policies in the following respects: by (a) basing its COI charges on non-permissible considerations, such as lapse rates, and (b) not reducing its COI charges in light of the well-established decreased mortality rates.

92.   Plaintiff therefore seeks a declaration of the parties' respective rights and duties under the Subject Policies and requests the Court to declare the aforementioned conduct of State Farm as unlawful and in material breach of the Subject Policies.

## ATTORNEY FEES

93. As a result of State Farm's actions and the need to protect her interests, Plaintiff, on behalf of the class members, has retained the undersigned counsel represent her in this action. Plaintiff is entitled to recover attorney's fees and costs of suit under various authorities including, but not limited to Texas Civil Practices and Remedies Code, Chapter 37, provides for reimbursement to Plaintiff for costs, fees, and expenses associated with this action; and Texas Civil Practices and Remedies Code, Chapter 38, provides for reimbursement to Plaintiff for costs, fees, and expenses associated with this action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the Class pray for judgment as follows:

A.  Certifying this action for class treatment pursuant to Rule 23 of the Federal Rules of Civil Procedure;

B.  Awarding Plaintiff and the Class compensatory and consequential damages in an amount to be proven at trial;

C.  Awarding Plaintiff and the Class pre-judgment and post-judgment interest, as well as attorneys' fees and costs, at the maximum rate allowed by law;

D.  Issuing a declaration that State Farm's ongoing conduct asserted herein is in material breach of the Subject Policies; and

E.  Awarding Plaintiff and the Class such other relief as this Court may deem just and proper under the circumstances.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff and the Class hereby demand a trial by jury as to all issues so triable.

Dated: May 22, 2020                          Respectfully submitted,

/s/ Warren T. Burns
_____
Warren T. Burns (TX Bar No. 24053119)
Will Thompson (TX Bar No. 24094981)
BURNS CHAREST LLP
900 Jackson Street, Suite 500
Dallas, Texas 75202
Telephone: (469) 904-4550
Facsimile: (469) 444-5002
wburns@burnscharest.com
whompson@burnscharest.com

James J. Pizzirusso*
Primary Email: jpizzirusso@hausfeld.com
Nathaniel C. Giddings*
Primary Email: ngiddings@hausfeld.com
Melinda R. Coolidge*
Primary Email: mcoolidge@hausfeld.com
HAUSFELD LLP
1700 K Street, NW
Washington, DC 20006
Telephone: (202) 540-7200
Facsimile: (202)540-7201

Kimberly Fetsick*
Primary Email: kfetsick@hausfeld.com
HAUSFELD LLP
33 Whitehall Street
New York, NY 10004
Telephone: (646) 357-1100
Facsimile: (212) 202-4322

Sophia Goren Gold*
Primary Email: sgold@kalielpllc.com
KALIEL PLLC
1875 Connecticut Avenue NW, 10th Floor
Washington, DC 20009
Telephone: (202) 350-4783
Facsimile: (202) 871-8180

---

*Motion to Appear pro hac vice to be filed.

---

**CLASS ACTION COMPLAINT**                                      **PAGE 23**

Larry D. Lahman*
Primary Email: larry.lahman@sbcglobal.net
Roger L. Ediger*
Primary Email: rle@mdpllc.com
MITCHELL DeCLERK
202 West Broadway Avenue
Enid, Oklahoma 73701
Telephone: (580) 234-5144
Facsimile: (580) 234-8890


Attorneys for Plaintiff