**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | |
|---|---|
| ANNA GONZALEZ and RONALD K. PAGE, on behalf of themselves and all others similarly situated, <br><br>        Plaintiffs, <br><br>   v. <br><br> STATE FARM LIFE INSURANCE COMPANY, <br><br>        Defendant. | Civil Action No. SA-20-CV-617-FB |

## FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs Anna Gonzalez and Ronald K. Page ("Plaintiffs"), individually and on behalf of all others similarly situated, for their First Amended Consolidated Class Action Complaint against Defendant State Farm Life Insurance Company ("Defendant" or "State Farm"), state and allege as follows:

## INTRODUCTION

1.     This is a class action to recover amounts that Defendant charged and collected from Plaintiffs and other similarly situated life insurance policy owners in excess of amounts authorized by the express terms of their policies. Plaintiffs' claims and those of the proposed class members are exclusively supported by the explicit provisions of their life insurance policies and are not derived from any alleged conversations had, or documents reviewed, at the time of sale.

2.      The terms of Plaintiffs' life insurance policy provide for an "Account Value" consisting of monies held in trust by Defendant for Plaintiffs. Over the course of several years, Defendant deducted monies from Plaintiffs' Account Value in breach of their policies' terms.

3.      Defendant is contractually bound to deduct only those charges explicitly identified and authorized by the terms of its life insurance policies, which are fully integrated agreements. Defendant deducts charges from the Account Values of Plaintiffs and the proposed class members in excess of amounts specifically permitted by their life insurance policies.

4.      Defendant has caused material harm to Plaintiffs and the proposed class members by improperly draining monies they accumulated in the Account Values of their policies. Every unauthorized dollar taken from policy owners is one less dollar on which policy owners earn interest and one less dollar that can be: applied to pay future premiums; used to increase the death benefit; used as collateral for policy loans; or withdrawn as cash.

5.      Plaintiffs bring this case as a class action under Federal Rule of Civil Procedure 23, individually and as representatives of the following (the "Class"): All persons who own or owned a universal life policy issued by State Farm on its policy form 94030 in the State of Texas.

**PARTIES**

6.      Plaintiff Ronald K. Page is an individual and resident of the State of Texas.

7.      Plaintiff Anna Gonzalez is an individual and resident of the State of California.

8.      Defendant State Farm Life Insurance Company is a life insurance company organized and existing under the laws of the State of Illinois, and maintains its principal place of business in Bloomington, Illinois.

## JURISDICTION AND VENUE

9.      This Court has jurisdiction over all causes of action asserted herein pursuant to 28 U.S.C. § 1332(d) because this is a class action with diversity of citizenship between parties and the matter in controversy exceeds $5,000,000, exclusive of interest and costs, and the proposed Class contains more than 100 members.

10.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Defendant is a resident of this District and a substantial portion of the events giving rise to Plaintiffs' causes of action occurred in this District.

## FACTUAL BACKGROUND

11.      Plaintiff Page owns a flexible premium adjustable insurance policy issued by Defendant in Texas and bearing the policy number LF-1518-9386, and a policy date of February 3, 1997, with an initial basic amount of $100,000. A true and accurate copy of Plaintiff Page's policy is attached hereto as Exhibit A and incorporated herein by reference. Plaintiff Page is both the "owner" and "insured" under his policy.

12.      Plaintiff Gonzalez owns a flexible premium adjustable insurance policy issued by Defendant in Texas and bearing the policy number LF-2153-7359, and a policy date of May 17, 2004, with an initial basic amount of $100,000. A true and accurate copy of Plaintiff Gonzalez's policy is attached hereto as Exhibit B and incorporated herein by reference. Plaintiff Gonzalez is both the "owner" and "insured" under her policy.[1]

13.      Defendant is the effective and liable insurer of the Policies.

---

[1] The relevant provisions of Plaintiff Page's and Plaintiff Gonzalez's policies (hereinafter referred to as "Policy" or "Policies") are the same. Therefore, references are only made as to Plaintiff Page's Policy, attached hereto as Exhibit A.

14.     The Policies are valid and enforceable contracts between Plaintiffs and Defendant.

15.     "The [P]olicy is the entire contract," and it consists of "the Basic Plan, any amendments, endorsements, and riders, and a copy of the application." Ex. A at p. 12.

16.     The terms of the Policies are not subject to individual negotiation and are materially the same for all policy owners. They cannot be altered by an agent's representations at the time of sale.

17.     The Policies provide that, "[o]nly an officer has the right to change this policy. No agent has the authority to change the policy or to waive any of its terms. All endorsements, amendments, and riders must be signed by an officer to be valid." Ex. A at p. 12.

18.     Defendant administered and currently administers all aspects of the Policies, and all policies that fall within the Class definition set forth above, including collecting premiums and setting, assessing and deducting policy charges.

19.     In addition to a death benefit, the Policies provide policy owners a savings, or interest-bearing, component that is identified in the Policies as the "Account Value."

20.     Generally speaking, premium dollars are deposited into the Account Value, from which Defendant deducts those monthly charges authorized by the terms of the Policies. The Account Value earns interest as provided by the Policies.

21.     The money that makes up the Account Value is the property of the policy owner and is held in trust by Defendant.

22.      Under the express terms of the Policies, a "premium expense charge" is taken from each premium payment in the amount of 5% of each premium paid. Ex. A at p. 3.

4

23.     The Account Value is equal to 95% of the initial premium less the monthly deduction for the first policy month, and thereafter:

> The account value on any deduction date after the policy date is the account value on the prior deduction date:
> (1) plus 95% of any premiums received since the prior deduction date,
> (2) less the deduction for the cost of insurance for any increase in Basic Amount and the monthly charges for any riders that became effective since the prior deduction date,
> (3) less any withdrawals since the prior deduction date,
> (4) less the current monthly deduction,
> (5) plus any dividend paid and added to the account value on the current deduction date, and
> (6) plus any interest accrued since the prior deduction date.
> The account value on any other date is the account value on the prior deduction date:
> (1) plus 95% of any premiums received since the prior deduction date,
> (2) less the deduction for the cost of insurance for any increase in Basic Amount and the monthly charges for any riders that became effective since the prior deduction date,
> (3) less any withdrawals since the prior deduction date, and
> (4) plus any interest accrued since the prior deduction date.

Ex. A at p. 9.

24.     The "Policy Date" is "[t]he effective date of this Policy," and the "Deduction Date" is "[t]he policy date and each monthly anniversary of the policy date." Ex. A at p. 5. Therefore, the Deduction Date under Plaintiff Page's Policy is the 3rd of each month. Ex. A. at p. 3.

25.     Defendant may access and withdraw funds from the Account Value only as expressly authorized by the Policies.

26.     The Policies expressly define the specific charges that Defendant may assess and deduct from a given policy owner's premium payments and the accumulated Account Value. Defendant may deduct only those charges allowed by the Policies.

27.     The Policies authorize Defendant to take a "Monthly Deduction" from the policy

owner's Account Value each month. Ex. A at p. 9.

28.     The Policies expressly define the Monthly Deduction as follows:

**Monthly Deduction.** This deduction is made each month, whether or not premiums
are paid, as long as the cash surrender value is enough to cover that monthly
deduction. Each deduction includes:
(1)     the cost of insurance,
(2)     the monthly charges for any riders, and
(3)     the monthly expense charge.

Ex. A at p. 9.

29.     The Policies state that the monthly expense charge ("Expense Charge") is $5.00.

Ex. A at p. 3.

30.     The Policies also expressly define how the charge for the monthly "Cost of

Insurance" ("Cost of Insurance Charge") is determined and calculated:

**Cost of Insurance.** This cost is calculated each month. The cost is determined
separately for the Initial Basic Amount and each increase in Basic Amount.

The cost of insurance is the monthly cost of insurance times the difference between
(1) and (2), where:
    (1) is the amount of insurance on the deduction date at the start of the month
       divided by 1.0032737, and
    (2) is the account value on the deduction date at the start of the month before
       the cost of insurance and the monthly charge for any waiver of monthly
       deduction benefit rider are deducted.
Until the account value exceeds the Initial Basic Amount, the account value is part
of the Initial Basic Amount. Once the account value exceeds that amount, if there
have been any increases in Basic Amount, the excess will be part of the increases
in order in which the increases occurred.

Ex. A at p. 10.

31.     The Policies specify the factors Defendant may use to determine "Monthly Cost

of Insurance Rates," which are used to calculate the Cost of Insurance Charges that are deducted

from the Account Value each month:

> **Monthly Cost of Insurance Rates.** These rates for each policy year are based on the Insured's age on the policy anniversary, sex, and applicable rate class. A rate class will be determined for the Initial Basic Amount and for each increase. The rates shown on page 4 are the maximum monthly cost of insurance rates for the Initial Basic Amount. Maximum monthly cost of insurance rates will be provided for each increase in the Basic Amount. We can charge rates lower than those shown. Such rates can be adjusted for projected changes in mortality but cannot exceed the maximum monthly cost of insurance rates. Such adjustments cannot be made more than once a calendar year.

Ex. A at p. 10.

32.     Defendant admits that a rate "based on" factors explicitly identified in the Policies must be determined using only those factors identified and no other unidentified factors. *See Alleman v. State Farm Life Ins. Co.*, 334 F. Appx. 470, 472 (3d Cir. 2009) (affirming summary judgment in State Farm's favor and rejecting plaintiff insured's argument that a provision in the life insurance policy stating a charge would be "*based on the Insured's age last birthday and sex*" should be read to include other undisclosed factors, because "[b]y the plain language of these policies, it is clear that the insureds' age and sex are the only mortality factors relevant to the rate …..") (emphasis added).

33.     Thus, under the explicit terms of the Policies, Defendant is authorized to determine Monthly Cost of Insurance Rates for each policy year using only the Insured's age, sex, applicable rate class, and projected changes in mortality. Ex. A. at p. 10.

34.     Policy year, age, sex, and rate class are factors commonly used within the life insurance industry to determine the mortality expectations of an insured or group or class of insureds.

35.     By specifically identifying Cost of Insurance Rates for each policy year as based on age, sex, and rate class and no other factors, Defendant agrees that mortality expectations

determine the Monthly Cost of Insurance Rates under the Policies, as confirmed by the additional provision that "[s]uch rates can be adjusted for projected changes in mortality." Ex. A at p. 10.

36.     Given the language of the Monthly Cost of Insurance Rates provision in the Policies, and its context in the Policies as a whole, no reasonable layperson would expect that the Policies permitted Defendant to use any factor it wanted to determine Cost of Insurance Rates for the Policies. A reasonable layperson would instead read policy year, age, sex, and rate class, in combination with the contractual limitation that rates can only be adjusted for "projected changes in mortality," to mean that only mortality expectations are used to determine Monthly Cost of Insurance Rates for the Policies.

37.     The Policies authorize Defendant to make periodic deductions from policy owners' Account Values including, specifically, Cost of Insurance Charges that are calculated using rates that Defendant must determine based on specified factors, and that can be adjusted for projected changes in mortality.

38.     The Policies also disclose a premium expense charge set at a fixed percentage of five percent of each premium payment made. The Policies further disclose a separate, monthly expense charge within the Monthly Deduction that Defendant set at a fixed amount of $5.00 per month.

39.     Although the Policies authorize Defendant to use only certain, specified factors in determining Monthly Cost of Insurance Rates, Defendant uses other factors, not authorized by the Policies, when determining those rates, including, without limitation, profits and expenses.

40.     By loading these factors into Monthly Cost of Insurance Rates, Defendant knowingly causes those rates to be higher than what is explicitly authorized by the Policies and,

as a result, withdraws Cost of Insurance Charges from policy owner Account Values in amounts greater than what is permitted by the Policies.

41.     By loading unauthorized factors in Monthly Cost of Insurance Rates, Defendant repeatedly and continuously breaches the Policies and impermissibly inflates those rates.

42.     As a direct and proximate result of Defendant's breaches, Plaintiffs and the Class have been damaged, and those damages are continuing in nature in that Defendant deducted and will continue to deduct unauthorized Cost of Insurance Charges from policy owners' Account Values.

43.     By loading expense factors in Monthly Cost of Insurance Rates, Defendant repeatedly and continuously breaches the Policies by impermissibly deducting from the Account Values of Plaintiffs and the Class amounts in excess of the fixed expense charges expressly authorized by the Policies.

44.     As a direct and proximate result of Defendant's breaches, Plaintiffs and the Class have been damaged and those damages are continuing in nature in that Defendant has deducted and will continue to deduct expenses, including without limitation, maintenance, administrative, and other expenses, from the Account Values of Plaintiffs and the Class in amounts not authorized by the Policies.

45.     The nature of Defendant's conduct is such that Plaintiffs and each member of the Class would be unaware that Defendant was engaging in wrongdoing by taking inflated charges and improper amounts from their Account Values. Defendant possesses the actuarial information and equations underlying the computation of rates and charges for the Policies. The Monthly Cost of Insurance Rates used to calculate the monthly Cost of Insurance Charges are not disclosed to policy owners, nor are the components or factors that comprise those rates. Even if they were,

Plaintiffs and the Class would lack the knowledge, experience, and training to reasonably ascertain how Defendant calculated the rates and charges.

46. Defendant was aware that Plaintiffs and each member of the Class did not know about the improper deductions because of Defendant's superior knowledge of the aforementioned computations. Defendant sent Plaintiffs annual statements that identified each month's Cost of Insurance Charge while affirmatively concealing the factors Defendant used to calculate the Cost of Insurance Rates. Moreover, Defendant provided Plaintiffs illustrations that refer to the Cost of Insurance Charges as "current mortality charges" and "current mortality," yet did not disclose the factors Defendant used to calculate the Cost of Insurance Rates. Despite reasonable diligence on their part, Plaintiffs were kept ignorant by Defendant of the factual bases for these claims for relief. Defendant's withholding of material facts concealed these claims and tolled all applicable statutes of limitation.

47. Plaintiffs reasonably relied to their detriment on Defendant's fraudulent concealment of its misconduct and material omission of the factors actually used to calculate the deductions from their Account Values. As a result of such concealment, Plaintiffs did not believe that they had suffered any injury or that it was necessary to file a lawsuit. Plaintiffs did not discover, and exercising reasonable diligence could not have discovered, the facts establishing Defendant's continuing breaches or the harm caused thereby.

48. Defendant is estopped from asserting a statute of limitations defense. Defendant's conduct in failing to disclose the true factors it used—and continues to use—to calculate the Cost of Insurance Rates misled Plaintiffs and prevented them from learning the factual bases for these claims for relief. Plaintiffs proceeded diligently to file suit once they discovered the need to proceed. Defendant's continuing breaches of the Policies are ongoing.

## CLASS ALLEGATIONS

49.     Plaintiffs bring this lawsuit under Fed. R. Civ. P. 23, individually and as representatives of the following Class: All persons who own or owned a universal life policy issued by State Farm on its policy form 94030 in the State of Texas.

