**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | |
|---|---|
| ANNA GONZALEZ and RONALD K. PAGE, on behalf of themselves and all others similarly situated, | |
| Plaintiffs, | Civil Action No.: SA-20-CV-617-FB |
| v. | |
| STATE FARM LIFE INSURANCE COMPANY, | |
| Defendant. | |

## <u>STIPULATION RE DISCOVERY OF ELECTRONICALLY STORED INFORMATION</u>

The parties in the above-captioned litigation (the "Lawsuit"), by and through their undersigned counsel, enter into the following Stipulation for an Order regarding the discovery and production of Electronically Stored Information (the "Protocol"). Pursuant to the provisions of Rule 34 of the Federal Rules of Civil Procedure permitting the parties to specify the form or forms in which documents are to be produced, this Stipulation for an Order sets forth the specifications that shall govern document production during discovery in the above-captioned litigation.

## I.    APPLICATION

The procedures and protocols outlined herein govern the production of discoverable information by all parties to the Lawsuit, whether they currently are involved or become so in the future (collectively, the "Parties").

## II.    PURPOSE

This Stipulated Order governs the collection and production of electronically stored information ("ESI") and hard copy documents (collectively "Discoverable Information"), which

are to be produced electronically in this Lawsuit, as a supplement to the Federal Rules of Civil Procedure, this Court's Guidelines for the Discovery of Electronically Stored Information, and any other applicable orders and rules.

## III.    COOPERATION

The Parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter consistent with this Court's Guidelines for the Discovery of ESI. The Parties agree to take the proportionality considerations addressed in the Federal Rules of Civil Procedure into account for purposes of preservation and production of ESI and hard copy documents in this Lawsuit. This Protocol is not intended to expand the Parties' obligations under Rules 1, 26 and 34.

## IV.    LIAISON

The Parties have identified liaisons to each other who are and will be knowledgeable about and responsible for discussing their respective ESI. Each e-discovery liaison will be, or have access to those who are, knowledgeable about the technical aspects of e- discovery, including the location, nature, accessibility, format, collection, search methodologies, and production of ESI in this Lawsuit. The Parties will rely on the liaisons, as needed, to confer about ESI and to help resolve disputes without court intervention.

## V.    ESI

The term ("ESI") refers to any electronically stored information in the possession, custody, or control of the Parties that are e-mail or active-user files—including, but not limited to: e-mail, word-processing documents, spreadsheets, electronic slide presentations, databases, and other reasonably accessible ESI reasonably anticipated to be subject to discovery pursuant to the Federal Rules of Civil Procedure.

## VI.    PRESERVATION

The parties have discussed their preservation obligations and needs and agree that preservation of potentially relevant ESI will be reasonable and proportionate. To reduce the costs and burdens of preservation and to ensure proper ESI is preserved, the parties agree that:

a)    Only ESI created or received between 1993 and the present will be preserved;

b)    The parties have exchanged a list of the types of ESI they believe should be preserved and the custodians, or general job titles or descriptions of custodians, for whom they believe ESI should be preserved, *e.g.*, "HR head," "scientist," and "marketing manager." The parties shall add or remove custodians as reasonably necessary;

c)    The parties will agree on the number of custodians per party for whom ESI will be preserved;

d)    These data sources are not reasonably accessible because of undue burden or cost pursuant to Fed. R. Civ. P. 26(b)(2)(B) and ESI from these sources will be preserved but not searched, reviewed, or produced:

(i)    Data stored in a backup system for the purpose of system recovery or information recovery, including but not limited to: disaster recovery backup tapes, continuity of operations systems, and data or system mirrors or shadows.

(ii)    Voicemail recordings.

(iii)    ESI stored on mobile devices, including smart phones or tablets.

(iv)    Legacy Data.

(v)    Deleted, erased, or overwritten computer files, whether fragmented or whole, which were deleted in the regular course of business.

(vi)     Data stored in Random Access Memory ("RAM"), cache memory, or in temporary or cache files, including internet history, web browser cache, and cookie files, wherever located.

(vii)    Encrypted data/password protected files, where the key or password cannot be ascertained absent extraordinary efforts.

(viii)   Data stored on photocopiers, scanners, and fax machines.

(ix)     Data stored as server, system, or network logs.