50.     Excluded from the Class is the Defendant, any entity in which the Defendant has a controlling interest, any of the officers, directors, or employees of the Defendant, the legal representatives, heirs, successors, and assigns of the Defendant, any State Farm independent contractor insurance agents, anyone employed with Plaintiffs' counsel's firms, any Judge to whom this case is assigned, and the Judge's immediate family. Excluded from the Class is any policy that explicitly discloses all of the factors Defendant uses to calculate its rates and charges.

51.     Plaintiffs' claims satisfy the numerosity, commonality, typicality, and adequacy requirements of Federal Rule of Civil Procedure 23(a), and the requirements for class treatment under Rules 23(b)(1), (b)(2), and (b)(3).

52.     The numerosity requirement is satisfied because there are thousands of Class members who are geographically dispersed, making joinder impracticable, and the disposition of Class member claims in a single action will provide a substantial benefit to all parties and to the Court.

53.     Class members are ascertainable from information and records in Defendant's possession, custody, or control. Notice of this action can therefore be readily provided to the Class, via first class mail or other appropriate means, using information contained in Defendant's records.

54.    Plaintiffs' claims are typical of the claims of the Class, because the express terms of the Policies purchased from Defendant by Plaintiffs and proposed Class members contain identical limitations on the amounts Defendant can charge under the Policies.

55.    Plaintiffs will fairly and adequately represent the Class because they are members of the Class and their interests are aligned with, and do not conflict with, the interests of those they seek to represent. The interests of the Class members will be fairly and adequately protected by Plaintiffs and their counsel, who have extensive experience prosecuting complex class litigation.

56.    There are questions of fact and law common to the Class that predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The questions of law and fact common to the Class arising from Defendant's actions include, without limitation, the following:

a.    Whether Defendant is permitted by the Policies to determine its Monthly Cost of Insurance Rates using factors other than those specified in the Policies;

b.    Whether Defendant added, included, or relied on factors not specified in the Policies when determining the Monthly Cost of Insurance Rates used to calculate Cost of Insurance Charges for the Policies;

c.    Whether Defendant added, included, or relied on factors unrelated to its mortality expectations in determining Monthly Cost of Insurance Rates that the Policies provide are determined using specified mortality factors and no other specified factors;

d.    Whether Defendant is permitted by the Policies to charge expense amounts to policy owners in excess of the amounts disclosed in the Policies;

e.   Whether Defendant charged amounts in excess of those specifically authorized by the Policies;

f.   Whether Defendant acted in bad faith;

g.   Whether Defendant breached the terms of the Policies;

h.   Whether Defendant converted Class members' property;

i.   Whether Defendant's conduct violated the Texas Insurance Code;

j.   Whether Defendant's conduct was an unfair or deceptive trade practice;

k.   Whether the Class was injured and sustained damages as a result of Defendant's wrongful conduct;

l.   Whether the Class is entitled to damages, restitution, treble damages, punitive damages, and/or other relief as a remedy for Defendant's conduct; and

m.   Whether the Class is entitled to declaratory relief stating the proper construction and/or interpretation of the Policies.

57.   The questions set forth above predominate over any questions affecting only individual persons, and a class action is superior to all other available means of fair and efficient adjudication of the claims of Plaintiffs and Class members. The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of these claims. Even if Class members could afford to pursue individual litigation, the court system could not. Individualized litigation would risk inconsistent or contradictory judgments while increasing the delay and expense to all parties, and to the judicial system, from the complex legal and factual issues presented here. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, an economy of scale, and comprehensive supervision by a single court.

58.     Defendant has acted or refused to act on grounds generally applicable to Plaintiffs and Class members, making final injunctive relief and declaratory relief appropriate with respect to the Class as a whole.

## COUNT I: BREACH OF CONTRACT
### (Cost of Insurance Charge)

59.     The preceding paragraphs are incorporated by reference as if fully alleged herein.

60.     Plaintiffs and the Class purchased life insurance policies—defined herein as the Policies—from Defendant.

61.     The Policies are valid and enforceable contracts between the Defendant and Class members, including Plaintiffs.

62.     Plaintiffs and the Class members substantially performed their obligations under the terms of the Policies.

63.     By determining Monthly Cost of Insurance Rates inconsistent with the terms of the Policies and loading unauthorized factors in Monthly Cost of Insurance Rates, Defendant impermissibly caused and continues to cause those rates to be higher than what is explicitly authorized by the Policies.

64.     Because Defendant calculates Cost of Insurance Charges inconsistent with the terms of the Policies, including using Monthly Cost of Insurance Rates that are higher than those authorized by the Policies, Defendant deducted Cost of Insurance Charges from the Account Values of Plaintiffs and the Class in amounts greater than those authorized by their Policies.

65.     Defendant's practice of deducting charges in amounts not authorized by the Policies constitutes a breach of the Policies.

66.     As a direct and proximate result of Defendant's ongoing and continuing breaches, Plaintiffs and the Class have sustained damages that are continuing in nature in an amount to be determined at trial.

## COUNT II: BREACH OF CONTRACT
### (Expense Charge)

67.     The preceding paragraphs are incorporated by reference as if fully alleged herein.

68.     By loading Monthly Cost of Insurance Rates with undisclosed and unauthorized expenses, Defendant impermissibly deducts expenses from the Account Values of Plaintiffs and the Class in amounts in excess of the fixed expense charges expressly authorized by the Policies.

69.     By deducting unauthorized expense charges from the Account Values of Plaintiffs and the Class, Defendant has breached the Policies.

70.     As direct and proximate result of Defendant's ongoing and continuing breaches, Plaintiffs and the Class have sustained damages that are continuing in nature in an amount to be determined at trial.

## COUNT III: CONVERSION

71.     The preceding paragraphs are incorporated by reference as if fully alleged herein.

72.     Plaintiffs and the Class were the owners of the funds Defendant deducted from their Account Values in excess of the amounts permitted by the terms of the Policies.

73.     Defendant intentionally and substantially interfered with that property interest. By deducting Cost of Insurance Charges and expense charges in unauthorized amounts from the Account Values of Plaintiffs and the Class, Defendant assumed and exercised dominion and control over, and misappropriated or misapplied specific funds placed in the custody of Defendant for the benefit of Plaintiffs and the Class members, without authorization or consent and in hostility to the rights of Plaintiffs and Class members.

74.     Defendant continues to retain these funds unlawfully. At no time did Plaintiffs or any Class member consent to such wrongful retention of funds by Defendant.

75.     Defendant's wrongful exercise of control over the personal property of Plaintiffs and Class members constitutes conversion. Demand is excused because Defendant's possession of the property was acquired wrongfully and because demand would be useless.

76.     As a direct and proximate result of Defendant's conduct, Plaintiffs and the Class have been damaged, and these damages are continuing in nature.

77.     Although requiring expert testimony, the amounts of unauthorized Cost of Insurance Charges and expense charges Defendant took from Plaintiffs and the Class are capable of determination, to an identified sum, by comparing Plaintiffs' actual Cost of Insurance Charge each month to a Cost of Insurance Charge computed using a Monthly Cost of Insurance Rate determined using only the mortality factors provided for in the Policy.

78.     Defendant intended to cause damage to the Plaintiffs and the Class by deducting more from their Account Values than was authorized by the Policies.

79.     By reason of the foregoing, Plaintiffs and Class members are entitled to recover from Defendant all damages and costs permitted by law, including all amounts Defendant wrongfully converted.

## COUNT IV: BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING

80.     The preceding paragraphs are incorporated by reference as if fully alleged herein.

81.     The Policies are valid and enforceable life insurance contracts between the Defendant and Class Members, including Plaintiffs.

82.     Defendant owed Plaintiffs and the Class Members a duty of good faith and fair dealing.

83.     Defendant breached the duty of good faith and fair dealing with Plaintiffs and the Class by loading Monthly Cost of Insurance Rates with undisclosed and unauthorized profits and expenses.

84.     As a direct and proximate cause of these breaches of the duty of good faith and fair dealing, Plaintiffs and the Class have been damaged in an amount to be proven at trial.

## COUNT V: VIOLATIONS OF THE TEXAS INSURANCE CODE

85.     The preceding paragraphs are incorporated by reference as if fully alleged herein.

86.     Although Defendant represented that it would use only certain, specified factors in determining Monthly Cost of Insurance Rates, Defendant uses other factors, not authorized by the Policies or disclosed to Plaintiffs and the Class, when determining those rates, including, without limitation, profits and expenses.

87.     By loading these factors into Monthly Cost of Insurance Rates, Defendant knowingly and intentionally causes those rates to be higher than what is explicitly authorized by the Policies and, as a result, withdraws Cost of Insurance Charges from policy owner Account Values in amounts greater than what is permitted by the Policies.

88.     Defendant's conduct violates sections (1), (2), (3), and (5) of § 541.061 of the Texas Insurance Code, which provides:

It is an unfair method of competition or an unfair or deceptive act or practice in the business of insurance to misrepresent an insurance policy by:

(1) making an untrue statement of material fact;

(2) failing to state a material fact necessary to make other statements made not misleading, considering the circumstances under which the statements were made;

(3) making a statement in a manner that would mislead a reasonably prudent person to a false conclusion of a material fact;

(4) making a material misstatement of law; or

17

(5) failing to disclose a matter required by law to be disclosed, including failing to make a disclosure in accordance with another provision of this code.

89.     Additionally, despite knowing the Cost of Insurance Charges were loaded with non-mortality related expenses and profits, Defendant knowingly and intentionally provided Plaintiffs and the Class with untrue and misleading illustrations that refer to the Cost of Insurance Charges as "current mortality charges" and "current mortality." These illustrations failed to state that non-mortality related expenses and profits were incorporated into the Cost of Insurance Charges.

90.     This conduct also violates § 541.051 of the Texas Insurance Code, which states in relevant part:

It is an unfair method of competition or an unfair or deceptive act or practice in the business of insurance to:

(1) make, issue, or circulate or cause to be made, issued, or circulated an estimate, illustration, circular, or statement misrepresenting with respect to a policy issued or to be issued:

(A) the terms of the policy

91.     Defendant alone, and not Plaintiffs and Class Members, possesses the actuarial information and equations underlying the computation of rates and charges for the Policies, such that Plaintiffs and Class Members were unaware of Defendant's acts or practices.

92.     Plaintiffs and the Class sustained actual damages caused by Defendant's actions or practices, including unfair or deceptive actions or practices in the business of insurance.

93.     Defendant's conduct is ongoing and continues unabated.

94.     Moreover, as alleged below, Defendant's unlawful and deceptive trade practices also violate the Texas Insurance Code.

95.     Plaintiffs provided written notice to Defendant more than 60 days from the date of this filing advising of the allegations herein.

96.     Plaintiffs and the Class Members are entitled to recover from Defendant their actual damages, treble damages, costs, and attorneys' fees.

## COUNT VI: VIOLATIONS OF THE TEXAS DECEPTIVE TRADE PRACTICES-CONSUMER PROTECTION ACT

97.     The preceding paragraphs are incorporated by reference as if fully alleged herein.

98.     By their purchase of the Policies from Defendant, Plaintiffs and Class Members are consumers as defined by Tex. Bus. & Com. Code Ann. § 17.45(4).

99.     Defendant's violations of the Texas Insurance Code, alleged above, also violate the Texas Deceptive Trade Practices-Consumer Protection Act ("DTPA"). *See* Tex. Bus. & Com. Code Ann. § 17.50(a)(4).

100.     In addition, Defendant separately violated the DTPA by representing the Policies "had sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have." *Id.*, § 17.46(b)(5).

101.     Specifically, Defendant represented that only certain, specified factors would be used in determining Monthly Cost of Insurance Rates, but Defendant uses other factors, not authorized by the Policies or disclosed to Plaintiffs and the Class, when determining those rates, including, without limitation, profits and expenses.

102.     Defendant's undisclosed inclusion of unauthorized factors into Monthly Cost of Insurance Rates causes those rates to be higher than what is authorized by the Policies.

103.     Because Defendant knowingly and intentionally includes unauthorized factors in Monthly Cost of Insurance Rates that it knows will case those rates to be higher than what is otherwise authorized by the Policies, Defendant knowingly and intentionally withdraws Cost of Insurance Charges from policy owner Account Values in amounts greater than what is permitted by the Policies.

104.    Defendant's violations of the DTPA caused Plaintiffs and the Class economic damages.

105.    Defendant's conduct is ongoing and continues unabated.

106.    Plaintiffs provided written notice to Defendant more than 60 days from the date of this filing advising of the allegations herein.

107.    Plaintiffs and Class Members are entitled to recover from Defendant their actual damages, treble damages, costs, and attorneys' fees.

## COUNT VII: DECLARATORY AND INJUNCTIVE RELIEF

108.    The preceding paragraphs are incorporated by reference as if fully alleged herein.

109.    An actual controversy has arisen and now exists between Plaintiffs and the Class, on the one hand, and Defendant, on the other, concerning the respective rights and duties of the parties under the Policies.

110.    Plaintiffs contend that Defendant breached and continues to breach the Policies in the following respects:

        a.      By using unauthorized and undisclosed factors to compute the Monthly Cost of Insurance Rates under the Policies, Defendant impermissibly increased Monthly Cost of Insurance Rates for the Policies and, as a result, withdraws Cost of Insurance Charges from the Account Values of Plaintiffs and the Class in amounts greater than those authorized by the Policies; and

        b.      By inflating Monthly Cost of Insurance Rates under the Policies with expense factors that are not disclosed as being used to determine those rates, Defendant impermissibly deducted expense charges from the Account Values of Plaintiffs and the

Class in amounts in excess of the fixed expense charges expressly authorized by the Policies.

111.    Plaintiffs therefore seek a declaration of the parties' respective rights and duties under the Policies and requests the Court to declare the aforementioned conduct of Defendant as unlawful and in material breach of the Policies so that future controversies may be avoided.

112.    Pursuant to a declaration of the parties' respective rights and duties under the Policies, Plaintiffs further seek an injunction temporarily, preliminarily, and permanently enjoining Defendant from continuing to collect unlawfully inflated charges in violation of the Policies.

## **PRAYER FOR RELIEF**

113.    WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, request relief as follows:

(a) That the Court enter an order certifying the class, appointing Plaintiffs as representatives of the Class, appointing Plaintiffs' counsel as Class counsel; and directing that reasonable notice of this action, as provided by Federal Rule of Civil Procedure 23(c)(2), be given to the Class;

(b) For a judgment against Defendant for the causes of action alleged against it;

(c) For compensatory damages in an amount to be proven at trial;

(d) For treble damages;

(e) For punitive and exemplary damages;

(f) For a declaration that Defendant's conduct as alleged herein is unlawful and in material breach of the Policies;

(g) For appropriate injunctive relief, enjoining Defendant from continuing to collect unlawfully inflated charges in violation of the Policies;

(h) For pre-judgment and post-judgment interest at the maximum rate permitted by law;

(i) For Plaintiffs' attorneys' fees;

(j) For Plaintiffs' costs incurred; and

(k) For such other relief in law or equity as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a trial by jury of all claims so triable.