(x)      Microfiche.

e)     Among the sources of data the parties agree are not reasonably accessible, the parties agree not to preserve the following: none.

f)     In addition to the agreements above, the parties agree data from these sources (a) could contain relevant information but (b) under the proportionality factors, should not be preserved: none.

## VII.   SEARCH

There are many valid ways to search for and retrieve ESI. The Producing Party will disclose the custodians from whom responsive unstructured ESI is collected. For email (or other unstructured ESI) for which the Parties apply search terms or technology assisted review to define the population reviewed for responsiveness, the Producing Party must disclose to the Requesting Party the search terms or technology used. The Requesting Party may suggest other custodians or additions or modifications to the search methodology. The Parties need not to reach agreement prior to the Producing Party commencing review or production, but in the event of a dispute regarding search the parties will meet and confer and attempt in good faith to reach agreement regarding the search methodology, including the proposed search terms and the identities of custodians from whom ESI will be collected and searched.

## VIII.   PRODUCTION FORMATS

The parties agree to produce documents in accordance with the Protocol for Production of Electronically Stored Information (attached as Exhibit A). If it is not possible to comply with the Protocol, the parties will cooperate to arrange for the mutually acceptable production of such documents. The parties agree not to degrade the searchability of documents as part of the document production process.

## IX.   PHASING

When a party propounds discovery requests pursuant to Fed. R. Civ. P. 34, the Parties agree to meet and confer concerning the prioritization of production of documents and records from sources most likely to contain relevant and discoverable information. Following the initial production, the Parties will continue to prioritize the order of subsequent productions..

## X.   PRIVILEGE

1.   <u>Privilege</u>.  Each Party may review documents (both ESI and paper documents) for privileged information (or other information subject to a recognized immunity from discovery) prior to production. In regards to Rule 26(f)(3)(D), the parties agree that pursuant to Federal Rule of Evidence 502(e), no disclosure, production, or exchange of information in the Lawsuit constitutes a waiver of attorney-client privilege or of any work product protection in this or any other federal or state proceeding. The parties will seek entry of a separate order pursuant to Federal Rule of Evidence 502(d) that will govern the inadvertent disclosure of privileged material.

2.   <u>Redactions</u>.   Documents that contain both privileged and non-privileged information will be produced with the privileged information redacted in such a way as to show the location of the redaction within the document and the reason therefore (*e.g.*, "Attorney-Client Privilege" or "Work Product" or equivalent). Documents or portions thereof withheld on privilege

grounds will be identified in a privilege log in accordance with Rule 26(b)(5). Redacted information shall be included on the privilege log.

3.   <u>Privilege Logs</u>.

a.   The obligation to provide a log of privileged or work product materials pursuant to Rule 26(b)(5)(A) presumptively shall not apply to attorney-client communications or work product created after June 15, 2016, the date the Vogt Lawsuit was initiated in the U.S. District Court for the Western District of Missouri, including:

i.   Communications between a Party and its Outside Counsel;

ii.   Attorney work product created by Outside Counsel for any Parties;

iii.   Internal communications within Outside Counsel for any Parties; and

iv.   Communications between or among co-counsel.

b.   The Parties agree that, except as provided herein regarding the categories of presumptively exempt privileged and work product materials set forth in Section IV.3.a., they will produce privilege logs and will exchange information regarding claims of privilege and/or work product protection in an efficient manner. For Discoverable Information to be logged, in lieu of a traditional Rule 26(b)(5) log the withholding, the withholding Party may provide a privilege log of such documents and ESI, providing the following objective metadata to the extent it is reasonably available: date_sent or date_modified, author(s), custodian(s), to, cc, bcc, file type, and file name and subject (to the extent the file name or subject does not reveal protected content). In addition, the withholding Party shall also provide for each document on the privilege log an identifier for the privilege being asserted (*e.g.*, "ACP" for attorney-client privilege, "WP" for work product, or other descriptions as necessary based on the specific privilege being claimed), and a

unique document number/identifier, which need not be formatted as, or consecutive with, Bates numbers of produced documents (*e.g.*, "Def_Priv_00001").

        c.      The agreement to thread email in Exhibit A below notwithstanding, the Producing Party shall include a privilege log entry for each individual email message contained within the most inclusive email thread withheld for which the Producing Party asserts a claim of privilege.

        d.      Where a Party is asserting privilege on the same basis with respect to multiple documents, such descriptions may be provided by group or category.