Dated: March 1, 2021                           Respectfully submitted,

STUEVE SIEGEL HANSON LLP

*/s/ Ethan M. Lange*
Norman E. Siegel (admitted *pro hac vice*)
siegel@stuevesiegel.com
Ethan M. Lange (Tex. Bar No. 24064150)
lange@stuevesiegel.com
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Tel: 816-714-7100
Fax: 816-714-7101

John J. Schirger (admitted *pro hac vice*)
jschirger@millerschirger.com
Matthew W. Lytle (admitted *pro hac vice*)
mlytle@millerschirger.com
Joseph M. Feierabend (admitted *pro hac vice*)
jfeierabend@millerschirger.com
MILLER SCHIRGER, LLC
4520 Main Street, Suite 1570
Kansas City, Missouri 64111
Tel: 816-561-6500
Fax: 816-561-6501

James J. Pizzirusso (admitted *pro hac vice*)
jpizzirusso@hausfeld.com
Nathaniel C. Giddings (admitted *pro hac vice*)
ngiddings@hausfeld.com
Melinda R. Coolidge (admitted *pro hac vice*)
mcoolidge@hausfeld.com
HAUSFELD LLP
1700 K Street, NW
Washington, DC 20006
Tel: (202) 540-7200
Fax: (202)540-7201

James T. Clancy (Tex. Bar No. 00795292)
jclancy@branscomblaw.com
BRANSCOMB, PLLC
802 N. Carancahua, Suite 1900
Corpus Christi, TX 78401-0036
Tel: (361) 886-3800
Fax: (361) 886-3805

Kimberly Fetsick (admitted *pro hac vice*)
kfetsick@hausfeld.com
HAUSFELD LLP
33 Whitehall Street, 14th Floor
New York, NY 10004
Tel: (646) 357-1100
Fax: (212) 202-4322

Warren T. Burns (TX Bar No. 24053119)
wburns@burnscharest.com
Will Thompson (TX Bar No. 24094981)
whompson@burnscharest.com
BURNS CHAREST LLP
900 Jackson Street, Suite 500
Dallas, TX 75202
Tel: (469) 904-4550
Fax: (469) 444-5002

Larry D. Lahman (admitted *pro hac vice*)
larry.lahman@sbcglobal.net
Roger L. Ediger (admitted *pro hac vice*)
rle@mdpllc.com
MITCHELL DeCLERK
202 West Broadway Avenue
Enid, OK 73701
Tel: (580) 234-5144
Fax: (580) 234-8890

Sophia Goren Gold (*pro hac vice* pending)
sgold@kalielpllc.com
KALIEL PLLC
1875 Connecticut Avenue NW, 10th Floor
Washington, DC 20009
Tel: (202) 350-4783
Fax: (202) 871-8180

David M. Wilkerson (*pro hac vice* pending)
The Van Winkle Law Firm
11 N. Market Street
Asheville, NC 28801
Phone: 828-258-2991
Fax: 828-257-2767
dwilkerson@vwlawfirm.com

*Attorneys for Plaintiffs Ronald K. Page and Anna Gonzalez*

# EXHIBIT A

# STATE FARM LIFE INSURANCE COMPANY

**HOME OFFICE: ONE STATE FARM PLAZA, BLOOMINGTON, ILLINOIS 61710-0001**

| | |
|---|---|
| **INSURED** | RONALD K PAGE (Male) |
| **AGE** | ■ |
| **POLICY NUMBER** | LF-1518-9386 |
| **POLICY DATE** | February 3, 1997 |
| **INITIAL BASIC AMOUNT** | $100,000 |

This policy is based on the application and the payment of premiums, as specified in the policy. State Farm Life Insurance Company will pay the proceeds to the beneficiary when due proof is received that the Insured died before this policy terminated. If the Insured is alive on the maturity date, the cash surrender value on the maturity date will be paid to the Owner and this policy will terminate.

**30-Day Right to Examine the Policy.**   This policy may be returned within 30 days of its receipt for a refund of all premiums paid. Return may be made to State Farm Life Insurance Company or one of its agents. If returned, this policy will be void from the policy date.

**Read this policy with care.** This is a legal contract between the Owner and State Farm Life Insurance Company.

Secretary

President

Registrar

---

**BASIC PLAN DESCRIPTION**
Flexible premium adjustable life insurance. A death benefit is payable if the Insured dies before the maturity date. The cash surrender value is payable if the Insured is alive on the maturity date. Coverage may terminate prior to the maturity date. Flexible premiums are payable while the Insured is alive until the maturity date. The basic plan is eligible for annual dividends.

---

# CONTENTS

|  | PAGE |
|---|---|
| Policy Identification | 3 |
| Schedule of Benefits | 3 |
| Schedule of Premiums | 3 |
| Monthly Deductions | 3 |
| Schedule of Surrender Charges | 4 |
| Cost of Insurance Rates and Monthly Charges | 4 |
| Definitions | 5 |

**Ownership** .......................................................... 5
Owner.                              Change of Owner.

**Death Benefit and Death Benefit Options** ............................ 6
Death Benefit.                     Change in Basic Amount.
Death Benefit Options.             Change in Death Benefit Option.

**Payment of Benefits** ................................................ 7
Beneficiary Designation.           Methods of Payment.
Change of Beneficiary Designation. Minimum Payment.
Order of Payment on the Insured's  Basis of Computation for Payments.
   Death.                          Additional Amounts Payable.

**Premiums** .......................................................... 9
Payment of Premiums.               Grace Period.
Premium Limitations.               Reinstatement.

**Guaranteed Values** ................................................. 9
Account Value.                     Cash Surrender Value.
Monthly Deduction.                 Withdrawals.
Cost of Insurance.                 Surrender Charge.
Monthly Cost of Insurance Rates.   Basis of Computation.
Interest.

**Policy Loan** ...................................................... 12
Loan.                              Loan Interest.
Loan Value.                        Loan Repayment.

**General** .......................................................... 12
The Contract.                      Assignment.
Annual Report.                     Error in Age or Sex.
Projection of Benefits and Values. Incontestability.
Annual Dividends.                  Limited Death Benefit.
Dividend Options.

The Application and any Riders and Endorsements follow page 14.

# POLICY IDENTIFICATION

Insured     RONALD K PAGE             Age   ■
              (Male)

Policy Number    LF-1518-9386       Initial Basic Amount   $100,000

Policy Date    February 3, 1997

Issue Date    February 20, 1997

# SCHEDULE OF BENEFITS

Universal Life Basic Plan:
   Death Benefit Option 2 (Basic Amount plus the Account Value)
   Basic Amount (Standard Rate Class-Male Non-Tobacco):  $100,000

Maturity Date:  February 3, 2053

# SCHEDULE OF PREMIUMS

The Initial Premium is $508.38.
Planned premiums are included in the schedule shown below.  The payment period for the planned premiums is 1 month starting on March 3, 1997 payable until the maturity date.
A premium expense charge of 5% is deducted from each premium paid.

|  | Total Premiums For Policy Year |
|---|---|
| Beginning: |  |
| February 3, 1997 | $1,493.98 |
| February 3, 1998 | 1,020.00 |

# MONTHLY DEDUCTIONS

The deduction date is the 3rd of each month.

Maximum monthly cost of insurance rates are shown on page 4.  Cost of insurance is deductible to the maturity date.
The monthly expense charge is $5.00.

NOTE:  Insurance may terminate prior to the maturity date if premiums paid are not sufficient to continue the insurance to that date.

# SCHEDULE OF SURRENDER CHARGES

| Beginning Policy Year | Policy Month | Surrender Charge | Beginning Policy Year | Policy Month | Surrender Charge |
|---|---|---|---|---|---|
| 1 | 1 | $76.00 | 1 | 12 | $912.00 |
| 1 | 2 | 152.00 | 2 | 1 | 912.00 |
| 1 | 3 | 228.00 | 3 | 1 | 912.00 |
| 1 | 4 | 304.00 | 4 | 1 | 798.00 |
| 1 | 5 | 380.00 | 5 | 1 | 684.00 |
| 1 | 6 | 456.00 | 6 | 1 | 570.00 |
| 1 | 7 | 532.00 | 7 | 1 | 456.00 |
| 1 | 8 | 608.00 | 8 | 1 | 342.00 |
| 1 | 9 | 684.00 | 9 | 1 | 228.00 |
| 1 | 10 | 760.00 | 10 | 1 | 114.00 |
| 1 | 11 | 836.00 | 11 | 1 | 0.00 |

# COST OF INSURANCE RATES AND MONTHLY CHARGES

## Maximum Monthly Cost of Insurance Rates Per $1000

(Standard Rate Class-Male Non-Tobacco)

| Age | Rate | Age | Rate | Age | Rate | Age | Rate |
|---|---|---|---|---|---|---|---|
| 44 | .3649 | 58 | 1.1894 | 72 | 4.2723 | 86 | 15.6263 |
| 45 | .3950 | 59 | 1.2942 | 73 | 4.7329 | 87 | 16.9762 |
| 46 | .4277 | 60 | 1.4109 | 74 | 5.2401 | 88 | 18.3754 |
| 47 | .4620 | 61 | 1.5430 | 75 | 5.7847 | 89 | 19.8343 |
| 48 | .4989 | 62 | 1.6923 | 76 | 6.3595 | 90 | 21.3788 |
| 49 | .5399 | 63 | 1.8597 | 77 | 6.9577 | 91 | 23.0518 |
| 50 | .5852 | 64 | 2.0454 | 78 | 7.5852 | 92 | 24.9371 |
| 51 | .6381 | 65 | 2.2459 | 79 | 8.2619 | 93 | 27.2442 |
| 52 | .6968 | 66 | 2.4605 | 80 | 9.0119 | 94 | 30.4453 |
| 53 | .7640 | 67 | 2.6886 | 81 | 9.8582 | 95 | 35.4922 |
| 54 | .8380 | 68 | 2.9344 | 82 | 10.8223 | 96 | 44.5151 |
| 55 | .9180 | 69 | 3.2068 | 83 | 11.9024 | 97 | 62.8314 |
| 56 | 1.0030 | 70 | 3.5147 | 84 | 13.0775 | 98 | 73.0824 |
| 57 | 1.0932 | 71 | 3.8670 | 85 | 14.3247 | 99 | 83.3333 |

## DEFINITIONS

**We, us, and our** refer to State Farm Life Insurance Company.

**You and your** refer to the Owner.

**Application.**   Includes any life insurance application, any application for change in the policy, medical history, questionnaire, and other documents from you or any other person proposed for insurance which are made a part of this policy.

**Basic Amount.**   The Initial Basic Amount plus any increases less any decreases.

**Basic Amount Minimum.**   On or after the policy anniversary when the Insured is age 55, the Basic Amount cannot be less than $25,000. Otherwise, the Basic Amount cannot be less than $50,000.

**Benefit Period Ends.**   For any rider, the policy anniversary in the year shown under this heading on page 3 is the date the rider terminates.

**Deduction Date.**   The policy date and each monthly anniversary of the policy date.

**Dollars.**   Any money we pay, or which is paid to us, must be in United States dollars.

**Effective Date.**   Coverage starts on this date.

**Initial Basic Amount.**   The amount of coverage on the Insured provided by the Basic Plan on the policy date.

**Insurance Amount.**   The amount of coverage on the effective date of each rider shown on page 3.

**Maturity Date.**   The policy anniversary when the Insured is age 100.

**Monthly Charge Deductible.**   A monthly charge for any rider is deducted as part of the monthly deduction until the policy anniversary in the year shown on page 3.

**Officer.**   The president, a vice president, the secretary, or an assistant secretary of State Farm Life Insurance Company.

**Payee.**   On the Insured's death, the beneficiaries shown in the application, unless changed. If you cash surrender this policy or this policy matures, the persons that you have named. A payee can be other than a natural person only if we agree.

**Planned Premium.**   The premium amount that you have chosen. This amount is shown on page 3 for the payment period that you have chosen.

**Policy Date.**   The effective date of this policy.

**Policy Month, Year, or Anniversary.**   A policy month, year, or anniversary is measured from the policy date.

**Proceeds.**   The amounts payable on the death of the Insured.

**Rate Class.**   The underwriting class of the person insured. A rate class will be determined for the Initial Basic Amount and each increase in the Basic Amount.

**Request.**   A written request signed by the person making the request. Such request must be sent to and be in a form acceptable to us.

**Rider.**   Any benefit, other than the Basic Plan, made a part of this policy.

## OWNERSHIP PROVISIONS

**Owner.**   The Owner is as named in the application, unless changed. You may exercise any policy provision only by request and while the Insured is alive.

**Change of Owner.**   You may change the ownership of this policy by sending us a request while the Insured is alive. We have the right to request this policy to make the change on it. The change will take effect the date you sign the request, but the change will not affect any action we have taken before we receive the request. A change of owner does not change the beneficiary designation.

## DEATH BENEFIT AND DEATH BENEFIT OPTIONS PROVISIONS

**Death Benefit.** The amount of death benefit is an amount of insurance based on the death benefit option plus any insurance amounts payable under any riders on the Insured and the part of the cost of insurance for the part of the policy month beyond the Insured's death less any loan, accrued loan interest, and, if the Insured dies during the grace period, the monthly deductions from the start of the grace period.

**Death Benefit Options.** There are two death benefit options. If you do not choose an option, we will use option 2. The account value on the date of death is used in determining the amount of insurance.

**Option 1.** The amount of insurance will be the greater of (1) the Basic Amount plus 95% of any premium received since the last deduction date plus interest earned on that amount of premium or (2) a percentage of the account value. Such percentage is based on the Insured's age at the start of the current policy year.

**Option 2.** The amount of insurance will be the greater of (1) the Basic Amount plus the account value or (2) a percentage of the account value. Such percentage is based on the Insured's age at the start of the current policy year.

| Percentage of Account Value Table | | | |
| --- | --- | --- | --- |
| Age | Percentage | Age | Percentage |
| 0-40 | 250% | 61 | 128% |
| 41 | 243% | 62 | 126% |
| 42 | 236% | 63 | 124% |
| 43 | 229% | 64 | 122% |
| 44 | 222% | 65 | 120% |
| 45 | 215% | 66 | 119% |
| 46 | 209% | 67 | 118% |
| 47 | 203% | 68 | 117% |
| 48 | 197% | 69 | 116% |
| 49 | 191% | 70 | 115% |
| 50 | 185% | 71 | 113% |
| 51 | 178% | 72 | 111% |
| 52 | 171% | 73 | 109% |
| 53 | 164% | 74 | 107% |
| 54 | 157% | 75-90 | 105% |
| 55 | 150% | 91 | 104% |
| 56 | 146% | 92 | 103% |
| 57 | 142% | 93 | 102% |
| 58 | 138% | 94 | 101% |
| 59 | 134% | 95 & up | 100% |
| 60 | 130% | | |

**Change in Basic Amount.** You may request a change in the Basic Amount once each policy year. The minimum amount of change is $25,000 for an increase and $10,000 for a decrease. For any change in Basic Amount, we will send you a revised page 3 to be placed with this policy.

If you request an increase, an application must be completed, evidence of insurability satisfactory to us must be furnished, and there must be enough cash surrender value to make a monthly deduction which includes the cost of insurance for the increase. No increases will be allowed after the policy anniversary when the Insured is age 80. The revised page 3 will show the amount of the increase and its effective date.