## XI.    OBJECTIONS PRESERVED

Nothing in this Protocol shall be interpreted to require disclosure of relevant information or Data that is protected by the attorney-client privilege, common interest privilege, work-product doctrine, or is prohibited from disclosure under any similar law, regulation, rule, court order, or any other applicable privilege or protection. The Parties do not waive any objections to the production, discoverability, or confidentiality of ESI, Hard- Copy Materials or any other discovery materials. Further, nothing in this Protocol shall be construed to affect the admissibility of Discoverable Information. All objections to the discoverability or admissibility are preserved and may be asserted at any time.

## XII.    RESOLUTION OF DISPUTES

1.      The Parties agree to meet and confer in good faith regarding matters related to the production of Data not specifically set forth in this Protocol, related to the interpretation of this Protocol, or related to the Parties' obligations thereunder. The Parties shall make their best efforts to comply with and resolve any differences concerning compliance with this Protocol. If a Producing Party cannot comply with any material aspect of this Protocol, such party shall inform the Requesting Party in writing at or before the time of production as to why compliance with the

Protocol is unreasonable or not possible. The Parties shall then meet and confer in good faith to attempt to resolve the issue and/or agree on an acceptable format for production pursuant to Rule 34(b)(2)(E).

2.      If the Parties are unable to reach resolution regarding any dispute concerning the interpretation of this Protocol or compliance with same, such disputes may be presented for judicial resolution. No party may seek judicial relief concerning this Protocol unless it first has conferred with the applicable Producing or Requesting Party.

## XIII.   MODIFICATION

This Protocol supersedes any prior discussions or agreements of the Parties on the topics contained herein, and to the extent it is contrary to any such agreements or discussions, the terms of the Protocol control. Any practice or procedure set forth herein may be varied by agreement of the Parties, which will be confirmed in writing, where such variance is deemed appropriate to facilitate the timely and economical exchange of Discoverable Information.

**IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.**

Dated: April 29, 2021    Respectfully submitted,

| | |
|---|---|
| */s/ Ethan M. Lange* | */s/ Susan E. Egeland* |
| Norman E. Siegel (admitted *pro hac vice*) | Wayne B. Mason |
| ATTORNEY-IN-CHARGE | ATTORNEY-IN-CHARGE |
| siegel@stuevesiegel.com | Texas Bar No. 13158950 |
| Ethan M. Lange (Tex. Bar No. 24064150) | wayne.mason@faegredrinker.com |
| lange@stuevesiegel.com | Susan E. Egeland |
| STUEVE SIEGEL HANSON LLP | Texas Bar No. 24040854 |
| 460 Nichols Road, Suite 200 | susan.egeland@faegredrinker.com |
| Kansas City, Missouri 64112 | FAEGRE DRINKER BIDDLE & REATH |
| Tel: 816-714-7100 | LLP |
| Fax: 816-714-7101 | 1717 Main Street, Suite 5400 |
| | Dallas, Texas 75201 |
| John J. Schirger (admitted *pro hac vice*) | Phone: (469) 357-2500 |
| jschirger@millerschirger.com | Fax: (469) 327-0860 |
| Matthew W. Lytle (admitted *pro hac vice*) | |
| mlytle@millerschirger.com | Shaunda A. Patterson-Strachan |
| Joseph M. Feierabend (admitted *pro hac vice*) | (Admitted *pro hac vice*) |
| jfeierabend@millerschirger.com | shaunda.pattersonstrachan@faegredrinker.com |
| MILLER SCHIRGER, LLC | Waldemar J. Pflepsen Jr. |
| 4520 Main Street, Suite 1570 | (Admitted *pro hac vice*) |
| Kansas City, Missouri 64111 | waldemar.pflepsen@faegredrinker.com |
| Tel: 816-561-6500 | FAEGRE DRINKER BIDDLE & REATH |
| Fax: 816-561-6501 | LLP |
| | 1500 K Street NW, Suite 1100 |
| James T. Clancy (Tex. Bar No. 00795292) | Washington, D.C. 20005 |
| (S.D. Tex. Bar. No. 19917) | Phone: (202) 842-8800 |
| jclancy@branscomblaw.com | Fax: (202) 842-8465 |
| BRANSCOMB, PLLC | |
| 802 N. Carancahua, Suite 1900 | **ATTORNEYS FOR DEFENDANT** |
| Corpus Christi, TX 78401-0036 | **STATE FARM LIFE INSURANCE** |
| Tel: (361) 886-3800 | **COMPANY** |
| Fax: (361) 886-3805 | |
| | |
| James J. Pizzirusso (admitted *pro hac vice*) | |
| jpizzirusso@hausfeld.com | |
| Nathaniel C. Giddings (admitted *pro hac vice*) | |
| ngiddings@hausfeld.com | |
| Melinda R. Coolidge (admitted *pro hac vice*) | |
| mcoolidge@hausfeld.com | |
| HAUSFELD LLP | |
| 1700 K Street, NW | |
| Washington, DC 20006 | |
| Telephone: (202) 540-7200 | |