If you request a decrease, the Basic Amount remaining after the decrease cannot be less than the Basic Amount Minimum. We reserve the right to not accept a request for a decrease in the Basic Amount if such decrease could result in this policy being disqualified as a life insurance contract under any section of the United States Internal Revenue Code, as amended from time to time. Any decrease will first be used to reduce the most recent increase. Then, the next most recent increases will be reduced. Finally, the Initial Basic Amount will be reduced. The revised page 3 will show the amount of decrease and its effective date. The decrease will take effect on the date we receive the request.

**Change of Death Benefit Option.** You may request a change of death benefit option once each policy year. For a change in death benefit option, we will send you a revised page 3 to be placed with this policy. The revised page will show the effective date of the change.

If the change is to option 1, the Basic Amount will be increased by the account value on the effective date of the increase. We reserve the right to not accept a request for a change to option 1 if such change could result in this policy being disqualified as a life insurance contract under any section of the United States Internal Revenue Code, as amended from time to time.

If the change is to option 2, the Basic Amount will be decreased by the account value on the effective date of the decrease.

## PAYMENT OF BENEFITS PROVISIONS

**Beneficiary Designation.**   This is as shown in the application, unless you have made a change. It includes the name of the beneficiary and the order and method of payment. If you name "estate" as a beneficiary, it means the executors or administrators of the last survivor of you and all beneficiaries. If you name "children" of a person as a beneficiary, only children born to or legally adopted by that person will be included.

We may rely on an affidavit as to the ages, names, and other facts about all beneficiaries. We will incur no liability if we act on such affidavit.

**Change of Beneficiary Designation.**   You may make a change while the Insured is alive by sending us a request. The change will take effect the date the request is signed, but the change will not affect any action we have taken before we receive the request. We have the right to request your policy to make the change on it.

**Order of Payment on the Insured's Death.** When the Insured dies, we will make payment in equal shares to the primary beneficiaries living when payment is made. If a primary dies after the first payment is made, we will pay that primary's unpaid share in equal shares to the other primaries living when payment is made. If the last primary dies, we will make payment in equal shares to the successor beneficiaries living when payment is made. If a successor dies while receiving payments, we will pay that successor's unpaid share in equal shares to the other successors living when payment is made. If, at any time, no primary or successor is alive, we will make a one sum payment in equal shares to the final beneficiaries. If, at any time, no beneficiary is living, we will make a one sum payment to you, if living when payment is made. Otherwise, we will make a one sum payment to the estate of the last survivor of you and all beneficiaries. "When payment is made" means (1) the date that a periodic payment is due or (2) the date that a request is signed for a cash withdrawal or a one sum payment. You may change this order of payment by sending us a request while the In-

sured is alive.

**Methods of Payment.**   We will pay the proceeds under the Interest method unless you choose another method. If the payee is other than a natural person, we will make payment under the One Sum method.

All payment intervals are measured from the date the policy is surrendered or from the date the Insured dies. No part of any payment can be assigned before the payment is made.

After the Insured's death, anyone who has the right to make a withdrawal may change the method of payment and may name a successor to their interest. The successor payee may be their estate.

**Method 1 (Interest Method).**   We will pay interest at the end of each monthly interval. The interest rate will be at least 3½% a year. If chosen, we will pay interest at the end of 3, 6, or 12 month intervals. Withdrawals may be made at any time, but any withdrawal must be at least $500. We will pay interest to the date of withdrawal on the amount withdrawn.

**Method 2 (Fixed Years Method).**   We will make equal payments at the end of each monthly interval for a fixed number of years. These payments include interest. The guaranteed interest rate is 3½% a year. The present value of any unpaid payments may be withdrawn at any time.

### FIXED YEARS TABLE
Monthly payments that $1000 will provide for the number of years chosen. Payments for years not shown will be given, if requested.

| Years | Payments | Years | Payments |
|-------|----------|-------|----------|
| 1 | $84.90 | 8 | $11.93 |
| 2 | 43.18 | 9 | 10.78 |
| 3 | 29.28 | 10 | 9.86 |
| 4 | 22.33 | 15 | 7.12 |
| 5 | 18.17 | 20 | 5.77 |
| 6 | 15.39 | 25 | 4.98 |
| 7 | 13.41 | 30 | 4.46 |

## PAYMENT OF BENEFITS PROVISIONS (CONTINUED)

**Method 3 (Life Income Method).**   We will make equal payments at the end of each monthly interval as long as the payee is alive. We base the amount of each payment on the payee's age and sex at the start of the first monthly interval. We may require proof of the payee's age and sex. The payee may not withdraw the present value of the payments. If the payee dies during a certain period, we will continue the payments to the end of the certain period; or the successor payee may have the present value of any remaining payments paid in one sum.

### LIFE INCOME TABLE

Monthly payments for life that $1000 will provide. Payments for ages not shown will be given, if requested.

| Age Last Birthday | Life | | Life with 10 Years Certain | |
|---|---|---|---|---|
| | Male | Female | Male | Female |
| 50 | $4.50 | $4.15 | $4.46 | $4.13 |
| 55 | 4.91 | 4.48 | 4.84 | 4.45 |
| 60 | 5.47 | 4.92 | 5.34 | 4.86 |
| 65 | 6.25 | 5.53 | 5.96 | 5.41 |
| 70 | 7.34 | 6.38 | 6.76 | 6.12 |
| 75 | 8.85 | 7.64 | 7.62 | 7.01 |

**Method 4(Fixed Amount Method).**   We will make equal payments at the end of 1, 3, 6, or 12 month intervals. We will continue payments until the amount put under this method together with compound interest has been paid. The interest rate will be at least 3½% a year. The payment interval chosen must provide a total annual payment of at least $100 for each $1000 put under this method. The unpaid balance may be withdrawn at any time.

**Method 5 (Joint Life Income Method).** We will make equal payments at the end of each monthly interval as long as at least one of the two payees is alive. We will base each payment on the age and sex of both payees at the start of the first monthly interval. We may require proof of the age and sex of each payee. The payees may not

withdraw the present value of any payments.

### JOINT LIFE INCOME TABLE

Monthly payments that $1000 will provide as long as at least one of the two payees is alive. Payments for age combinations not shown will be given, if requested.

| Age Last Birthday Male | Female | | | |
|---|---|---|---|---|
| | 60 | 65 | 70 | 75 |
| 60 | $4.45 | $4.69 | $4.91 | $5.10 |
| 65 | 4.60 | 4.92 | 5.24 | 5.55 |
| 70 | 4.71 | 5.11 | 5.56 | 6.02 |
| 75 | 4.79 | 5.26 | 5.83 | 6.47 |

**Method 6 (One Sum Method).**   We will pay the cash surrender value or the proceeds in one sum. Interest at the rate of at least 3½% a year will be paid from the date of the Insured's death to the date of payment.

**Method 7 (Other Method).**   Payment by any other method may be made if we agree.

**Minimum Payment.**   If any payment, except the last, under a method of payment would be less than $100 per payee, we will pay the present value of any unpaid payments in one sum.

**Basis of Computation for Payments.**   The monthly payments shown for methods 3 and 5 are guaranteed payments based on an interest rate of 3½% a year and the 1983 Table a, projected 10 years using Projection Scale G.

Any present values will be based on the interest rate used in determining the payments for the method.

**Additional Amounts Payable.**   Each year we may apportion and pay dividends or additional interest under any method of payment.

## PREMIUM PROVISIONS

**Payment of Premiums.** You may pay premiums at our Home Office, a regional office, or to one of our agents. We will give you a receipt signed by one of our officers, if you request one.

The initial premium is shown on page 3 and is due on the policy date. All other premiums may be paid in any amount and at any time if:
  (1)  the amount is at least $25 and
  (2)  in a policy year, the total premiums, excluding the initial premium, do not exceed without our consent, the total Planned Premiums for a policy year.

**Premium Limitations.** We reserve the right to refund any premium paid if such premium amount would be in excess of the guideline premium limitation as defined by Section 7702, Internal Revenue Code of 1988 (or as later amended). No expense charge will be deducted from the refunded premium.

**Grace Period.** If, on any deduction date, the cash surrender value is not enough to cover the monthly deduction, the policy will stay in force until the end of the grace period. The grace period is 61 days and starts on that deduction date. We will mail a notice at least 31 days prior to the end of the grace period to you and to any assignee of record. A premium large enough to cover the monthly deductions for the grace period and any increase in the surrender charges must be paid before the end of the grace period; otherwise, this policy will lapse and terminate without value.

**Reinstatement.** If the policy is terminated at the end of the grace period, you may apply to reinstate it within 5 years after lapse. You must give us proof of the Insured's insurability that is satisfactory to us. You must pay premiums (1) to keep the policy in force for 2 months and (2) to pay the monthly deductions for the grace period. Reinstatement will take effect on the date we approve the application for reinstatement.

## GUARANTEED VALUES PROVISIONS

**Account Value.** The account value on the policy date is 95% of the initial premium less the monthly deduction for the first policy month.

The account value on any deduction date after the policy date is the account value on the prior deduction date:
  (1)  plus 95% of any premiums received since the prior deduction date,
  (2)  less the deduction for the cost of insurance for any increase in Basic Amount and the monthly charges for any riders that became effective since the prior deduction date,
  (3)  less any withdrawals since the prior deduction date,
  (4)  less the current monthly deduction,
  (5)  plus any dividend paid and added to the account value on the current deduction date, and
  (6)  plus any interest accrued since the prior deduction date.

The account value on any other date is the account value on the prior deduction date:
  (1)  plus 95% of any premiums received since the prior deduction date,
  (2)  less the deduction for the cost of insurance for any increase in Basic Amount and the monthly charges for any riders that became effective since the prior deduction date,
  (3)  less any withdrawals since the prior deduction date, and
  (4)  plus any interest accrued since the prior deduction date.

**Monthly Deduction.** This deduction is made each month, whether or not premiums are paid, as long as the cash surrender value is enough to cover that monthly deduction. Each deduction includes:
  (1)  the cost of insurance,
  (2)  the monthly charges for any riders, and
  (3)  the monthly expense charge.

| GUARANTEED VALUES PROVISIONS (CONTINUED) |
| --- |

**Cost of Insurance.**   This cost is calculated each month. The cost is determined separately for the Initial Basic Amount and each increase in Basic Amount.

The cost of insurance is the monthly cost of insurance times the difference between (1) and (2), where:

(1)   is the amount of insurance on the deduction date at the start of the month divided by 1.0032737, and

(2)   is the account value on the deduction date at the start of the month before the cost of insurance and the monthly charge for any waiver of monthly deduction benefit rider are deducted.

Until the account value exceeds the Initial Basic Amount, the account value is part of the Initial Basic Amount. Once the account value exceeds that amount, if there have been any increases in Basic Amount, the excess will be part of the increases in order in which the increases occurred.

**Monthly Cost of Insurance Rates.**   These rates for each policy year are based on the Insured's age on the policy anniversary, sex, and applicable rate class. A rate class will be determined for the Initial Basic Amount and for each increase. The rates shown on page 4 are the maximum monthly cost of insurance rates for the Initial Basic Amount. Maximum monthly cost of insurance rates will be provided for each increase in the Basic Amount. We can charge rates lower than those shown. Such rates can be adjusted for projected changes in mortality but cannot exceed the maximum monthly cost of insurance rates. Such adjustments cannot be made more than once a calendar year.

**Interest.**   An interest rate of at least 4% a year will be applied to the account value. The rate applied to the amount of account value up to the amount of any loan may differ from the rate

applied to the account value in excess of the amount of any loan. We will determine these rates at least once a year.

**Cash Surrender Value.**   You may request surrender of this policy at any time. This policy will terminate on the date we receive the request or later date if you so request it. We will pay you the cash surrender value as of the date coverage ceases plus the monthly deduction for the part of the policy month beyond that date. We will pay you in one sum unless you choose another method of payment. The cash surrender value of this policy is its account value less any surrender charge and any loan and accrued loan interest. The cash surrender value on the maturity date will be the account value on that date less any loan and accrued loan interest. The cash surrender value will not be less than zero. If this policy is surrendered within 31 days after a policy anniversary, the cash surrender value will not decrease within that period except for any loans or withdrawals. We may defer paying you the cash surrender value for up to 6 months after receiving your request.

**Withdrawals.**   You may request to withdraw part of the account value while this policy is in force. No more than 4 withdrawals can be made in any policy year. Any withdrawal must be at least $500 and must be less than the cash surrender value. We may defer paying you a withdrawal for up to 6 months unless the withdrawal is to pay premiums on other policies with us.

If death benefit option 1 is in effect, then the Basic Amount will be reduced by the withdrawal, effective with the date of the withdrawal; however, no withdrawal can be made which will reduce the Basic Amount to less than $25,000. The reduction will be made as if a decrease in the Basic Amount had been requested.

| GUARANTEED VALUES PROVISIONS (CONTINUED) |
| --- |

**Surrender Charge.**   The schedule of surrender charges is shown on page 4. For each increase in Basic Amount, additional surrender charges will apply. A revised page 4 will show a revised schedule of surrender charges which includes those additional charges.

Upon reinstatement, the surrender charges will be adjusted for any surrender charge deducted at the time of lapse. A revised page 4 will show a schedule of the adjusted surrender charges.

A schedule of surrender charges is determined separately for the Initial Basic Amount and for each increase in Basic Amount. A schedule is determined using a Base Surrender Charge and covers 120 policy months following the policy date or the effective date of an increase in Basic Amount. For the Initial Basic Amount, use the surrender charge at the Insured's age on the policy date. For each increase in Basic Amount, use the surrender charge at the Insured's age on the policy anniversary on or first preceding the effective date of that increase. Take that surrender charge times the Initial Basic Amount, or the amount of the increase, if applicable, divided by 1,000. Then, divide that result by 12 to determine the surrender charge that will apply for that amount of insurance for the first policy month after its effective date. The surrender charge increases by that amount for each of the next 11 policy months. The surrender charge then remains level for the next 24 policy months. The surrender charge decreases after 36 policy months and then decreases by that same amount after each successive 12 policy months. The amount of each decrease is equal to the surrender charge in effect at the end of 36 policy months divided by 8.

**Basis of Computation.**   The guaranteed values in this policy are at least as large as those required by law in the state where it is delivered based on the Commissioners 1980 Standard Ordinary Mortality Table with an interest rate of 4% a year. The insurance authority there has a statement of how these values are determined.

The guaranteed values and maximum cost of insurance rates are based on the Insured's age last birthday and sex. The interest rate is 4% a year. The Commissioners 1980 Standard Ordinary Mortality Table is used. Modifications are made for rate classes other than standard.