Facsimile: (202)540-7201

**ATTORNEYS FOR PLAINTIFFS**

**EXHIBIT A**
**PROTOCOL GOVERNING THE PRODUCTION OF ELECTRONICALLY STORED**
**INFORMATION ("ESI")**

**A.      DELIVERY OF DOCUMENT PRODUCTIONS**

1.      Document productions shall be made via readily accessible, computer or electronic media including DVD-ROMs, CD-ROMs, or external hard drives (with standard PC compatible interface) ("Production Media"), or through secure file transfer protocol ("FTP") or similar secure or encrypted electronic transmission. All Production Media will be encrypted prior to production and the Producing Party will provide a decryption key to the Requesting Party in a communication separate from the production itself.

2.      If either Party chooses to employ a vendor to produce or receive Data, that side shall bear the costs of such a vendor and take reasonable steps to ensure that only persons authorized under the Stipulated Protective Order have access to the depository.

3.      Each Party shall bear its own costs of production.

**B.    ESI PRODUCTION FORMAT**

     **1.    Image File Format**

Except for the types of documents identified in Paragraphs B(2)-(3) below, a Producing Party will convert its unstructured discoverable ESI from its native file format ("Native File") to an image file for production, subject to the following specifications:

     a.      Single-page, black and white, 300 DPI, 1 bit Group IV TIFF images, with corresponding multi-page text and necessary load files, or PDF with an embedded text layer, shall be provided for each page of each document, with each image file named after the production number of that page, with extension ".tif."

b.      To the extent reasonably possible, the imaged Data shall retain all attributes of the native or hard-copy file, such as document breaks and original document orientation (*i.e.* portrait to portrait and landscape to landscape). The following formatting will be applied:

i.      Word processing documents will be processed to TIFF format and imaged showing track changes or edits, comments, notes and other similar information;

ii.      Spreadsheet files with redactions will be imaged un-hiding any hidden rows and/or columns and/or sheets; and

iii.      Presentation files will be processed to TIFF format showing comments, hidden slides, speakers' notes and similar data, where present in the original file. In addition to TIFF images, native presentation files will be provided upon request from a receiving party. The native file will be named as the first Bates number of the respective document. The corresponding load file shall include native file link information for each native file that is produced.

Embedded ESI documents (*e.g.*, a spreadsheet embedded within a word processing document) will be extracted, produced as independent document records and related back to the respective top level parent document (*e.g.*, standalone file, email message, etc.) via the BegAttach, ParentID and AttachmentIDS fields referenced in Appendix 2. Related documents will be produced within a continuous Bates range. However, a Producing Party may suppress its logo or v-card embedded in email files.

c.      To the extent a document is not already unitized, the parties shall undertake reasonable efforts, if a document consists of more than one page, to unitize the document and any attachment(s) as in their original form when creating the image files. The parties shall also

undertake reasonable efforts to ensure that distinct documents are not merged into a single record and that single documents are not split into multiple records.

       d.    Text files for extracted text or OCR shall be produced as one file per document, named after the starting production number assigned to the document and ending with extension ".txt", with a text directory for each production volume, and with a relative file path to the text file provided in the related database load file. With the exception of TIFF, JPEG, and other image file types for which the text cannot be extracted, the text of documents should be extracted directly from the Native File without using Optical Character Recognition ("OCR"), except in the case of redacted documents, as specified in Paragraph B(3)(c) and B(3)(d), below. Documents produced in redacted form should not have text files populated with extracted text but should instead have text files populated with OCR data which will not contain the redacted data. If a document does not contain extractable text, the Producing Party shall provide OCR files for that document to the extent possible.