**BASE SURRENDER CHARGE**
The base surrender charge is for each $1,000 of Initial Basic Amount or amount of increase in Basic Amount.

| Age | Base Surrender Charge | Age | Base Surrender Charge |
| --- | --- | --- | --- |
| 0-19 | $ 1.20 | 45 | $9.72 |
| 20 | 1.32 | 46 | 10.32 |
| 21 | 1.44 | 47 | 10.80 |
| 22 | 1.56 | 48 | 11.40 |
| 23 | 1.80 | 49 | 11.88 |
| 24 | 2.04 | 50 | 12.72 |
| 25 | 2.40 | 51 | 13.44 |
| 26 | 2.64 | 52 | 14.04 |
| 27 | 2.88 | 53 | 14.88 |
| 28 | 3.12 | 54 | 15.36 |
| 29 | 3.36 | 55 | 16.02 |
| 30 | 3.60 | 56 | 16.20 |
| 31 | 3.84 | 57 | 16.68 |
| 32 | 4.20 | 58 | 17.16 |
| 33 | 4.68 | 59 | 17.40 |
| 34 | 4.68 | 60 | 18.00 |
| 35 | 5.16 | 61 | 18.36 |
| 36 | 5.40 | 62 | 18.48 |
| 37 | 5.64 | 63 | 18.60 |
| 38 | 6.36 | 64 | 18.60 |
| 39 | 6.72 | 65 | 19.40 |
| 40 | 7.38 | 66 | 19.56 |
| 41 | 7.44 | 67 | 19.80 |
| 42 | 8.16 | 68 | 20.40 |
| 43 | 8.76 | 69 | 20.64 |
| 44 | 9.12 | 70-80 | 21.00 |

## POLICY LOAN PROVISIONS

**Loan.**   You may borrow against this policy. This policy is the sole security for such loan. We may defer a loan for up to 6 months after receiving your request unless the loan will be used to pay premiums on other policies with us.

You may borrow the loan value less any existing loan and accrued interest and monthly deductions for the next 2 months. If your unpaid loan plus accrued interest exceeds the loan value on the monthly deduction date, the Grace Period provision will apply.

**Loan Value.**   The loan value is the account value of this policy less the surrender charge.

**Loan Interest.**   Interest accrues and is payable each day at a rate of 8% a year. Any interest not paid is added to the loan on each policy anniversary.

**Loan Repayment.**   You may repay all or part of a loan at any time before the Insured dies or the policy is surrendered or terminated.

## GENERAL PROVISIONS

**The Contract.**   The policy contains the Basic Plan, any amendments, endorsements, and riders, and a copy of the application. A copy of any application for a change to this policy will be sent to you to be placed with the policy. Such applications become part of this policy. The policy is the entire contract. We have relied on the statements in the application in issuing this policy. We reserve the right to investigate the truth and completeness of those statements. In the absence of fraud, they are representations and not warranties. Only material misstatements in the application will be used to contest this policy or deny a claim.

Only an officer has the right to change this policy. No agent has the authority to change the policy or to waive any of its terms. All endorsements, amendments, and riders must be signed by an officer to be valid.

**Annual Report.**   Each year, we will send you a report. This report will show:
   (1)   the account value, the cash surrender value, any loan and accrued loan interest, and the amount of the death benefit as of the date of the report and
   (2)   any premiums paid, any deductions made, and any withdrawals made since the last report.

**Projection of Benefits and Values.**   You may request a projection of death benefits, account values, and cash surrender values. We may charge a reasonable fee not to exceed $25 for providing this projection.

**Annual Dividends.**   We do not expect to pay dividends on this policy; however, we may apportion and pay dividends each year. Any such dividends will be paid only at the end of the policy year. There is no right to a partial or pro rated dividend prior to the end of the policy year.

**Dividend Options.**   You may choose to have your dividend used under one of these options:

   1.   **Cash.**   We will pay it to you in cash.

   2.   **Addition to Account Value.**   We will add it to the account value at the end of the policy year.

If you do not choose an option or the option you choose is not available, we will use option 2. You may request to change the option. The change will apply only to dividends paid after we receive the request.

**Assignment.**   You may assign this policy or any interest in it. We will recognize an assignment only if it is in writing and filed with us. We are not responsible for the validity or effect of any assignment. An assignment may limit the interest of any beneficiary.

## GENERAL PROVISIONS (CONTINUED)

**Error in Age or Sex.**   If the Insured's date of birth or sex is not as stated in the application, we will adjust each benefit on the Insured to the benefit payable had the Insured's age and sex been stated correctly. Such adjustment will be based on the ratio of the correct monthly deduction for the most recent deduction date for that benefit to the monthly deduction that was made. For the Basic Plan, the adjustment is made to the amount of insurance less the account value.

**Incontestability.**   We will not contest the Basic Plan after it has been in force during the Insured's lifetime for 2 years from the issue date of the policy. We will not contest any increase in Basic Amount or reinstatement after it has been in force during the lifetime of the Insured for 2 years from the effective date of the increase in Basic Amount or reinstatement. We will not contest an increase due to a change to Death Benefit Option 1. Any contest of any increase in Basic Amount or reinstatement will be limited to material misstatements contained in the application for such increase or reinstatement.

Each rider has its own incontestability provision.

**Limited Death Benefit.**   If the Insured dies by suicide while sane or by self-destruction while insane within 2 years from the issue date of the policy, the Basic Amount will not be paid. The proceeds in this case will be limited to the premiums paid on the Basic Plan less any loan, accrued loan interest, any withdrawals from the account value, and any dividends paid on the Basic Plan.

Any increase in Basic Amount or amount reinstated will not be paid if the Insured's death results from suicide while sane or self-destruction while insane within 2 years from the effective date of such increase or reinstatement. The proceeds of the increase will be limited to the monthly deductions for the increase. This does not apply to an increase due to a change to Death Benefit Option 1. The proceeds of a reinstated policy will be limited to the premiums paid on the Basic Plan since reinstatement less any loan, accrued loan interest, any withdrawals from the account value, and any dividends paid on the Basic Plan.

Each rider has its own limited death benefit provision.

**Part (B)**

To: ☑ State Farm Life Insurance Company      ☐ State Farm Life and Accident Assurance Company

Re: Policy No.(s) _____ **1087 - 9099** _____   Name of Insured **PAGE, MARTHA / PAGE, RONALD K**

☐ **CHANGE MAIL ADDRESS TO** _____   Policyowner's Telephone No. _____

| Street | City | State | Zip Code |

☐ **CHANGE MODE OF PREMIUM PAYMENT TO**
   ☐ Annually   ☐ Semi-annually   ☐ Quarterly
   ☐ Monthly   ☐ Special Monthly (Type)_____

☐ **PREMIUM OFFSET (Mode of payment must be annual)**
   Dividend method must be Paid-up Additions or Accumulate; if not, change Dividend Method below.

☐ **CHANGE METHOD OF DIVIDEND PAYMENT TO**
   ☐ Accumulate          ☐ Paid in Cash          ☐ Paid-up Additions          ☐ Reduce Premium

☐ **CHANGE NAME OF** _____ **To** _____
   (Print Old Name)                                (Print New Name)
If the name of the Policyowner is being changed, sign the new name as "Signature of Policyowner" below.

☑ **CHANGE OWNERSHIP TO** **RONALD K. PAGE**          x **Ronald K Page**
   (New Policyowner's Name)                         (New Policyowner's Signature)

_____ (New Policyowner's Address)          _____ (New Policyowner's Social Security No.)

**ALL OTHER OWNERSHIP PROVISIONS AND RIGHTS WILL REMAIN THE SAME UNLESS SPECIFICALLY CHANGED.** If endorsement is required by policy provision, recording by the Company and mailing to the new owner a copy of this instrument shall constitute such endorsement. **PLEASE SEND IN A NEW W-9 FORM.**

☑ **TERM CONVERSION**

Convert _____ **ADDITIONAL INSURED** _____ to _____ **$100,000. U.L.** _____
   (Plan and Amount)                                (Plan and Amount)

Dividend Option _____   Mode of premium payment _____ **PAC**

In the past 12 months, have you used tobacco in any form?   Yes ☐   No ☑

If yes, specify: _____

| | Yes | No | |
|---|---|---|---|
| Automatic Premium Loan Provision elected, if applicable? | ☐ | ☑ | **Universal Life/Second to Die Only:** |
| CAL Provision elected? (Assurance Co. only) | ☐ | ☑ | Death Benefit Opt. 1 _____ Opt. 2 ✓ |
| Is WPD, or WMD, desired? | ☐ | ☑ | Planned Premium _____ **85.** |
| Is the insured currently disabled? | ☐ | ☑ | |

Complete a change of beneficiary request if you desire a change.
If this is a conversion of Additional Insured's coverage, state who will be the owner of the new policy and complete a change of beneficiary request. _____

☑ **OTHER**   **CONVERT the ADDITIONAL INSURED to $100,000. U.L.**
**PLEASE DISBURSE the DIVIDENDS AS A WITHDRAWL.**
**✳ THIS IS A TERM Conversion Credit Program Conversion.**
**$490. Credit.**

| | | |
|---|---|---|
| Signature of Policyowner | x **Martha Page** | Date **2-3-97** |
| | City **Corpus Christi, Tx.**   State | Zip Code **78410** |
| Signature of Witness | **Ilena Campbell Jr** | Date **2-3-97** |

**AGENT'S CODE STAMP**

W. CAMPBELL INS. AGCY. INC.
CORPUS CHRISTI   **8067**
**F117**

231-1898.28 Printed in U.S.A.

**PART (C)**

## CHANGE OF BENEFICIARY AND/OR SETTLEMENT SPECIFICATIONS
**A SEPARATE FORM IS REQUIRED FOR EACH INSURED PERSON WHOSE BENEFICIARY IS TO BE CHANGED.**

To: ☑ State Farm Life Insurance Company          ☐ State Farm Life and Accident Assurance Company

Policy No.(s) _1518-9386_          Re: Insured Person ___Ronald Page___

This change applies to:                    Name of

☐ Principal Insured  ☐ Additional Insured   Additional Insured _____

I request payment of any sum payable on the insured person's death be made as shown below. Payment will be subject to any assignment. Any prior provisions for payment upon the insured person's death are revoked, when this request is recorded. For Additional Insured's or Children's rider, the rider's beneficiary provisions are revoked, and the policy's beneficiary provisions will control. "Additional Insured", "Insured Child", or "Annuitant", will be used in place of "Insured."

**COMPLETE SECTIONS FOR ALL BENEFICIARIES, EVEN IF UNCHANGED, GIVING THE FULL NAME, AGE, ADDRESS (if different from the insured's) AND RELATIONSHIP TO THE INSURED PERSON FOR EACH. FOR CHILDREN AS A CLASS, NAME THOSE NOW LIVING. PLEASE TYPE OR PRINT IN INK AND INITIAL ANY CROSS-OUTS.**

| BENEFICIARIES | METHODS OF SETTLEMENT |
|---|---|
| **PRIMARY** - Name, Age, Relationship, Address Taxpayer Identification Number (if available)<br><br>_MARTHA A. PAGE, ■, wife_ | Check one: ☑ Interest Option ☐ One Sum ☐ Other-Explain: |
| **SUCCESSOR** - Name, Age, Relationship, Address Taxpayer Identification Number (if available)<br><br>_LARRY J. PAGE, ■, Brother_ | Method of settlement for Succesor if no Primary survives Insured Person.<br>Check one: ☑ Interest Option ☐ One Sum ☐ Other-Explain: |
| **FINAL** - Name, Age, Relationship, Address Taxpayer Identification Number (if available) | One Sum Settlement Only |

**Unless changed by this request:**

If Primary Beneficiary survives the insured person, any payment due a Successor Beneficiary will be in one sum.

Two or more surviving beneficiaries of a class will share equally.

If children of a person are named as a class, only children born to or legally adopted by that person will be included as beneficiaries.

Any beneficiary to whom a "time clause" applies will be deemed not to have survived the insured person if that beneficiary is not living on the 30th day after insured person's death.

**Special Provisions:** The Company will not be responsible for use of any sum payable by a trustee or authorized representative of a beneficiary. Payment to a trustee or authorized representative of a beneficiary will fully discharge all liability of the Company to the extent of such payment.

If a trust is not in force, or if qualifying conditions for trust under will are not met, payment will be made to the succeeding beneficiary, if any.

Qualifying Conditions for Trust under Will. The Will must be admitted to Probate within 180 days after insured person's death, and trustee must qualify within 1 year after insured person's death.

The change will take effect in accordance with policy provisions, but the change will not affect any action we may have taken before we receive the request. If the policy requires endorsement, recording and mailing a copy of this form (and endorsement form, if any) to me will constitute the endorsement.

Dated on __2-3-97__ at __Corpus Christi, Tx.__ __78410__

Witness _____   Policyowner X __Ronald K Page__

Recorded by: _____

SECRETARY

Date __2-3-97__

**State Farm Life Insurance Company/State Farm Life and Accident Assurance Company**

AGENT'S CODE STAMP

W. CAMPBELL INS. AGCY, INC. 8067.
CORPUS CHRISTI    F117

# EXHIBIT B

# STATE FARM LIFE INSURANCE COMPANY
### HOME OFFICE, ONE STATE FARM PLAZA, BLOOMINGTON, ILLINOIS 61710

|  |  |
|---|---|
| INSURED | ANNA M GONZALEZ |
|  | (Female) |
| AGE | 21 |
| POLICY NUMBER | LF-2153-7359 |
| POLICY DATE | May 17, 2004 |
| INITIAL BASIC AMOUNT | $100,000 |

This policy is based on the application and the payment of premiums, as specified in the policy. State Farm Life Insurance Company will pay the proceeds to the beneficiary when due proof is received that the Insured died before this policy terminated. If the Insured is alive on the maturity date, the cash surrender value on the maturity date will be paid to the Owner and this policy will terminate.

**30-Day Right to Examine the Policy.**   This policy may be returned within 30 days of its receipt for a refund of all premiums paid. Return may be made to State Farm Life Insurance Company or one of its agents. If returned, this policy will be void from the policy date.

**Read this policy with care.** This is a legal contract between the Owner and State Farm Life Insurance Company.

_Laura P Sullivan_
**Secretary**

_Edward B Rust Jr._
**President**

**Registrar**

---

### BASIC PLAN DESCRIPTION
Flexible premium adjustable life insurance. A death benefit is payable if the Insured dies before the maturity date. The cash surrender value is payable if the Insured is alive on the maturity date. Coverage may terminate prior to the maturity date. Flexible premiums are payable while the Insured is alive until the maturity date. The basic plan is eligible for annual dividends.

FORM 94030-43                     PAGE 1                     931215

# CONTENTS

                                                                                   **PAGE**

**Policy Identification** .................................................... 3

**Schedule of Benefits** ..................................................... 3

**Schedule of Premiums** .................................................... 3

**Monthly Deductions** ...................................................... 3

**Schedule of Surrender Charges** ........................................... 4

**Cost of Insurance Rates and Monthly Charges** ............................. 4

**Definitions** ............................................................. 5

**Ownership** .............................................................. 5
    Owner.                            Change of Owner.

**Death Benefit and Death Benefit Options** ................................. 6
    Death Benefit.             Change in Basic Amount.
    Death Benefit Options.     Change in Death Benefit Option.

**Payment of Benefits** ..................................................... 7
    Beneficiary Designation.      Methods of Payment.
    Change of Beneficiary Designation.  Minimum Payment.
    Order of Payment on the Insured's  Basis of Computation for Payments.
        Death.                   Additional Amounts Payable.