       e.    Data containing color need not initially be produced in color. The Producing Party will honor reasonable requests for a color image, if the original Data contains color necessary to understand the meaning or content of the Data.

       f.    Electronic documents attached to an email or electronic document and hard-copy documents attached or appended to a hard-copy document, are to be produced contemporaneously and sequentially immediately after the parent document. Parent-child relationships within a document family (the association between an attachment and its parent document) shall be preserved. Each document shall be produced with the metadata fields outline in the table in Appendix 2.

g.      Except as specified in Paragraph B(3)(c) below, each of the metadata and coding fields set forth in Appendix 2 that exists and reasonably can be extracted from an electronic document shall be produced for that document.  Fields that are not populated shall be left with null values and not populated with fillers or spaces. All metadata pertaining to dates and times will be standardized to Central Standard Time (CST).

h.      All produced Discoverable Information will have a unique Control ID assigned, regardless of the format of the Discoverable Information, and the file produced will be named with the unique Control ID. Production numbers ("Bates Number") shall be branded to the lower right hand corner of TIFF images and confidentiality designations pursuant to a protective order (if applicable) shall be electronically branded or burned to the lower left hand corner of TIFF images so that they legibly print with the images. If one or more production numbers is skipped in a production, the Producing Party will so note in a cover letter accompanying the production or in a privilege log. The parties shall use reasonable efforts to ensure that production numbers: (1) are unique and consistent across the entire production, provided, however, that parties may use multiple prefixes to reflect productions from separate entities or related to specific experts; (2) maintain a constant prefix and page length (0- padded) across the production, consistent with the requirements of sub-paragraph (1); (3) contain a prefix that clearly identifies the Producing Party; (4) contain no special characters or embedded spaces; and (5) are sequential within a given document. Attachments will immediately follow the production number(s) for the parent document. Production number prefixes shall be consistent across all documents a party produces in the litigation.

i.      Upon entry of this Protocol, each party shall also produce accompanying image load/unitization files and delimited text files as described below in Appendix 1. Parties are

encouraged to work in cooperation with one another and each other's respective vendors in exchanging sample load files. If this exchange occurs, the Receiving Party will have 14 days to respond with load file change requests. Nothing in this Order will limit the parties from discussing load file changes throughout the course of the litigation.

j.       Where TIFF images of certain electronic documents are not readable, the parties may produce such documents in native format. Where TIFF images of certain hard copy documents are not readable, the parties will meet and confer regarding the volume and best method of production prior to producing paper documents in hard copy format. To the extent the Receiving Party obtains through discovery a file or document that the party believes is not adequately represented in TIFF image format, the Receiving Party may request that the file or document be produced in native format by identifying the document by production number, the production of which shall not unreasonably be withheld.

## 2.       Non-Convertible Files

Certain types of files such as system, program, proprietary files, audio files, and video files may not be amenable to conversion into TIFF format. Such files will not be converted into TIFF format. These files will be produced in their native format in accordance with Paragraph 3 below.

## 3.       Native Files

In addition to the types of Data listed in Paragraphs B(1)(j) and (2), a Producing Party will produce certain additional types of ESI in their native format, subject to the following specifications:

a.       Notwithstanding any provision contained herein, the parties agree that they shall produce all non-privileged Microsoft Excel files, .CSV files and other similar spreadsheet files as Native Files, regardless of whether they contain formulas. The Native File shall be renamed

in the following format: Bates Prefix-Bates Number- Confidentiality Designation. Except as specified in Paragraph B(3)(d) below, each of the metadata and coding fields set forth in Appendix 2 that reasonably can be extracted from an electronic document shall be produced for that document. Fields not populated shall be left with null values and not populated with fillers or spaces.

b. Where native files are produced in lieu of TIFF images, each native file will be assigned a unique production number within the litigation database. The Producing Party will produce a placeholder (a single-page TIFF slip sheet indicating that the native item was produced) along with the file itself in native format. The placeholder will be branded with the production number in the lower right hand corner, the original filename of the native file, and the phrase "PRODUCED IN NATIVE ONLY" branded in the center of the page. The Producing Party will also brand any confidentiality or similar endorsements in the lower left hand corner of the placeholder.