**Premiums** ............................................................... 9
    Payment of Premiums.      Grace Period.
    Premium Limitations.       Reinstatement.

**Guaranteed Values** ...................................................... 9
    Account Value.            Cash Surrender Value.
    Monthly Deduction.        Withdrawals.
    Cost of Insurance.         Surrender Charge.
    Monthly Cost of Insurance Rates.  Basis of Computation.
    Interest.

**Policy Loan** ............................................................ 12
    Loan.                      Loan Interest.
    Loan Value.             Loan Repayment.

**General** ................................................................ 12
    The Contract.             Assignment.
    Annual Report.          Error in Age or Sex.
    Projection of Benefits and Values.  Incontestability.
    Annual Dividends.        Limited Death Benefit.
    Dividend Options.

**The Application and any Riders and Endorsements follow page 14.**

# P O L I C Y   I D E N T I F I C A T I O N

Insured     ANNA M GONZALEZ         Age    21
             (Female)

Policy Number    LF-2153-7359      Initial Basic Amount    $100,000

Policy Date    May 17, 2004

Issue Date    June 1, 2004

## S C H E D U L E   O F   B E N E F I T S

Universal Life Basic Plan:
   Death Benefit Option 2 (Basic Amount plus the Account Value)
   Basic Amount (Standard Rate Class-Female Non-Tobacco):  $100,000

Maturity Date:  May 17, 2083

Riders:

| Form | Description | Insurance Amount | Benefit Period Ends | Monthly Charge Deductible |
|---|---|---|---|---|
| 94206 | Waiver of Monthly Deduction | | In 2043 | To 2043 |
| | Effective Date:  June 1, 2004 | | | |
| | Issue Date:  June 1, 2004 | | | |

## S C H E D U L E   O F   P R E M I U M S

The Initial Premium is $30.00.
Planned premiums are included in the schedule shown below.  The payment period for the planned premiums is 1 month starting on June 17, 2004 payable until the maturity date.
A premium expense charge of 5% is deducted from each premium paid.

| Beginning: | Total Premiums For Policy Year |
|---|---|
| May 17, 2004 | $580.00 |
| May 17, 2005 | 600.00 |

## M O N T H L Y   D E D U C T I O N S

The deduction date is the 17th of each month.

Maximum monthly cost of insurance rates are shown on page 4.  Cost of insurance is deductible to the maturity date.

Continued on Next Page

Form 94030          20040601

# MONTHLY DEDUCTIONS

### Continued from Page 3

The monthly expense charge is $5.00.

NOTE:   Insurance may terminate prior to the maturity date if premiums paid are not sufficient to continue the insurance to that date.

## SCHEDULE OF SURRENDER CHARGES

| Beginning Policy Year | Beginning Policy Month | Surrender Charge | Beginning Policy Year | Beginning Policy Month | Surrender Charge |
|---|---|---|---|---|---|
| 1 | 1 | $12.00 | 1 | 12 | $144.00 |
| 1 | 2 | 24.00 | 2 | 1 | 144.00 |
| 1 | 3 | 36.00 | 3 | 1 | 144.00 |
| 1 | 4 | 48.00 | 4 | 1 | 126.00 |
| 1 | 5 | 60.00 | 5 | 1 | 108.00 |
| 1 | 6 | 72.00 | 6 | 1 | 90.00 |
| 1 | 7 | 84.00 | 7 | 1 | 72.00 |
| 1 | 8 | 96.00 | 8 | 1 | 54.00 |
| 1 | 9 | 108.00 | 9 | 1 | 36.00 |
| 1 | 10 | 120.00 | 10 | 1 | 18.00 |
| 1 | 11 | 132.00 | 11 | 1 | 0.00 |

## COST OF INSURANCE RATES AND MONTHLY CHARGES

### Maximum Monthly Cost of Insurance Rates
Per $1000

(Standard Rate Class-Female Non-Tobacco)

| Age | Rate | Age | Rate | Age | Rate | Age | Rate |
|---|---|---|---|---|---|---|---|
| 21 | .0900 | 41 | .2295 | 61 | .8826 | 81 | 6.7294 |
| 22 | .0917 | 42 | .2487 | 62 | .9626 | 82 | 7.5789 |
| 23 | .0934 | 43 | .2671 | 63 | 1.0586 | 83 | 8.5491 |
| 24 | .0959 | 44 | .2871 | 64 | 1.1675 | 84 | 9.6289 |
| 25 | .0976 | 45 | .3072 | 65 | 1.2832 | 85 | 10.8111 |
| 26 | .1001 | 46 | .3273 | 66 | 1.4033 | 86 | 12.0908 |
| 27 | .1034 | 47 | .3498 | 67 | 1.5235 | 87 | 13.4694 |
| 28 | .1067 | 48 | .3741 | 68 | 1.6473 | 88 | 14.9520 |
| 29 | .1101 | 49 | .4000 | 69 | 1.7866 | 89 | 16.5557 |
| 30 | .1142 | 50 | .4285 | 70 | 1.9508 | 90 | 18.3060 |
| 31 | .1184 | 51 | .4595 | 71 | 2.1528 | 91 | 20.2498 |
| 32 | .1226 | 52 | .4947 | 72 | 2.4040 | 92 | 22.4699 |
| 33 | .1284 | 53 | .5332 | 73 | 2.7057 | 93 | 25.1552 |
| 34 | .1343 | 54 | .5726 | 74 | 3.0550 | 94 | 28.7360 |
| 35 | .1418 | 55 | .6129 | 75 | 3.4445 | 95 | 34.1581 |
| 36 | .1518 | 56 | .6523 | 76 | 3.8688 | 96 | 43.5428 |
| 37 | .1635 | 57 | .6901 | 77 | 4.3247 | 97 | 62.1940 |
| 38 | .1777 | 58 | .7279 | 78 | 4.8190 | 98 | 72.7637 |
| 39 | .1935 | 59 | .7699 | 79 | 5.3700 | 99 | 83.3333 |
| 40 | .2111 | 60 | .8204 | 80 | 5.9999 | | |

Continued on Next Page

# COST OF INSURANCE RATES AND MONTHLY CHARGES

Continued from Page 4

Monthly Charges Per $1 of Monthly Deductions for Waiver of Monthly Deduction

| Age | Monthly Charge | Age | Monthly Charge | Age | Monthly Charge | Age | Monthly Charge |
|---|---|---|---|---|---|---|---|
| 21 | .0240 | 31 | .0332 | 41 | .0585 | 51 | .1336 |
| 22 | .0251 | 32 | .0344 | 42 | .0618 | 52 | .1448 |
| 23 | .0264 | 33 | .0358 | 43 | .0644 | 53 | .1598 |
| 24 | .0275 | 34 | .0375 | 44 | .0682 | 54 | .1790 |
| 25 | .0285 | 35 | .0395 | 45 | .0739 | 55 | .2060 |
| 26 | .0293 | 36 | .0419 | 46 | .0805 | 56 | .2288 |
| 27 | .0297 | 37 | .0448 | 47 | .0900 | 57 | .2534 |
| 28 | .0306 | 38 | .0480 | 48 | .1015 | 58 | .2843 |
| 29 | .0314 | 39 | .0515 | 49 | .1129 | 59 | .3589 |
| 30 | .0323 | 40 | .0550 | 50 | .1231 | | |

## DEFINITIONS

**We, us,** and **our** refer to State Farm Insurance Company.

**You** and **your** refer to the Owner.

**Application.** Includes any life insurance application, any application for change in the policy, medical history, questionnaire, and other documents from you or any other person proposed for insurance which are made a part of this policy.

**Basic Amount.** The Initial Basic Amount plus any increases less any decreases.

**Basic Amount Mininum.** On or after the policy anniversary when the Insured is age 55, the Basic Amount cannot be less than $25,000. Otherwise, the Basic Amount cannot be less than $50,000.

**Benefit Period Ends.** For any rider, the policy anniversary in the year shown under this heading on page 3 is the date the rider terminates.

**Deduction Date.** The policy date and each monthly anniversary of the policy date.

**Dollars.** Any money we pay, or which is paid to us, must be in United States dollars.

**Effective Date.** Coverage starts on this date.

**Initial Basic Amount.** The amount of coverage on the Insured provided by the Basic Plan on the policy date.

**Insurance Amount.** The amount of coverage on the effective date of each rider shown on page 3.

**Maturity Date.** The policy anniversary when the Insured is age 100.

**Monthly Charge Deductible.** A monthly charge for any rider is deducted as part of the monthly deduction until the policy anniversary in the year shown on page 3.

**Officer.** The president, a vice president, the secretary, or an assistant secretary of State Farm Life Insurance Company.

**Payee.** On the Insured's death, the beneficiaries shown in the application, unless changed. If you cash surrender this policy or this policy matures, the persons that you have named. A payee can be other than a natural person only if we agree.

**Planned Premium.** The premium amount that you have chosen. This amount is shown on page 3 for the payment period that you have chosen.

**Policy Date.** The effective date of this policy.

**Policy Month, Year, or Anniversary.** A policy month, year, or anniversary is measured from the policy date.

**Proceeds.** The amounts payable on the death of the Insured.

**Rate Class.** The underwriting class of the person insured. A rate class will be determined for the Initial Basic Amount and each increase in the Basic Amount.

**Request.** A written request signed by the person making the request. Such request must be sent to and be in a form acceptable to us.

**Rider.** Any benefit, other than the Basic Plan, made a part of this policy.

## OWNERSHIP PROVISIONS

**Owner.** The Owner is as named in the application, unless changed. You may exercise any policy provision only by request and while the Insured is alive.

**Change of Owner.** You may change the ownership of this policy by sending us a request while the Insured is alive. We have the right to request this policy to make the change on it. The change will take effect the date you sign the request, but the change will not affect any action we have taken before we receive the request. A change of owner does not change the beneficiary designation.

## DEATH BENEFIT AND DEATH BENEFIT OPTIONS PROVISIONS

**Death Benefit.**   The amount of death benefit is an amount of insurance based on the death benefit option plus any insurance amounts payable under any riders on the Insured and the part of the cost of insurance for the part of the policy month beyond the Insured's death less any loan, accrued loan interest, and, if the Insured dies during the grace period, the monthly deductions from the start of the grace period.

**Death Benefit Options.**   There are two death benefit options. If you do not choose an option, we will use option 2. The account value on the date of death is used in determining the amount of insurance.

   **Option 1.**   The amount of insurance will be the greater of (1) the Basic Amount plus 95% of any premium received since the last deduction date plus interest earned on that amount of premium or (2) a percentage of the account value. Such percentage is based on the Insured's age at the start of the current policy year.

   **Option 2.**   The amount of insurance will be the greater of (1) the Basic Amount plus the account value or (2) a percentage of the account value. Such percentage is based on the Insured's age at the start of the current policy year.

| Percentage of Account Value Table | | | |
|---|---|---|---|
| Age | Percentage | Age | Percentage |
| 0-40 | 250% | 61 | 128% |
| 41 | 243% | 62 | 126% |
| 42 | 236% | 63 | 124% |
| 43 | 229% | 64 | 122% |
| 44 | 222% | 65 | 120% |
| 45 | 215% | 66 | 119% |
| 46 | 209% | 67 | 118% |
| 47 | 203% | 68 | 117% |
| 48 | 197% | 69 | 116% |
| 49 | 191% | 70 | 115% |
| 50 | 185% | 71 | 113% |
| 51 | 178% | 72 | 111% |
| 52 | 171% | 73 | 109% |
| 53 | 164% | 74 | 107% |
| 54 | 157% | 75-90 | 105% |
| 55 | 150% | 91 | 104% |
| 56 | 146% | 92 | 103% |
| 57 | 142% | 93 | 102% |
| 58 | 138% | 94 | 101% |
| 59 | 134% | 95 & up | 100% |
| 60 | 130% | | |

**Change in Basic Amount.**   You may request a change in the Basic Amount once each policy year. The minimum amount of change is $25,000 for an increase and $10,000 for a decrease. For any change in Basic Amount, we will send you a revised page 3 to be placed with this policy.

If you request an increase, an application must be completed, evidence of insurability satisfactory to us must be furnished, and there must be enough cash surrender value to make a monthly deduction which includes the cost of insurance for the increase. No increases will be allowed after the policy anniversary when the Insured is age 80. The revised page 3 will show the amount of the increase and its effective date.

If you request a decrease, the Basic Amount remaining after the decrease cannot be less than the Basic Amount Minimum. We reserve the right to not accept a request for a decrease in the Basic Amount if such decrease could result in this policy being disqualified as a life insurance contract under any section of the United States Internal Revenue Code, as amended from time to time. Any decrease will first be used to reduce the most recent increase. Then, the next most recent increases will be reduced. Finally, the Initial Basic Amount will be reduced. The revised page 3 will show the amount of decrease and its effective date. The decrease will take effect on the date we receive the request.

**Change of Death Benefit Option.**   You may request a change of death benefit option once each policy year. For a change in death benefit option, we will send you a revised page 3 to be placed with this policy. The revised page will show the effective date of the change.

If the change is to option 1, the Basic Amount will be increased by the account value on the effective date of the increase. We reserve the right to not accept a request for a change to option 1 if such change could result in this policy being disqualified as a life insurance contract under any section of the United States Internal Revenue Code, as amended from time to time.

If the change is to option 2, the Basic Amount will be decreased by the account value on the effective date of the decrease.

## PAYMENT OF BENEFITS PROVISIONS

**Beneficiary Designation.** This is as shown in the application, unless you have made a change. It includes the name of the beneficiary and the order and method of payment. If you name "estate" as a beneficiary, it means the executors or administrators of the last survivor of you and all beneficiaries. If you name "children" of a person as a beneficiary, only children born to or legally adopted by that person will be included.

We may rely on an affidavit as to the ages, names, and other facts about all beneficiaries. We will incur no liability if we act on such affidavit.

**Change of Beneficiary Designation.** You may make a change while the Insured is alive by sending us a request. The change will take effect the date the request is signed, but the change will not affect any action we have taken before we receive the request. We have the right to request your policy to make the change on it.

**Order of Payment on the Insured's Death.** When the Insured dies, we will make payment in equal shares to the primary beneficiaries living when payment is made. If a primary dies after the first payment is made, we will pay that primary's unpaid share in equal shares to the other primaries living when payment is made. If the last primary dies, we will make payment in equal shares to the successor beneficiaries living when payment is made. If a successor dies while receiving payments, we will pay that successor's unpaid share in equal shares to the other successors living when payment is made. If, at any time, no primary or successor is alive, we will make a one sum payment in equal shares to the final beneficiaries. If, at any time, no beneficiary is living, we will make a one sum payment to you, if living when payment is made. Otherwise, we will make a one sum payment to the estate of the last survivor of you and all beneficiaries. "When payment is made" means (1) the date that a periodic payment is due or (2) the date that a request is signed for a cash withdrawal or a one sum payment. You may change this order of payment by sending us a request while the In-

sured is alive.

**Methods of Payment.** We will pay the proceeds under the Interest method unless you choose another method. If the payee is other than a natural person, we will make payment under the One Sum method.