c. To the extent that any file identified for production in native format contains information subject to a claim of privilege or any other applicable protection that requires redaction, the Producing Party shall convert that file to TIFF format and produce it with the necessary redactions, along with OCR text that reflects such redactions, unless such conversion and redaction is unduly burdensome to the Producing Party. All such OCR text will be Unicode-compliance (UTF-8) to the extent practical.  If such conversion is unduly burdensome or renders the document unusable, the Producing Party may produce the document in any reasonably usable form as may be agreed upon by the respective parties.

d. The portion of the redacted text shall be clearly identified on the face of the TIFF image, either by masking the redacted content with electronic highlighting in black or

through the use of redaction boxes. The label "Redacted" shall appear on the face of the redacted portion of the TIFF image. If Personally Identifiable Information ("PII"), such as social security numbers are redacted, the label "Redacted – PII" shall appear on the face of the redacted portion. If information is redacted on the basis of the attorney-client privilege or the work product doctrine, the redaction shall be "Redacted – Privilege". The redacted TIFF image shall be produced in accordance with the image load file specifications in Appendix 1, and any other provisions for the production of TIFF images contained herein. Redacted text shall not be included in the text file for that redacted TIFF image. The original unredacted Native File shall be preserved pending conclusion of this Lawsuit.

e.      The parties will make reasonable efforts to ensure that all encrypted files are decrypted prior to processing, search and production, and to remove passwords or other security protection from any Native File prior to production. If the security protection cannot be removed from a Native File after reasonable efforts by the Producing Party, a placeholder TIFF image may be produced in place of the Native File indicating that security protection could not be removed from the Data. Upon request from the Requesting Party, the parties shall meet and confer in good faith regarding the reasonable efforts or mechanisms made to remove the security protection from the Native File and/or the production of the available metadata listed in Appendix 2 from the file.

f.      If a Native File is used at a deposition or hearing in this Lawsuit, or attached to a motion or other filing, it shall be accompanied by its production number- stamped placeholder TIFF image in order to facilitate tracking and authentication thereof. The parties may, but are not required to, further mark fixed images of Native Files with additional numbering for ease of identification at a deposition or hearing.

### 4.    Duplicates

A Producing Party will make reasonable efforts to globally de-duplicate identical ESI within their own productions, de-NIST, and remove zero- byte files.

a.    Electronic Documents that Are Not Email. Duplicate non-email electronic documents (such as Microsoft Word documents) may be identified based upon a commercially accepted method (*e.g.*, MD5 or SHA-1 hash values) for binary file content. All electronic documents bearing an identical value are a duplicate group. The Producing Party may produce only one document image or native file for duplicate ESI documents within the duplicate group, however, the Producing Party will identify the additional custodian(s) for duplicate documents not produced to the extent such information can be automatically populated by the processing of the documents.

b.    Email. Duplicate email or other messaging files may be identified based upon a commercially accepted method (*e.g.*, MD5 hash values) based upon the email family, which includes the parent email and all attachments. Email families bearing an identical value are considered a duplicate group. The Producing Party may produce only one document image or native file for duplicate ESI documents within the duplicate group; however, in the event that email is collected from a custodial source the Producing Party will identify each custodian(s) from whom the duplicate email was collected, provided that such information can be automatically populated with industry standard ESI processing tools.

c.    Email Threading. The Parties may use industry standard analytic tools to employ "email thread suppression." As used in this Protocol, email thread suppression means producing the most inclusive email in a conversation thread, as well as all attachments within the thread, and excluding emails constituting duplicates emails within the produced conversation

thread. Only email messages that are included within more complete, produced thread part will be considered appropriate for exclusion from production. Agreed upon metadata will not be produced for email thread parts suppressed under this paragraph.

        d.      <u>De-NISTing</u>. ESI collections will be De-NISTed, removing commercially available operating system and application file information contained on the current NIST file list.

        e.      <u>Zero-byte Files</u>. The Parties shall filter out files identified as zero bytes in size.

      **5.**      **Production of Data from Databases and Other Formats**

        a.      Discoverable Information that is stored in a database (*i.e.*, structured data) will be produced in reasonably usable standard report formats available in the ordinary course of business. Upon review of the report(s), the Requesting Party may, on a showing of particularized need, request from the Producing Party additional information to explain any codes, abbreviations, or other information necessary to ensure the report is reasonably usable. In the event of such a request, the Producing Party will determine the most reasonable means to provide the relevant and proportional information requested.