All payment intervals are measured from the date the policy is surrendered or from the date the Insured dies. No part of any payment can be assigned before the payment is made.

After the Insured's death, anyone who has the right to make a withdrawal may change the method of payment and may name a successor to their interest. The successor payee may be their estate.

**Method 1 (Interest Method).** We will pay interest at the end of each monthly interval. The interest rate will be at least 3½% a year. If chosen, we will pay interest at the end of 3, 6, or 12 month intervals. Withdrawals may be made at any time, but any withdrawal must be at least $500. We will pay interest to the date of withdrawal on the amount withdrawn.

**Method 2 (Fixed Years Method).** We will make equal payments at the end of each monthly interval for a fixed number of years. These payments include interest. The guaranteed interest rate is 3½% a year. The present value of any unpaid payments may be withdrawn at any time.

### FIXED YEARS TABLE

Monthly payments that $1000 will provide for the number of years chosen. Payments for years not shown will be given, if requested.

| Years | Payments | Years | Payments |
|-------|----------|-------|----------|
| 1 | $84.90 | 8 | $11.93 |
| 2 | 43.18 | 9 | 10.78 |
| 3 | 29.28 | 10 | 9.86 |
| 4 | 22.33 | 15 | 7.12 |
| 5 | 18.17 | 20 | 5.77 |
| 6 | 15.39 | 25 | 4.98 |
| 7 | 13.41 | 30 | 4.46 |

## PAYMENT OF BENEFITS PROVISIONS (CONTINUED)

**Method 3 (Life Income Method).** We will make equal payments at the end of each monthly interval as long as the payee is alive. We base the amount of each payment on the payee's age and sex at the start of the first monthly interval. We may require proof of the payee's age and sex. The payee may not withdraw the present value of the payments. If the payee dies during a certain period, we will continue the payments to the end of the certain period; or the successor payee may have the present value of any remaining payments paid in one sum.

### LIFE INCOME TABLE
Monthly payments for life that $1000 will provide. Payments for ages not shown will be given, if requested.

| Age Last Birthday | Life | | Life with 10 Years Certain | |
|---|---|---|---|---|
| | Male | Female | Male | Female |
| 50 | $4.50 | $4.15 | $4.46 | $4.13 |
| 55 | 4.91 | 4.48 | 4.84 | 4.45 |
| 60 | 5.47 | 4.92 | 5.34 | 4.86 |
| 65 | 6.25 | 5.53 | 5.98 | 5.41 |
| 70 | 7.34 | 6.38 | 6.76 | 6.12 |
| 75 | 8.85 | 7.64 | 7.62 | 7.01 |

**Method 4(Fixed Amount Method).** We will make equal payments at the end of 1, 3, 6, or 12 month intervals. We will continue payments until the amount put under this method together with compound interest has been paid. The interest rate will be at least 3½% a year. The payment interval chosen must provide a total annual payment of at least $100 for each $1000 put under this method. The unpaid balance may be withdrawn at any time.

**Method 5 (Joint Life Income Method).** We will make equal payments at the end of each monthly interval as long as at least one of the two payees is alive. We will base each payment on the age and sex of both payees at the start of the first monthly interval. We may require proof of the age and sex of each payee. The payees may not withdraw the present value of any payments.

### JOINT LIFE INCOME TABLE
Monthly payments that $1000 will provide as long as at least one of the two payees is alive. Payments for age combinations not shown will be given, if requested.

| Age Last Birthday Male | Female | | | |
|---|---|---|---|---|
| | 60 | 65 | 70 | 75 |
| 60 | $4.45 | $4.69 | $4.91 | $5.10 |
| 65 | 4.60 | 4.92 | 5.24 | 5.55 |
| 70 | 4.71 | 5.11 | 5.56 | 6.02 |
| 75 | 4.79 | 5.26 | 5.83 | 6.47 |

**Method 6 (One Sum Method).** We will pay the cash surrender value or the proceeds in one sum. Interest at the rate of at least 3½% a year will be paid from the date of the Insured's death to the date of payment.

**Method 7 (Other Method).** Payment by any other method may be made if we agree.

**Minimum Payment.** If any payment, except the last, under a method of payment would be less than $100 per payee, we will pay the present value of any unpaid payments in one sum.

**Basis of Computation for Payments.** The monthly payments shown for methods 3 and 5 are guaranteed payments based on an interest rate of 3½% a year and the 1983 Table **a**, projected 10 years using Projection Scale G.

Any present values will be based on the interest rate used in determining the payments for the method.

**Additional Amounts Payable.** Each year we may apportion and pay dividends or additional interest under any method of payment.

## PREMIUM PROVISIONS

**Payment of Premiums.**   You may pay premiums at our Home Office, a regional office, or to one of our agents. We will give you a receipt signed by one of our officers, if you request one.

The initial premium is shown on page 3 and is due on the policy date. All other premiums may be paid in any amount and at any time if:
  (1)   the amount is at least $25 and
  (2)   in a policy year, the total premiums, excluding the initial premium, do not exceed without our consent, the total Planned Premiums for a policy year.

**Premium Limitations.**   We reserve the right to refund any premium paid if such premium amount would be in excess of the guideline premium limitation as defined by Section 7702, Internal Revenue Code of 1988 (or as later amended). No expense charge will be deducted from the refunded premium.

**Grace Period.**   If, on any deduction date, the cash surrender value is not enough to cover the monthly deduction, the policy will stay in force until the end of the grace period. The grace period is 61 days and starts on that deduction date. We will mail a notice at least 31 days prior to the end of the grace period to you and to any assignee of record. A premium large enough to cover the monthly deductions for the grace period and any increase in the surrender charges must be paid before the end of the grace period; otherwise, this policy will lapse and terminate without value.

**Reinstatement.**   If the policy is terminated at the end of the grace period, you may apply to reinstate it within 5 years after lapse. You must give us proof of the Insured's insurability that is satisfactory to us. You must pay premiums (1) to keep the policy in force for 2 months and (2) to pay the monthly deductions for the grace period. Reinstatement will take effect on the date we approve the application for reinstatement.

## GUARANTEED VALUES PROVISIONS

**Account Value.**   The account value on the policy date is 95% of the initial premium less the monthly deduction for the first policy month.

The account value on any deduction date after the policy date is the account value on the prior deduction date:
  (1)   plus 95% of any premiums received since the prior deduction date,
  (2)   less the deduction for the cost of insurance for any increase in Basic Amount and the monthly charges for any riders that became effective since the prior deduction date,
  (3)   less any withdrawals since the prior deduction date,
  (4)   less the current monthly deduction,
  (5)   plus any dividend paid and added to the account value on the current deduction date, and
  (6)   plus any interest accrued since the prior deduction date.

The account value on any other date is the account value on the prior deduction date:
  (1)   plus 95% of any premiums received since the prior deduction date,
  (2)   less the deduction for the cost of insurance for any increase in Basic Amount and the monthly charges for any riders that became effective since the prior deduction date,
  (3)   less any withdrawals since the prior deduction date, and
  (4)   plus any interest accrued since the prior deduction date.

**Monthly Deduction.**   This deduction is made each month, whether or not premiums are paid, as long as the cash surrender value is enough to cover that monthly deduction. Each deduction includes:
  (1)   the cost of insurance,
  (2)   the monthly charges for any riders, and
  (3)   the monthly expense charge.

## GUARANTEED VALUES PROVISIONS (CONTINUED)

**Cost of Insurance.** This cost is calculated each month. The cost is determined separately for the Initial Basic Amount and each increase in Basic Amount.

The cost of insurance is the monthly cost of insurance times the difference between (1) and (2), where:
  (1)  is the amount of insurance on the deduction date at the start of the month divided by 1.0032737, and
  (2)  is the account value on the deduction date at the start of the month before the cost of insurance and the monthly charge for any waiver of monthly deduction benefit rider are deducted.
Until the account value exceeds the Initial Basic Amount, the account value is part of the Initial Basic Amount. Once the account value exceeds that amount, if there have been any increases in Basic Amount, the excess will be part of the increases in order in which the increases occurred.

**Monthly Cost of Insurance Rates.** These rates for each policy year are based on the Insured's age on the policy anniversary, sex, and applicable rate class. A rate class will be determined for the Initial Basic Amount and for each increase. The rates shown on page 4 are the maximum monthly cost of insurance rates for the Initial Basic Amount. Maximum monthly cost of insurance rates will be provided for each increase in the Basic Amount. We can charge rates lower than those shown. Such rates can be adjusted for projected changes in mortality but cannot exceed the maximum monthly cost of insurance rates. Such adjustments cannot be made more than once a calendar year.

**Interest.** An interest rate of at least 4% a year will be applied to the account value. The rate applied to the amount of account value up to the amount of any loan may differ from the rate applied to the account value in excess of the amount of any loan. We will determine these rates at least once a year.

**Cash Surrender Value.** You may request surrender of this policy at any time. This policy will terminate on the date we receive the request or later date if you so request it. We will pay you the cash surrender value as of the date coverage ceases plus the monthly deduction for the part of the policy month beyond that date. We will pay you in one sum unless you choose another method of payment. The cash surrender value of this policy is its account value less any surrender charge and any loan and accrued loan interest. The cash surrender value on the maturity date will be the account value on that date less any loan and accrued loan interest. The cash surrender value will not be less than zero. If this policy is surrendered within 31 days after a policy anniversary, the cash surrender value will not decrease within that period except for any loans or withdrawals. We may defer paying you the cash surrender value for up to 6 months after receiving your request.

**Withdrawals.** You may request to withdraw part of the account value while this policy is in force. No more than 4 withdrawals can be made in any policy year. Any withdrawal must be at least $500 and must be less than the cash surrender value. We may defer paying you a withdrawal for up to 6 months unless the withdrawal is to pay premiums on other policies with us.

If death benefit option 1 is in effect, then the Basic Amount will be reduced by the withdrawal, effective with the date of the withdrawal; however, no withdrawal can be made which will reduce the Basic Amount to less than $25,000. The reduction will be made as if a decrease in the Basic Amount had been requested.

## GUARANTEED VALUES PROVISIONS (CONTINUED)

**Surrender Charge.**   The schedule of surrender charges is shown on page 4. For each increase in Basic Amount, additional surrender charges will apply. A revised page 4 will show a revised schedule of surrender charges which includes those additional charges.

Upon reinstatement, the surrender charges will be adjusted for any surrender charge deducted at the time of lapse. A revised page 4 will show a schedule of the adjusted surrender charges.

A schedule of surrender charges is determined separately for the Initial Basic Amount and for each increase in Basic Amount. A schedule is determined using a Base Surrender Charge and covers 120 policy months following the policy date or the effective date of an increase in Basic Amount. For the Initial Basic Amount, use the surrender charge at the Insured's age on the policy date. For each increase in Basic Amount, use the surrender charge at the Insured's age on the policy anniversary on or first preceding the effective date of that increase. Take that surrender charge times the Initial Basic Amount, or the amount of the increase, if applicable, divided by 1,000. Then, divide that result by 12 to determine the surrender charge that will apply for that amount of insurance for the first policy month after its effective date. The surrender charge increases by that amount for each of the next 11 policy months. The surrender charge then remains level for the next 24 policy months. The surrender charge decreases after 36 policy months and then decreases by that same amount after each successive 12 policy months. The amount of each decrease is equal to the surrender charge in effect at the end of 36 policy months divided by 8.

**Basis of Computation.**   The guaranteed values in this policy are at least as large as those required by law in the state where it is delivered based on the Commissioners 1980 Standard Ordinary Mortality Table with an interest rate of 4% a year. The insurance authority there has a statement of how these values are determined.

The guaranteed values and maximum cost of insurance rates are based on the Insured's age last birthday and sex. The interest rate is 4% a year. The Commissioners 1980 Standard Ordinary Mortality Table is used. Modifications are made for rate classes other than standard.

### BASE SURRENDER CHARGE

The base surrender charge is for each $1,000 of Initial Basic Amount or amount of increase in Basic Amount.

| Age | Base Surrender Charge | Age | Base Surrender Charge |
|---|---|---|---|
| 0-19 | $ 1.20 | 45 | $9.72 |
| 20 | 1.32 | 46 | 10.32 |
| 21 | 1.44 | 47 | 10.80 |
| 22 | 1.56 | 48 | 11.40 |
| 23 | 1.80 | 49 | 11.88 |
| 24 | 2.04 | 50 | 12.72 |
| 25 | 2.40 | 51 | 13.44 |
| 26 | 2.64 | 52 | 14.04 |
| 27 | 2.88 | 53 | 14.88 |
| 28 | 3.12 | 54 | 15.36 |
| 29 | 3.36 | 55 | 16.02 |
| 30 | 3.60 | 56 | 16.20 |
| 31 | 3.84 | 57 | 16.68 |
| 32 | 4.20 | 58 | 17.16 |
| 33 | 4.68 | 59 | 17.40 |
| 34 | 4.68 | 60 | 18.00 |
| 35 | 5.16 | 61 | 18.36 |
| 36 | 5.40 | 62 | 18.48 |
| 37 | 5.64 | 63 | 18.60 |
| 38 | 6.36 | 64 | 18.60 |
| 39 | 6.72 | 65 | 19.40 |
| 40 | 7.38 | 66 | 19.56 |
| 41 | 7.44 | 67 | 19.80 |
| 42 | 8.16 | 68 | 20.40 |
| 43 | 8.76 | 69 | 20.64 |
| 44 | 9.12 | 70-80 | 21.00 |

## POLICY LOAN PROVISIONS

**Loan.**   You may borrow against this policy. This policy is the sole security for such loan. We may defer a loan for up to 6 months after receiving your request unless the loan will be used to pay premiums on other policies with us.

You may borrow the loan value less any existing loan and accrued interest and monthly deductions for the next 2 months. If your unpaid loan plus accrued interest exceeds the loan value on the monthly deduction date, the Grace Period provision will apply.

**Loan Value.**   The loan value is the account value of this policy less the surrender charge.

**Loan Interest.**   Interest accrues and is payable each day at a rate of 8% a year. Any interest not paid is added to the loan on each policy anniversary.

**Loan Repayment.**   You may repay all or part of a loan at any time before the Insured dies or the policy is surrendered or terminated.

## GENERAL PROVISIONS

**The Contract.**   The policy contains the Basic Plan, any amendments, endorsements, and riders, and a copy of the application. A copy of any application for a change to this policy will be sent to you to be placed with the policy. Such applications become part of this policy. The policy is the entire contract. We have relied on the statements in the application in issuing this policy. We reserve the right to investigate the truth and completeness of those statements. In the absence of fraud, they are representations and not warranties. Only material misstatements in the application will be used to contest this policy or deny a claim.

Only an officer has the right to change this policy. No agent has the authority to change the policy or to waive any of its terms. All endorsements, amendments, and riders must be signed by an officer to be valid.

**Annual Report.**   Each year, we will send you a report. This report will show:
(1)   the account value, the cash surrender value, any loan and accrued loan interest, and the amount of the death benefit as of the date of the report and
(2)   any premiums paid, any deductions made, and any withdrawals made since the last report.