      **6.**      **Time Zone**

Unless otherwise agreed, all dynamic date and time fields, where such fields are processed to contain a value and do not automatically populate, and all metadata pertaining to dates and times will be standardized to Central Standard Time (CST). The Parties understand and acknowledge that such standardization affects only dynamic fields and metadata values and does not affect, among other things, dates and times that are hard-coded text within a file.

      **C.**      <u>**HARD COPY DOCUMENT PRODUCTION FORMAT**</u>

      1.      The parties agree that, with respect to documents that exist in hard-copy format ("Hard-Copy Materials"), a Producing Party will image and produce such documents as TIFF

images and OCR text in accordance with the specifications delineated in Section B, above. Where paper scanned images have identification spines, file folder labels, "post-it notes," or any other labels, the information on the label shall be scanned and produced to the extent practicable. In addition, folder labels, box labels, or binder labels (including spines), or other similar top level identifiers, to the extent practicable, shall be manually recorded at the time of scanning and coded in the Binder and/or Folder field. Load files for such productions shall include data relevant to the individual documents, including Bates numbering, custodian, OCR and folder labels and box labels that have been manually recorded.

2.      To the extent responsive Hard-Copy Materials are included in a large compilation of documents that is compiled solely for the purposes of storage convenience and not for any purposes related to the litigation and contains irrelevant, non-responsive Hard-Copy Materials, the Producing Party may produce responsive, non-privileged Hard- Copy Materials without also producing non-responsive Hard-Copy Materials.

3.      If a Producing Party reasonably believes that production of Hard-Copy Materials as imaged files pursuant to this Section C is unduly burdensome, the Producing Party shall seek to meet and confer in good faith with the Requesting Party regarding content, volume, and related issues before any production of Hard-Copy Materials. If the parties are unable to reach agreement, any party may seek relief from the Court.

## APPENDIX 1: Load File Formats

**Image Load Files**

- Load Files for ESI will be produced in a standard load file format. Upon request and demonstration of need, the Parties will meet and confer to discuss production in an alternative load file format or to produce without load files.

- Every document referenced in a production image load file shall have all corresponding images, text, and data. Redacted text shall not be included in a redacted document's text file.

- The name of the image load files shall mirror the name of the delivery volume, and should have an .opt file extension (*e.g.*, ABC001.OPT).

- The volume names shall be consecutive (*i.e.*, ABC001, ABC002, et. seq.).

- Every image in the delivery volume shall be contained in the image load file.

- The image key shall be named the same as the production number of the page.

- Load files shall not span across media (*e.g.*, CDs, DVDs, Hard Drives, etc.); instead, a separate volume shall be created for each piece of media delivered.

- Each image load file shall be produced in a standard litigation support image load format (*e.g.*, .opt) providing:

  a.    The document number for each image;

  b.    The relative path name(s) of each TIFF image file; and

  c.    The document boundaries for each document.

- The load file shall be in the order that appropriately corresponds with each image file.

**Metadata Load Files**

- The metadata load file shall use the following delimiters:

- Field Delimiter: ¶ (ASCII 020)

- Text Qualifier: þ (ASCII 254)

- Multi-value Delimiter: ; (ASCII 059)

- New line: ® (ASCII 174)

- Metadata fields that do not exist or are not applicable to a document or are NULL shall be left with null values and not populated with fillers or spaces.

- All date fields shall be produced in "mm/dd/yyyy" format.

- All time fields shall be produced in "hh:mm:ss" format.

- Load files shall not span across media (*e.g.*, CDs, DVDs, Hard Drives, etc.); instead, a separate volume shall be created for each piece of media delivered.

- The name of the metadata load file shall mirror the name of the delivery volume, and shall have a .dat or .txt extension (*i.e.*, ABC001.DAT or ABC001.TXT).

-  The volume names shall be consecutive (*i.e.*, ABC001, ABC002, *et. seq.*).

- Furthermore, .dat or .txt files must be encoded in ASCII or ANSI:UTF codings.