**Projection of Benefits and Values.**   You may request a projection of death benefits, account values, and cash surrender values. We may charge a reasonable fee not to exceed $25 for providing this projection.

**Annual Dividends.**   We do not expect to pay dividends on this policy; however, we may apportion and pay dividends each year. Any such dividends will be paid only at the end of the policy year. There is no right to a partial or pro rated dividend prior to the end of the policy year.

**Dividend Options.**   You may choose to have your dividend used under one of these options:

1.   **Cash.**   We will pay it to you in cash.

2.   **Addition to Account Value.**   We will add it to the account value at the end of the policy year.

If you do not choose an option or the option you choose is not available, we will use option 2. You may request to change the option. The change will apply only to dividends paid after we receive the request.

**Assignment.**   You may assign this policy or any interest in it. We will recognize an assignment only if it is in writing and filed with us. We are not responsible for the validity or effect of any assignment. An assignment may limit the interest of any beneficiary.

---

### GENERAL PROVISIONS (CONTINUED)

---

**Error in Age or Sex.**   If the Insured's date of birth or sex is not as stated in the application, we will adjust each benefit on the Insured to the benefit payable had the Insured's age and sex been stated correctly. Such adjustment will be based on the ratio of the correct monthly deduction for the most recent deduction date for that benefit to the monthly deduction that was made. For the Basic Plan, the adjustment is made to the amount of insurance less the account value.

**Incontestability.**   We will not contest the Basic Plan after it has been in force during the Insured's lifetime for 2 years from the issue date of the policy. We will not contest any increase in Basic Amount or reinstatement after it has been in force during the lifetime of the Insured for 2 years from the effective date of the increase in Basic Amount or reinstatement. We will not contest an increase due to a change to Death Benefit Option 1. Any contest of any increase in Basic Amount or reinstatement will be limited to material misstatements contained in the application for such increase or reinstatement.

Each rider has its own incontestability provision.

**Limited Death Benefit.**   If the Insured dies by suicide while sane or by self-destruction while insane within 2 years from the issue date of the policy, the Basic Amount will not be paid. The proceeds in this case will be limited to the premiums paid on the Basic Plan less any loan, accrued loan interest, any withdrawals from the account value, and any dividends paid on the Basic Plan.

Any increase in Basic Amount or amount reinstated will not be paid if the Insured's death results from suicide while sane or self-destruction while insane within 2 years from the effective date of such increase or reinstatement. The proceeds of the increase will be limited to the monthly deductions for the increase. This does not apply to an increase due to a change to Death Benefit Option 1. The proceeds of a reinstated policy will be limited to the premiums paid on the Basic Plan since reinstatement less any loan, accrued loan interest, any withdrawals from the account value, and any dividends paid on the Basic Plan.

Each rider has its own limited death benefit provision.

## WAIVER OF MONTHLY DEDUCTION BENEFIT RIDER

**General.**   This rider is part of your policy. It is based on the application for this rider and the deduction of the monthly charges for this rider. Only certain policy provisions are a part of this rider. They are "Definitions," "Ownership," "Death Benefit and Death Benefit Options," "Grace Period," "Reinstatement," "Monthly Deduction," "The Contract," "Assignment," and "Error in Age or Sex."

**Monthly Charge for This Rider.**   The monthly charge is (1) times (2) where:
  (1)  is the total monthly deduction to which this benefit applies before the monthly charge for this rider is added and
  (2)  is the monthly charge for this rider per dollar of monthly deduction. The charges per dollar of monthly deduction are shown on page 4.

**Waiver of Monthly Deduction Benefit.**   We will waive monthly deductions for this policy as defined below if the Insured becomes totally disabled and such total disability has existed for 6 continuous months during the lifetime of the Insured. We will waive those monthly deductions as long as the total disability continues. We will only waive monthly deductions on deduction dates on and after total disability starts. Any monthly deductions made after the total disability starts will be added to the account value, with interest; however, no monthly deduction will be included which was deductible more than one year prior to the date we receive notice of the claim. If Death Benefit Option 1 is in effect, it will be automatically changed to Death Benefit Option 2. The effective date of the death benefit option change will be the date we start to waive monthly deductions.

The monthly deduction that will be waived includes only those portions of the total monthly deduction for which a charge for this rider was deducted on the deduction date on or just prior to the date total disability starts.

If part of the monthly deduction that is being waived is for the cost of insurance on the Basic Amount, any increase in its surrender charges that would occur while the total disability continues will be waived.

**Total Disability Defined.**   Total disability is a condition caused by injury or disease. During the first 24 months after total disability starts, this condition must prevent the Insured from performing substantially all of the work of the Insured's regular occupation. After the first 24 months, the condition must prevent the Insured from performing substantially all of the work in any occupation for which the Insured is, or becomes, reasonably qualified based upon education, training, or experience. The Insured's total and irrecoverable loss, caused by injury or disease, of any of the following will be considered total disability even if the Insured is able to work:
  (1)  sight in both eyes.
  (2)  use of both hands.
  (3)  use of both feet.
  (4)  use of one hand and one foot.

**Disabilities Not Covered.**   We will not waive monthly deductions if total disability:
  (1)  starts before the issue date of this rider unless such disability was disclosed in the application,
  (2)  starts before the policy anniversary when the Insured is age 5,
  (3)  results from an intended self-injury, or
  (4)  results from any act due to war whether or not the Insured is in the military service. "War" means declared or undeclared war or conflict involving the armed forces of one or more countries, governments, or international organizations.

**Notice and Proof of Total Disability.**   We must receive notice of a claim and due proof of total disability while the Insured is alive and totally disabled and within 91 days after such total disability starts. If this is not done, you should submit such notice and proof as soon as reasonably possible. We may also require you to submit proof of the Insured's continuing total disability at reasonable intervals. You have at least 91 days after the date requested to submit such proof. If you do not submit proof when we require it, no further monthly deductions will be waived. We will not require proof more than once a year after the total disability has lasted more than 2 years.

## WAIVER OF MONTHLY DEDUCTION BENEFIT RIDER  (CONTINUED)

**Premium Payments.**   If the Insured's total disability starts during a grace period, before we will approve a claim, a premium must be paid which is large enough to cover the monthly deductions plus any increase in the surrender charge from the start of the grace period through the policy month in which total disability starts.

Premiums, sufficient to keep the policy in force until we approve the claim, are payable.

**Termination.**   This rider will terminate on the policy anniversary shown on page 3 under Benefit Period Ends. We will terminate this rider before that date when the policy terminates by surrender or lapse.

You may request termination of this rider. You must send us the request and the policy. This rider will terminate on the date the request and the policy are received. We will revise pages 3 and 4 of the policy to show this change.

Termination will not affect any claim for total disability which starts before termination.

**Incontestability.**   We will not contest this rider after it has been in force during the lifetime of the Insured for 2 years from its issue date unless the Insured becomes totally disabled within that period.

**Issue Date of This Rider.**   This is the effective date. It is the same as the issue date of the policy unless a different date for this rider is shown on page 3.

**State Farm Life Insurance Company**

*Edward B Rust Jr.*

President

*Laura P Sullivan*

Secretary

FORM 94206-43

930415



### STATE FARM LIFE INSURANCE COMPANY          POLICY COPY
### BLOOMINGTON, ILLINOIS
### APPLICATION FOR LIFE INSURANCE

PROPOSED INSURED #1: MS  GONZALEZ, ANNA M                    In City? YES
Mailing Address:


  MARRIED     FEMALE    Age: 21                     State: TX      Height:        Weight:
U.S. or Canadian Citizen: YES     Drivers license no.:          State: TX      SS#:
Have you used tobacco or any other nicotine products in any form in the last 12 months?
Occupation: CUSTOMER SERVICE                        Employer:

Do job duties fall into one of the following occupation categories? NO
(amusement/sports;construction/explosive/divers;liquor;logging/mining;gas/oil)

************************************************************************

BASIC PLAN                     AMOUNT
UNIVERSAL LIFE              $   100,000           Death Benefit Option 2: Basic amount plus account value

PI #1 RIDERS/BENEFITS          AMOUNT
WMD

Planned premium: $ 50.00                    Additional first year premium: $
Dividend option:

************************************************************************

PROPOSED INSURED #1 - BENEFICIARY DESIGNATION                 RELATIONSHIP
PRIMARY:
SUCCESSOR

If a beneficiary survives the Insured, any payment to successor will be one sum unless changed.

************************************************************************

Proposed Insured 1 or Applicant, if other than Proposed Insured 1:
      Do you own any life insurance or annuities on yourself or others?
      If yes, is this policy a replacement of any of those policies?

************************************************************************

Is the total amount of insurance in force on you more than $200,000?
Is anyone now applying for life or health insurance on you with any other company?
Do you plan to leave or travel from the United States or Canada in the next 6 months?
Have you ever:
      Applied for or received disability benefits?
      Had any loss of sight or hearing or had an injury to your neck, back, arm, or leg?

************************************************************************



POLICY COPY

Have you, in the last 10 years, had or been treated by a member of the medical profession for:

| | | |
|---|---|---|
| High blood pressure? | Stroke? | Heart murmur? |
| Chest pain? | Heart attack? | Tumor? |
| Lymph gland disorder? | Cancer? | Pneumonia? |
| Emphysema? | Asthma? | Ulcer? |
| Liver/intestinal disorder? | Colitis? | Anemia? |
| Blood disorder? | Diabetes? | Arthritis? |
| Sexually transmitted disease? | Kidney disease? | Fatigue? |
| Chronic diarrhea? | Recurrent fever? | Night sweats? |
| Unexplained weight loss? | Mental disorder? | Epilepsy? |
| Convulsive disorder? | Nervous disorder? | |
| Acquired Immune Deficiency | | |
| Syndrome (AIDS) or Human | | |
| Immunodeficiency Virus (HIV) | | |
| infection? | | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Have you, in the last 5 years:
    Used cocaine, marijuana, or any other controlled substance or narcotic not prescribed by a doctor?
    Been treated/counseled/advised to seek treatment or counsel for alcohol or drug use?

Have you, in the last 5 years, for any reason not previously explained:
    Had or been advised to have treatment or a test in any medical facility such as a lab, clinic, or
    hospital?
    Seen a doctor or psychologist?
    Had medication prescribed?
    Been told surgery was necessary?

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

ADULT NON-MEDICAL EXPLANATIONS CON'T



\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Life Insurance Application on GONZALEZ, ANNA M
E-App-Life-2002

530-6677-D13 - Page 2



POLICY COPY

Have you, in the last 3 years or plan to in the next 6 months:
    Engaged in any type of aviation activity(other than as a passenger)?
    Engaged in mountain/rock climbing?
    Engaged in vehicle racing?
    Engaged in SCUBA/skin diving?
    Engaged in sky diving, hang gliding, hot air ballooning?
    Engaged in other such avocations?

Have you, in the last 3 years, been convicted of or pleaded guilty to any moving violations or driving under the influence of alcohol or drugs?

                  *************************************************************************************



POLICY COPY

Coverage will be effective as of the policy date if the following conditions are met: the first premium is paid when the policy is delivered; the Proposed Insureds are living on the delivery date; and, on that delivery date, the information given to the Company is true and complete without material changes.

However, if a binding receipt has been given and is in effect, its terms apply.

All Proposed Insureds and the Applicant state that the information in this application and any medical history is true and complete. It is agreed that the Company can investigate the truth and completeness of such information while the policy is contestable.

By accepting the policy, the Owner agrees to the beneficiaries named, method of payment and corrections made. No change in plan, amount, benefits, or age at issue may be made on the application unless the Owner agrees in writing. Only an authorized company officer may change the policy provisions. Neither the agent nor a medical examiner may pass on insurability.

Any policy issued on this application will be owned by Proposed Insured 1, or the Applicant, if other than Proposed Insured 1.

**********************************************************************************************************
\*    Social Security or Tax Identification Number (TIN) Certification. By signing this application, I certify under   \*
\* penalties of perjury that (1) the TIN shown on page 1 of this application is correct, and (2) I am exempt from backup \*
\* withholding, or that I am not subject to backup withholding either because I have not been notified that I am subject\*
\* to backup withholding as a result of a failure to report all interest or dividends, or the Internal Revenue Service  \*
\* has notified me that I am no longer subject to backup withholding.  (If you are subject to backup withholding, cross  \*
\* out item 2.) and (3) I am a U.S. person (including a U.S. resident alien).                                           \*
\*    The Internal Revenue Service does not require your consent to any provision of this document other than the       \*
\* certifications required to avoid backup withholding.(See instructions)                                               \*
**********************************************************************************************************

Date Signed  5/17/2004          Signature of Proposed Insured 1  _Ana M. Gymaly_

at  San Antonio, Texas
Signature of
Agent as Witness
to all Signatures  _____   Signature of Applicant
                                         Not required unless applicant is other than Proposed Insured 1. If a firm
                                         or corporation is to be owner, give name and signature of authorized
                                         officer.

Life Insurance Application on GONZALEZ, ANNA M          530-6677-D13 - Page  4 of  4
E-App-Life-2002

| **IMPORTANT NOTICE** | **AVISO IMPORTANTE** |
|---|---|
| To obtain information or make a complaint: | Para obtener informacion o para someter una queja: |
| You may call State Farm's toll-free telephone number for information or to make a complaint at | Usted puede llamar al numero de telefono gratis de State Farm's para informacion o para someter una queja al. |

**1-800-252-1932**

| | |
|---|---|
| You may contact the Texas Department of Insurance to obtain information on companies, coverages, rights or complaints at | Puede comunicarse con el Departamento de Seguros de Texas para obtener informacion acerca de companias, coberturas, derechos o quejas al. |

**1-800-252-3439**

| | |
|---|---|
| You may write the Texas Department of Insurance<br>Consumer Services (111-1A)<br>P.O. Box 149091<br>Austin, TX 78714-9091<br>FAX# (512) 475-1771 | Puede escribir al Departamento de Seguros de Texas<br>Consumer Services (111-1A)<br>P.O. Box 149091<br>Austin, TX 78714-9091<br>FAX# (512) 475-1771 |
| **PREMIUM OR CLAIM DISPUTES:**   Should you have a dispute concerning your premium or about a claim, you should contact the company first. If the dispute is not resolved, you may contact the Texas Department of Insurance. | **DISPUTAS SOBRE PRIMAS O RECLAMOS:** Si tiene una disputa concerniente a su prima o a un reclamo, debe comunicarse con la compania primero. Si no se resuelve la disputa, puede entonces comunicarse con el departamento (TDI). |
| **ATTACH THIS NOTICE TO YOUR POLICY:**   This notice is for information only and does not become a part or condition of the attached document. | **UNA ESTE AVISO A SU POLIZA:**   Este aviso es solo para proposito de informacion y no se convierte en parte o condicion del documento adjunto. |

**BASIC PLAN DESCRIPTION**

Flexible premium adjustable life insurance. A death benefit is payable if the Insured dies before the maturity date. The cash surrender value is payable if the Insured is alive on the maturity date. Flexible premiums are payable while the Insured is alive until the maturity date. Coverage may terminate prior to the maturity date. The basic plan is eligible for annual dividends.

FORM 94030-43

931215