- The metadata fields listed in Appendix 2 (as pertain to particular categories of documents pursuant to this Protocol) shall be included in the delimited database load files to the extent they exist or are applicable to a document. The parties will reasonably endeavor to confirm the accuracy of the metadata extraction process. To the extent that the metadata listed in Appendix 2 relating to any ESI contains information subject to a claim of privilege or any other applicable protection, that metadata may be redacted or withheld, as appropriate, and the Producing Party shall

include information regarding the basis and justification for withholding or redacting such information in its privilege log in accordance with Rule 26 of the Federal Rules of Civil Procedure.

- Privilege logs shall be provided to the other party within thirty (30) business days after a production from which Discoverable Information has been withheld or redacted on any asserted privilege or protection grounds, and the logs shall be provided in MS-Excel or other searchable and sortable format.

**APPENDIX 2: ESI Metadata and Coding Fields**

| Field Name | Field Description | Populated For | Example Values |
|---|---|---|---|
| BegDoc | Production number of the first page of the document. | E-mail, E-doc, or Paper as appropriate | Prefix- 0000000001 |
| EndDoc | Production number of the last page of the document. | All | Prefix- 0000000002 |
| BegAttach | Production number of the first page of the first document of the document family. | All | Prefix- 0000000001 |
| EndAttach | Production number of the last page of the last document of the document family. | All | Prefix- 0000000004 |
| ParentID | BegBates number for the parent document of a family (will only be populated for attachments and will not be populated for documents that are not part of a family) | All | Prefix- 0000000001 |
| AttachmentIDS | First Bates number of every attachment in the family range (i.e. Bates number of the first page of every attachment) – will be populated only for the parent document. | All | Prefix- 0000000001 Prefix- 0000000005 Prefix- 0000000007 |
| AttachCount | The number of attachments to a document. | All | 3 |
| FileType | The record document. type of a document | All | Paper, Email, E-Attachment, Standalone Electronic Document |
| All_Custodians | Additional custodians who had a copy of the document prior to de-duplication, including duplicate custodians. | All | |
| To | All recipients that were included on the "To" line of the e-mail. | E-mails | larry.murphy@email.com |

| Field Name | Field Description | Populated For | Example Values |
|---|---|---|---|
| From | The name and e-mail address sender of the e-mail. | E-mails | Bart.Cole@email com |
| CC | All recipients that were included on the "CC" line of the e-mail. | E-mails | sstephens44@email.com |
| BCC | All recipients that were included on the "BCC" line of the e-mail. | E-mails | ceo-gs@email.com |
| DateSent | Date an email was sent (CST). | E-mails | mm/dd/yyyy |
| TimeSent | The time an e-mail was sent (CST). | E-mails | hh:mm:ss: |
| DateCreated | The date an e-mail or e-file was created (CST). | E-mails, E-attachments and electronic documents | mm/dd/yyyy |
| TimeCreated | The time an email or e-file was created (CST) | E-mails, E-attachments and electronic documents | hh:mm:ss: |
| DateLastModified | Date the document was last modified. | E-attachments; Electronic documents | mm/dd/yyyy |
| TimeLastModified | The time an e-file was last modified (CST). | E-attachments; Electronic documents | hh:mm:ss: |
| LastSavedBy | Value shows within the "last saved" metadata field. | E-mails, E-attachments and electronic documents | |
| Cal_Start | Start date and time of calendar or appointment (CST). | E-mails, E-attachments and electronic documents | |
| Hash | MD5 hash value of document or "de-duplication key" | All | Hash Value |
| FileName | The file name of the document, including file extension | E-attachments; Electronic documents | |
| Author | Author of document | E-attachments and electronic documents | |

| Field Name | Field Description | Populated For | Example Values |
|---|---|---|---|
| Subject | Document subject line of an e-mail | E-mails | |
| Orig_File_Name | The original file name of an electronic document or an attachment to an Email. | E-attachments and electronic documents | |
| File_Ext | The file extension of a document. | All | Doc, nsf, rtf, pdf, msg, xls, etc. |
| File_Size | The file size of a document (including embedded attachments). | All | |
| FilePath | The full path to the file at its original location. | All | |
| NativeFilePath | The path to the corresponding native file included with a production volume. | E-attachments and Electronic documents produced in native format | |
| TEXTPATH | The relative path to the corresponding OCR or extracted text file included with a production volume. | All | |
| Confidentiality Designation | The designated level of confidentiality pursuant to the Protective Order. | All | CONFIDENTIAL |
| Container | Top level source and folder-level source for any scanned document, if available. | Paper as appropriate. | |