**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | |
|---|---|
| ANNA GONZALEZ and RONALD K. PAGE, on behalf of themselves and all others similarly situated, | Civil Action No. SA-20-CV-617-FB-ESC |
| Plaintiffs, | |
| v. | |
| STATE FARM LIFE INSURANCE COMPANY, | |
| Defendant. | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF
<u>MOTION FOR CLASS CERTIFICATION</u>**

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ iii

STATEMENT OF THE CASE......................................................................................... 3

    A.    The Life Insurance Contracts Between State Farm and the Class. ............................ 3

    B.    The Policy Identifies Specific Charges State Farm Is Authorized to Deduct
        from Account Values. ...................................................................................... 4

        1.    The COI charge is a mortality charge. ................................................. 4

        2.    The Policy sets a cap on expense deductions............................................ 5

        3.    State Farm increases COI charges with undisclosed loads. ....................... 5

ARGUMENT ................................................................................................................ 6

    A.    Standard on Class Certification. .................................................................. 8

    B.    The Class Meets Each of the Requirements of Rule 23(a). .............................. 8

        1.    Numerosity is satisfied.............................................................................. 8

        2.    There are common questions of law and fact. .......................................... 9

        3.    Plaintiff's claims are typical of those of the Class.................................. 11

        4.    Plaintiff satisfies the adequacy requirement. ........................................... 12

            a.    That State Farm's actual COI rates are, at rare times, lower than its
                mortality rates does not create an intra-class conflict..................................... 14

            b.    State Farm's contention that it "pooled" its mortality rates does not create
                an intra-class conflict. .................................................................................... 16

            c.    Mr. Witt's use of mortality rates "blended" for tobacco use does not create
                an intra-class conflict. .................................................................................... 20

    C.    Plaintiff Satisfies the Requirements of Rule 23(b)(3).................................. 21

        1.    Predominance is satisfied........................................................................ 21

            a.    Common questions predominate Plaintiff's breach of contract claims. ......... 22

            b.    Common questions predominate Plaintiff's conversion claim. ..................... 23

            c.    Damages can be determined on a class-wide basis........................................ 24

i

      (1)  State Farm's offset affirmative defense premised on the cross-over does not affect the reliability of Plaintiff's damages model. ..................... 26

      (2)  Calculating damages for policy owners who selected "Death Benefit Option 1" and for whom a death benefit was paid does not affect the reliability of Plaintiff's damages model. ................................................... 26

      (3)  Mr. Witt's use of State Farm's unpooled and tobacco-blended pricing mortality rates to measure damages is reasonable and appropriate. ......... 27

    d.    Class members' subjective understandings of the Policy's terms do not create individualized issues ........................................................................... 28

    e.    State Farm's statute of limitations defense does not create individualized issues. ....................................................................................................... 30

  2.    Superiority is satisfied .......................................................................................... 33

D.    Rule 23(b)(2) Is Satisfied. ........................................................................................... 34

CONCLUSION ..................................................................................................................... 34

# **TABLE OF AUTHORITIES**

<u>Cases</u>

*Alleman v. State Farm Life Ins. Co.*,
   334 F. App'x 470 (3d Cir. 2009) ................................................................. 5

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997) ................................................................................ 21

*Bally v. State Farm Life Ins. Co.*,
   335 F.R.D. 288 (N.D. Cal. 2020) ..................................................... passim

*Barnett v. Aetna Life Ins. Co.*,
   723 S.W.2d 663 (Tex. 1987) .................................................................. 29

*Blackie v. Barrack*,
   524 F.2d 891 (9th Cir. 1975) ................................................................. 18

*BP Am. Prod. Co. v. Marshall*,
   342 S.W.3d 59 (Tex. 2011) .................................................................... 32

*DiFelice v. U.S. Airways, Inc.*,
   235 F.R.D. 70 (E.D. Va. 2006) .............................................................. 18

*Earle v. Ratliff*,
   998 S.W.2d 882 (Tex. 1999) .................................................................. 32

*Eisen v. Carlisle & Jacquelin*,
   417 U.S. 156 (1974) ............................................................................... 33

*Feller v. Transamerica Life Ins. Co.*,
   No. 16-cv-01378, 2017 WL 6496803 (C.D. Cal. Dec. 11, 2017) ............ 7, 10, 12, 22

*Halliburton Co. v. Erica P. John Fund, Inc.*,
   134 S.Ct. 2398 (2014) ........................................................................... 32

*Hanks v. Lincoln Life & Annuity Co. of New York*,
   330 F.R.D. 374 (S.D.N.Y. 2019) ...................................................... passim

*Ibe v. Jones*,
   836 F.3d 516 (5th Cir. 2016) ...................................................... 21, 24, 25

*In re Conseco Life Ins. Co. Cost of Ins. Litig.*,
   No. ML 04-1610, 2005 WL 5678842 (C.D. Cal. Apr. 26, 2005) ............. 7

*In re Conseco Life Ins. Co. Life Trend Ins. Mktg. & Sales Practice Litig.*,
   920 F. Supp. 2d 1050 (N.D. Cal. 2013) ................................................. 5

*In re Conseco Life Ins. Co. LifeTrend Ins. Sales & Mktg. Litig.*,
  270 F.R.D. 521 (N.D. Cal. 2010) ................................................................. 7

*In re Monumental Life Ins. Co.*,
  365 F.3d 408 (5th Cir. 2004) ................................................................... 31

*James v. Paul*,
  49 S.W.3d 678 (Mo. 2001) ...................................................................... 19

*Krueger v. Ameriprise Fin., Inc.*,
  304 F.R.D. 559 (D. Minn. 2014) .............................................................. 18

*Larson v. John Hancock Life Ins. Co.*,
  No. RG16813803, 2017 WL 4284163 (Cal. Super. Ct. March 23, 2017) ............... 8, 10, 12, 22

*Lee v. Allstate Life Ins. Co.*,
  361 Ill. App. 3d 970 (Ill. Ct. App. 2005) .................................................... 8

*Marketshare Telecom, L.L.C. v. Ericsson, Inc.*,
  198 S.W.3d 908 (Tex. App.—Dallas 2006, no pet.) ........................................ 22

*MMR Int'l Ltd. v. Waller Marine, Inc.*,
  No. H-11-1188, 2013 WL 3864271 n.2 (S.D. Tex. July 24, 2013) (applying Restatement
  (Second) of Contracts under Texas law) .................................................... 30

*Mullen v. Treasure Chest Casino, LLC*,
  186 F.3d 620 (5th Cir. 1999) ........................................................ 8, 11, 12, 21

*Nat'l Union Fire Ins. Co. of Pittsburgh Pa. v. Care Flight Air Ambulance Serv., Inc.*,
  No. CIV.A. 3-91-1187-H, 1992 WL 613254 (N.D. Tex. Nov. 2, 1992) .................... 23

*Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Hudson Energy Co.*,
  811 S.W.2d 552 (Tex. 1991) .................................................................... 29

*Phoenix Life Ins. Co.*,
  No. 11-cv-8405, 2013 WL 12224042 (S.D.N.Y. July 12, 2013) ..................... 8, 10, 22

*Schramm v. JPMorgan Chase Bank, N.A.*,
  No. LA CV09-09442 JAK, 2011 WL 5034663 (C.D. Cal. Oct. 19, 2011) ................ 31

*Semtek Int'l Inc. v. Lockheed Martin Corp.*,
  531 U.S. 497 (2001) .............................................................................. 19

*Snow Ingredients, Inc. v. SnoWizard, Inc.*,
  833 F.3d 512 (5th Cir. 2016) ................................................................... 19

*Spegele v. USAA Life Ins. Co.*,
  336 F.R.D. 537 (W.D. Tex. 2020) ...................................................... passim

*Spin Doctor Golf, Inc. v. Paymentech, L.P.*,
   296 S.W.3d 354 (Tex. App.—Dallas 2009, no pet.)............................................................ 32

*State Farm Life Ins. Co. v. Vogt*,
   No. 20-1008, 2021 WL 1521013 (U.S. Apr. 19, 2021) ............................................ 5

*Steward v. Janek*,
   315 F.R.D. 472 (W.D. Tex. 2016) ...................................................................... 8, 9

*TIB--The Indep. BankersBank v. Canyon Cmty. Bank*,
   13 F. Supp. 3d 661 (N.D. Tex. 2014) .................................................................. 30

*Torres v. S.G.E., Mgmt., L.L.C.*,
   838 F.3d 629 (5th Cir. 2016) ............................................................................. 32

*Tyson Foods, Inc. v. Bouaphakeo*,
   136 S. Ct. 1036 (2016) ...................................................................................... 21

*Unger v. Amedisys Inc.*,
   401 F.3d 316 (5th Cir. 2005) .............................................................................. 12

*Vogt v. State Farm Life Ins. Co.*, 963 F.3d 753 (8th Cir. 2020) ........................................... passim

*Vogt v. State Farm Life Ins. Co.*,
   No. 2:16-cv-4176-NKL, 2018 WL 1747336 (W.D. Mo. Apr. 10, 2018) ...................... 4, 19, 27

*Vogt v. State Farm Life Ins. Co.*,
   No. 2:16-cv-4176-NKL, 2018 WL 1955425 (W.D. Mo. Apr. 24, 2018) ........................ passim

*Vogt v. State Farm Life Ins. Co.*,
   No. 2:16-cv-4176-NKL, 2018 WL 4937069 (W.D. Mo. Oct. 11, 2018)............................ 16, 18

*Vogt v. State Farm Life Ins. Co.*,
   No. 2:16-cv-4176-NKL, 2018 WL 4937330 (W.D. Mo. Oct. 11, 2018)..................... 26, 27, 28

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011)............................................................................................ 9

*Wellington Underwriting Agencies, Ltd. v. Houston Exploration Co.*,
   267 S.W.3d 277 (Tex. App.—Houston [14th Dist.] 2008, pet. granted)................................. 29

*Yates v. Collier*,
   868 F.3d 354 (5th Cir. 2017) .............................................................................. 8

*Yue v. Conseco Life Ins. Co.*,
   282 F.R.D. 469 (C.D. Cal. 2012)........................................................................ 10

v

Rules

Fed. R. Civ. P. 23 ................................................................................................... passim

Other Authorities

2 William B. Rubenstein, Newberg on Class Actions § 4:57 (5th ed.) ........................................ 31

Newberg on Class Actions § 3:62 (5th ed.) ................................................................................. 18

Restatement (Second) of Contracts § 211(2) ............................................................................. 30

Plaintiff Ronald K. Page ("Page" or "Plaintiff") individually, and on behalf of the proposed Class of Texas policy owners, challenges Defendant State Farm Life Insurance Company's ("State Farm" or "Defendant") interpretation and implementation of its standardized universal life insurance policy, "Form 94030." This case is well-suited for class certification because it turns on the interpretation of a form contract under Texas law, and State Farm's uniform conduct toward all class members. In fact, two nearly identical cases brought against State Farm on behalf of classes of Missouri and California policy owners of the same policy form have been certified in the last few years. The case involving Missouri Form 94030 owners was tried to jury verdict in 2018, *see Vogt v. State Farm Life Ins. Co.*, 16-4170-CV-C-NKL (W.D. Mo.) ("*Vogt*"), affirmed on appeal, *see* 963 F.3d 753 (8th Cir. 2020), and the United States Supreme Court denied State Farm's petition for writ of certiorari seeking review of class certification, Dkt. 20-1008 (U.S. Apr. 19, 2021). The case involving California Form 94030 owners was certified and the Ninth Circuit denied State Farm's petition for Rule 23(f) review. *Bally v. State Farm Life Ins. Co.*, 335 F.R.D. 288 (N.D. Cal. 2020), *Rule 23(f) petition denied*, No. 20-80070 (9th Cir. July 22, 2020) ("*Bally*").[1] And, a case involving similar claims on another form universal life insurance policy under Texas law was recently certified by Chief Judge Garcia of this Court. *See Spegele v. USAA Life Ins. Co.*, 336 F.R.D. 537 (W.D. Tex. 2020) ("*USAA COI*"). Chief Judge Garcia also denied a motion to strike the same class certification expert Plaintiff relies on in this case. *See id.* The same result is warranted here.

State Farm's Form 94030 life insurance policy (the "Policy") is a "universal" life insurance contract. Unlike standard "term" life insurance, universal life insurance is designed to

---

[1] For this reason, Plaintiff's motion affirmatively addresses the arguments that State Farm raised and that were rejected in *Vogt* and *Bally* (and that Plaintiff expects State Farm will raise here) with the goal of providing the Court context to these previously litigated and resolved issues.

provide a lifetime death benefit to the insured plus an investment feature or savings component, called the "Account Value," that allows policy owners to earn interest on their accumulated premiums over time. The Policy provides for certain charges to be deducted, including a premium expense charge, taken by State Farm from each premium before the remainder of the premium is deposited into the policy owner's Account Value, as well as a "Monthly Deduction" taken from the Account Value each month.

The Policy provides that the Monthly Deduction includes the cost of insurance charge (the "COI charge") and the expense charge (the "Expense charge"). As alleged in Plaintiff's First Amended Complaint ("Complaint" or "Compl."), State Farm determines these charges in a manner not permitted by the plain terms of the Policy. Specifically, the Policy requires that State Farm calculate the COI charge component of the Monthly Deduction using monthly cost of insurance rates ("COI rates"). State Farm promises its COI rates "for each policy year are based on the Insured's age on the policy anniversary, sex, and applicable rate class," and "can be adjusted for projected changes in mortality." Policy year, age, sex, and rate class are factors associated with assessing an insured's mortality risk (i.e., the risk the insured will die). But State Farm does not base its COI rates solely on those mortality factors identified in the Policy. Instead, State Farm loads its COI rates and corresponding COI charges with unlisted, non-mortality factors, including expenses and profit, which Plaintiff alleges breaches the Policy. This case presents a predominating, common question of liability, the answer to which will resolve thousands of claims: whether State Farm breached the Policy by taking funds from policy owners without authorization under the Policy's relevant terms.

Like liability, damages can be readily determined on a class-wide basis by calculating the lost Account Value (with interest at the applicable policy rate) for each policy owner resulting

from the unauthorized COI charges. The excess deductions are calculated using the same formula for every class member—simply by subtracting the non-mortality expense and profit components attributable to State Farm's use of impermissible factors in determining COI rates. By way of example, by loading its COI rates with unlisted factors at pricing and repricing, State Farm deprived Page of $3,322.31 in Account Value due to the excessive deductions. In other words, while Page has paid over $26,000 in premiums, his account value in February 2021 was under $5,800. Absent the impermissible loads in the COI charges, Page's account value would have been almost $9,100. These amounts can be similarly and systematically calculated for each class member and aggregated for the entire Class, as Plaintiff's expert, Scott Witt, did for the Missouri and California classes in *Vogt* and *Bally*.

**STATEMENT OF THE CASE**

**A.      The Life Insurance Contracts Between State Farm and the Class.**

State Farm began issuing Form 94030 universal life insurance policies in Texas in 1994. Ex. 1, Declaration of Scott J. Witt ("Witt Dec."), ¶ 48; *id.* at Ex. I (Holzbauer Dep.), 142:10-20. Page purchased his Form 94030 Policy in Corpus Christi, Texas in 1997. *See* application attached to the Policy.[2] Although existing policies remain in force, State Farm ceased issuing new Form 94030 policies in Texas in 2007. Witt Dec., ¶ 48.

The Policy is a valid and enforceable contract between each policy owner and State Farm. Compl. ¶ 14. Its terms are not subject to individual negotiation and are materially the same for all policy owners, and the Policy cannot be altered by the agent's representations at the time of sale, or by any other discussions or writings. Policy at 11 ("The [P]olicy is the entire contract," and it consists of "the Basic Plan, any amendments, endorsements, and riders, and a copy of the application."). State Farm's obligations (like the policy owner's) cannot be obviated

---

[2] Plaintiff's Policy is attached as Ex. B to the Declaration of Scott J. Witt.

by informal consent, waiver, or some other act because "[o]nly an officer has the right to change this [P]olicy. No agent has the authority to change the [P]olicy or to waive any of its terms." *Id.*

The Policy is a "universal" life insurance policy. In contrast to term life insurance, which provides only a death benefit, the Policy includes an Account Value where, after deduction of a premium expense charge, premiums are deposited and accumulate interest at a fixed rate of no less than four percent (4%), much like a savings account. *Id.*; *see* Witt Dec., ¶¶ 18-27.

## B.     The Policy Identifies Specific Charges State Farm Is Authorized to Deduct from Account Values.

The Policy authorizes State Farm to take from the Policy's Account Value a Monthly Deduction comprised of the separately identified: (a) COI charge; (b) charges for any riders; and (c) the $5.00 Expense charge. Policy at 9.

### 1.     The COI charge is a mortality charge.

The Policy provides that the COI charge is determined by multiplying the COI rate by the Policy's net amount at risk (the amount by which the death benefit amount exceeds the Account Value; in other words, the net amount State Farm will have to pay the beneficiary if the insured dies). Witt Dec., ¶ 24; Policy at 10. The Policy then states that COI rates "for each policy year are based on the Insured's age on the policy anniversary, sex, and applicable rate class," and that "[s]uch rates can be adjusted for projected changes in mortality." *Id*. The factors identified in the Policy are characteristics commonly understood and used within the life insurance industry to determine the mortality expectations for an insured. Witt Dec., ¶¶ 29-31; *id.* at Ex. F (Phipps Tr.), 24:24-25:9; *id.* at Ex. E (Streily Tr.), 155:19-158:22, 159:6-160:20, 196:6-197:23; *see also Vogt*, 2018 WL 1747336, at *2 (W.D. Mo. Apr. 10, 2018) (recognizing that age, sex, and rate class are mortality factors), *aff'd*, 963 F.3d 753, 761 (8th Cir. 2020) ("These enumerated factors are so-called 'mortality factors' because they relate to a policyholder's mortality risk, which

4

allows the insurer to determine the projected mortality estimate of a policyholder based on his specific circumstances."), *cert. denied sub nom.*, No. 20-1008, 2021 WL 1521013 (U.S. Apr. 19, 2021); *Alleman v. State Farm Life Ins. Co.*, 334 F. App'x 470, 472 (3d Cir. 2009) (noting that age and sex are "mortality factors"); *In re Conseco Life Ins. Co. Life Trend Ins. Mktg. & Sales Practice Litig.*, 920 F. Supp. 2d 1050, 1061 (N.D. Cal. 2013), *vacated pursuant to settlement*, 2013 WL 10349975 (N.D. Cal. Nov. 8, 2013) ("Because age and sex are the guiding factors in the lifespan of a person, a layperson would ordinarily attach the rates to mortality.").

State Farm does not disclose to policyholders the actual COI rates or factors included therein. Witt Dec., Ex. I (Holzbauer Tr.), 178:21-25; *id.* at Ex. E (Streily Tr.), 124:13-23; *id.* at Ex. C (annual statements); *id.* at Ex. D (Policy illustration); *see also Bally*, 335 F.R.D. 288, 304 (N.D. Cal. 2020) (granting certification of a California class, stating "State Farm does not adduce any evidence to show that 'policyholder[s] would have been on notice that State Farm was considering unlisted variables in calculation [of] the COI'").

### 2.      The Policy sets a cap on expense deductions.

The Policy separately authorizes State Farm to deduct a 5% premium expense charge from each premium paid as well as the monthly expense charge of $5.00. Policy at 3.

### 3.      State Farm increases COI charges with undisclosed loads.

Plaintiff contends the Policy provision requiring that monthly COI rates "for each policy year" be "based on the Insured's age on the Policy anniversary, sex, and applicable rate class" means exactly what it says: that State Farm must determine COI rates using only the listed factors, not undisclosed factors to increase the COI rates.

State Farm can and did develop rates using only the listed factors when it priced the Policy; they are known as the "pricing mortality rates." *See* Witt Dec., ¶¶ 29-40; *id.* at Ex. E (Streily Tr.), 151:23-152:15, 160:15-20; *id.* at Ex. I (Holzbauer Tr.), 145:15-19. But, after

developing these pricing mortality rates using only the listed factors, State Farm increased those rates with undisclosed profit and expense loads. *See Vogt*, Dkt. 335; Witt Dec., Ex. G (New Jersey Actuarial Memorandum) at 5; *id.* at Ex. E (Streily Tr.), 144:20-24; 224:6-18 (admitting that "pricing mortality … was used to determine a cost of insurance rate, and that the cost of insurance rate was then loaded for expenses and profit," and that "expenses and profit" are not considered "to be mortality related"); *see also id.* at ¶¶ 41-45. Inclusion of these undisclosed factors has a substantial impact on the amounts deducted each month from policy owners' Account Values. For example, on the same policy form and identical pricing process (*see* Witt Dec., ¶ 10), a jury found State Farm's overcharges caused over $34 million in lost Account Value for a class of approximately 24,000 Missouri policy owners, *see Vogt*, Dkt. 358.

In this case, the loading of the COI rates was similarly substantial. For instance, in the first year Page owned his Policy, State Farm charged him a COI rate two and a half times the rate derived from the listed, contract-permitted mortality factors. In other words, COI charges calculated using the contractual COI rates would have been only 40% the COI charges that State Farm actually deducted, meaning Page's actual charges contained significant undisclosed loads. *See* Witt Dec., ¶¶ 51, 61.

Because these Policy overcharges result from State Farm's uniform administration of the Policy, all policy owners are subject to the same set of loaded COI rates and the resulting overcharges. *See* Witt Dec., ¶ 10; *id.* at Ex. E (Streily Tr.), 140:3-145:10, 146:17-147:5, 171:21-172:11.

## **ARGUMENT**

Plaintiff seeks to certify his claims for breach of contract (Count I – Cost of Insurance Charge and Count II – Expense Charge), conversion (Count III), and declaratory and injunctive

relief (Count VII) on behalf of the following class ("the Class"):

> All persons who own or owned a universal life insurance policy issued by State Farm on Form 94030 in the State of Texas whose policy was in-force on or after January 1, 2002 and who was subject to at least one monthly deduction.[3]

Three courts have already found that class certification is appropriate in nearly identical cases. The Western District of Missouri in *Vogt* certified a class of Missouri policy owners making the same allegations on the Form 94030 policy, and the Eighth Circuit affirmed class certification on appeal and the United States Supreme Court denied State Farm's petition for certiorari challenging class certification. *Vogt*, 2018 WL 1955425, at *6, *aff'd* 963 F.3d 753, 766-68 (8th Cir. 2020), *cert. denied sub nom.*, No. 20-1008, 2021 WL 1521013 (U.S. Apr. 19, 2021). The Northern District of California in *Bally* likewise certified a class of California policy owners making the same allegations on the Form 94030 policy as are asserted here, and State Farm's Rule 23(f) petition for permission to appeal was denied. *Bally*, 335 F.R.D. at 305, *Rule 23(f) appeal denied*, No. 20-80070 (9th Cir. July 22, 2020). In addition, a similar COI overcharge case under Texas law against USAA Life Insurance Company was recently certified by Chief Judge Garcia of this Court. *USAA COI*, 336 F.R.D. 537 (W.D. Tex. 2020).

Moreover, courts frequently certify class actions, like this one, alleging breaches of the cost of insurance provisions of standardized life insurance policies. *See, e.g.*, *Feller v. Transamerica Life Ins. Co.*, No. 16-cv-01378, 2017 WL 6496803 (C.D. Cal. Dec. 11, 2017) ("*Transamerica COI*"); *In re Conseco Life Ins. Co. LifeTrend Ins. Sales & Mktg. Litig.*, 270 F.R.D. 521, 533 (N.D. Cal. 2010); *In re Conseco Life Ins. Co. Cost of Ins. Litig.*, No. ML 04-

---

[3] Excluded from the Class are: State Farm; any entity in which State Farm has a controlling interest; any of the officers, directors, employees, or sales agents of State Farm and their immediate family; the legal representatives, heirs, successors, and assigns of State Farm; anyone employed with Plaintiff's counsel's firms; any Judge to whom this case is assigned, and his or her immediate family; and owners of policies that insured age-zero males and terminated in the first policy year.

1610, 2005 WL 5678842, at *4, *9 (C.D. Cal. Apr. 26, 2005); *Larson v. John Hancock Life Ins. Co.*, No. RG16813803, 2017 WL 4284163 (Cal. Super. Ct. March 23, 2017) ("*John Hancock COI*"); *Fleisher v. Phoenix Life Ins. Co.*, No. 11-cv-8405, 2013 WL 12224042, at *13, *18 (S.D.N.Y. July 12, 2013) ("*Phoenix COI*"); *Hanks v. Lincoln Life & Annuity Co. of New York*, 330 F.R.D. 374 (S.D.N.Y. 2019) ("*Lincoln Life COI*"); *Lee v. Allstate Life Ins. Co.*, 361 Ill. App. 3d 970 (Ill. Ct. App. 2005). Class certification here is likewise proper.

## A.      Standard on Class Certification.

A motion for class certification under Federal Rule of Civil Procedure 23 involves a two-part analysis. First, under Rule 23(a), the proposed class must satisfy the requirements of numerosity, commonality, typicality, and fair and adequate representation. Second, the proposed class must meet at least one of the three requirements of Rule 23(b). *See, e.g.*, *USAA COI*, 336 F.R.D. at 548; *Steward v. Janek*, 315 F.R.D. 472, 479 (W.D. Tex. 2016). A district court has broad discretion in deciding whether a particular action complies with the requirements of Rule 23. *Yates v. Collier*, 868 F.3d 354, 359-60 (5th Cir. 2017); *USAA COI*, 336 F.R.D. at 548. In this case, the proposed Class meets all of the requirements of Rule 23(a) as well as the requirements of Rule 23(b)(2), (b)(3), and (c)(4).

## B.      The Class Meets Each of the Requirements of Rule 23(a).

### 1.      Numerosity is satisfied.

Rule 23(a)(1)'s numerosity requirement is satisfied when the proposed class is sufficiently numerous to make joinder of all members impracticable. Fed. R. Civ. P. 23(a)(1). The proposed Class is sufficiently numerous. State Farm's records show there are over 63,195 policies in the proposed Class. Witt Dec., ¶ 49; *see Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999) ("Although the number of members in a proposed class is not determinative of whether joinder is impractical . . . 100 to 150 members . . . is within the range

8

that generally satisfies the numerosity requirement.") (citations omitted). Additionally, the relatively small size of the individual claims would make separate suits impracticable. Page's COI charges exceeded those calculated using COI rates determined only from the Policy-disclosed factors and accumulating those overcharges at the interest rate provided under his policy results in a loss to Page of $3,322.31. Witt Dec., ¶ 61.

2.      **There are common questions of law and fact.**

Rule 23(a)(2) requires "questions of law or fact common to the class." "The purpose of this requirement is to determine whether 'maintenance of a class action is economical and whether the named plaintiff['s] claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence'; in short, whether 'all their claims can productively be litigated at once' . . . ." *Steward*, 315 F.R.D. at 480 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 & n.5 (2011)). The claims must "depend upon a common contention . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 480-81 (quoting *Dukes*, 564 U.S. at 350).

Plaintiff alleges that State Farm made and continues to make excessive deductions for COI charges. Plaintiff asserts that State Farm has determined COI rates in a manner not authorized by the Policy, and the resulting deductions from Account Values exceed the amounts permitted by the Policy's terms. Common evidence of State Farm's uniform methodology of calculating deductions on a common form Policy will establish whether State Farm is liable for breach of contract by failing to determine COI rates using only the listed mortality factors and inflating the COI charges deducted from policy owners' Account Values with undisclosed loads (Count I). Likewise, common evidence will determine whether State Farm is deducting undisclosed expenses through the COI charge, whether the Policy limits the amount of expenses

State Farm is permitted to deduct on a monthly basis to the fixed amount of the Expense charge, and whether State Farm is therefore in breach of its contracts with policy owners (Count II). And common evidence will determine whether State Farm converted policy owners' property by taking more of their money than authorized (Count III).

Each claim depends on a common course of conduct—State Farm entered into identical contracts and uniformly loaded unlisted factors into its COI rates for all policy owners. *See Vogt*, 2018 WL 1955425, at *3 (finding commonality satisfied because plaintiff's claims all turned on interpretation of the standard form policy and State Farm's uniform incorporation of non-mortality factors into its COI rates); *Bally*, 335 F.R.D. at 301-02 (finding commonality satisfied, rejecting State Farm's argument that individualized sales presentations prior to each class member's purchase of the Policy would result in different policy interpretations of each class member's standard form policy); *USAA COI*, 336 F.R.D. at 552 (finding commonality satisfied because "whether Defendant used factors outside those enumerated in the Class Policies to determine its COI Rates will rely on the same evidence throughout the class"); *Yue v. Conseco Life Ins. Co.*, 282 F.R.D. 469, 476 (C.D. Cal. 2012) (whether uniform, standard language contained in all insurance policies permitted insurer's adjustment of COI rates was a common question); *Transamerica COI*, 2017 WL 6496803, at *6 ("the issue of breach . . . is also common to all prospective class members"); *Phoenix COI*, 2013 WL 12224042, at *8 ("[B]reach of contract *is* the central issue in the case brought by [plaintiff] on behalf of the [] Class.") (emphasis in original); *John Hancock COI*, 2017 WL 4284163, at *6 (finding that "liability issues are exclusively common issues uniting the class"); *Lincoln Life COI*, 330 F.R.D. at 380 (finding commonality met where claims "turn on common contentions of what factors [the

insurer] used to calculate the 2016 COI rate increase and whether the insurance contracts allow for a rate increase based on those factors").

So, for every putative class member, there are many common questions of law, including:

- Is State Farm limited to using only the listed mortality factors when determining COI rates?
- Is State Farm permitted to deduct more in expenses through the Monthly Deduction than provided by the Policy's Expense charge?
- Is State Farm liable for conversion?

Moreover, proving this case is dependent on similarly common questions of fact because State Farm calculated and took its deductions in the same manner for all policy owners:

- Did State Farm use factors not specified in the Policy to determine its COI rates?
- Did State Farm deduct expenses through the COI charge?
- Did State Farm take more money from policy owners' Account Values than it was authorized to take?

Each of the foregoing questions is common to each policy owner and will be answered the same, one way or the other, for each member of the Class because State Farm's conduct was consistent as to all policy owners.[4] *See* Witt Dec., ¶ 10; *id.* at Ex. E (Streily Tr.), 166:7-22, 171:21-172:11.

### 3.    Plaintiff's claims are typical of those of the Class.

Like commonality, the test for typicality is "not demanding." *Mullen*, 186 F.3d at 625. The typicality requirement is met when the claims or defenses of the representative party are typical of those of the class. Fed. R. Civ. P. 23(a)(3). The test "focuses on the similarity between the

---

[4] At a minimum, these common questions support certification under Rule 23(c)(4).

named plaintiffs' legal and remedial theories and the theories of those whom they purport to represent." *Mullen*, 186 F.3d at 625.

The typicality requirement is easily satisfied here. All putative class members were subject to identical policy language, State Farm performed (and breached) the Policy in the same way for each class member, and each putative class member was injured in the same way by that conduct. *See Vogt*, 2018 WL 1955425, at *5 (finding plaintiff's claims typical of those of the class because the claims arose from and related to the interpretation and application of the policy and the policy language, and State Farm's methodology for determining COI rates was uniform for all class members); *Bally*, 335 F.R.D. at 302 (same); *USAA COI*, 336 F.R.D. at 552 (finding typicality satisfied because "Plaintiff's Policy and the Class Policies are materially identical, and Defendant's alleged breach of these policies was uniform for both Plaintiff and the proposed class."); *John Hancock COI*, 2017 WL 4284163, at *10 (certifying class of policy owners because the plaintiff's claims were "typical, indeed, substantially identical, to those of the class" because the plaintiff and the class agreed to the same policy language); *Lincoln Life COI*, 330 F.R.D. at 380-81; *Transamerica COI*, 2017 WL 6496803, at *8.

### 4.    Plaintiff satisfies the adequacy requirement.

Adequacy requires that the class representative and class counsel "fairly and adequately protect the interests of the class." Rule 23(a)(4). To meet the adequacy requirement, "the court must find that class representatives, their counsel, and the relationship between the two are adequate to protect the interests of absent class members." *Unger v. Amedisys Inc.*, 401 F.3d 316, 321 (5th Cir. 2005). The adequacy requirement is satisfied in this case.

*First*, Plaintiff's claims are consistent with those of the Class. He claims he was overcharged because State Farm failed to keep its promises in the Policy and to act within its authority in making deductions from his Account Value. Because the terms of the Policy are the

same for everyone and State Farm priced it uniformly, if State Farm used unauthorized factors to increase COI rates, Plaintiff and all other policy owners suffered excessive COI charges. Because the claims and interests of the class members are uniform, Plaintiff does not anticipate any reason that subclassing would become necessary.

*Second*, Plaintiff has sufficient interest in the case to ensure vigorous representation. He has a personal monetary interest in recouping the overcharges. Indeed, Plaintiff's expert's analysis is that Plaintiff was harmed in the amount of $3,322.31 (the total lost Account Value resulting from wrongful COI deductions). Witt Dec., ¶ 61.

*Third*, Plaintiff has hired competent, experienced, and qualified counsel with expertise in class actions and cost of insurance cases, who have and will continue to prosecute the class claims vigorously. Norman Siegel, John Schirger, and the attorneys at Stueve Siegel Hanson and Miller Schirger have significant experience in prosecuting class litigation, including around twenty cost of insurance cases. The firms have tried class-action lawsuits to successful verdicts and have achieved significant monetary settlements for class members. In June 2018, Stueve Siegel and Miller Schirger successfully tried the *Vogt* case, a class action on the same Form 94030 policy at issue here, securing a jury verdict of $34,333,495.81 for Missouri policy owners. *See Vogt*, Dkt. 358 & 360. These attorneys subsequently defended that class judgment on appeal. Moreover, Stueve Siegel and Miller Schirger have successfully secured settlements on behalf of policy owners in similar cases against Lincoln National Life Insurance Company, *see Lincoln Nat'l Life Ins. Co. v. Bezich*, No. 02C01-0906-PL-73 (Allen Co., Ind.), and John Hancock Life Insurance Company, *see John Hancock COI*, Case No. RG16 813803 (Alameda Co., Cal.). And on May 17, 2021, in another case brought by Stueve Siegel and Miller Schirger, Chief Judge Garcia entered an order permitting issuance of notice of a settlement in the cost of insurance

13

litigation against USAA Life to the class members, finding that the Court will likely approve the settlement as fair, reasonable, and adequate. *See Spegele v. USAA Life Insurance Company*, No. 5:17-cv-00967-OLG, Doc. 105 (W.D. Tex. May 17, 2021).

Mr. Siegel and other lawyers in his firm have been appointed as class counsel in dozens of class actions throughout the country. *See* Ex. 2, Siegel Dec. at Ex. A (Stueve Siegel firm résumé). Likewise, Miller Schirger has significant experience handling complex insurance contract disputes and brings needed experience in that area to the case. *See* Ex. 3, Schirger Dec. In addition, James Clancy at the law firm Branscomb, PLLC, also representing Plaintiff and the putative class here, brings substantial experience with complex litigation to this case.

*Fourth*, as explained below, there are no conflicts among the class representative, the proposed class, or class counsel.

### a.   That State Farm's actual COI rates are, at rare times, lower than its mortality rates does not create an intra-class conflict.

Plaintiff anticipates that State Farm will reassert its arguments made in *Vogt* and *Bally* that there is an intra-class conflict because, in certain rare instances, some class members might have been worse off had State Farm charged mortality-only rates. In *Vogt* and *Bally*, Mr. Witt's class-wide damages model revealed *some* months for *some* class members who had held their policies for many years where State Farm's actual COI rates were lower than what would have been charged if State Farm had used the contractually permitted, mortality-only rates. The parties referred to this event as the "cross-over" because State Farm's mortality-only rates crossed over (became higher than) its actual COI rates. Although Plaintiff disputes that State Farm is entitled to an offset for this so-called cross-over scenario, this merits question need not be resolved now. And, as explained below, there is no risk that this issue will create an intra-class conflict.

In *Vogt*, State Farm argued to the jury that it should get an offset against damages for those months where State Farm charged some policy owners less than it was permitted to under the Policy. The jury agreed with State Farm and awarded damages that included an offset.[5] Giving State Farm this cross-over offset lowered total damages to the class by less than 3%. *See* Ex. 5 (Transcript of *Vogt* Trial, hereafter "*Vogt* Trial Tr."), 132:21-23, 135:17-137:7, 139:19-140:3. After applying the credit, a mere 29 (out of the nearly 24,000) class members were determined to have suffered no net loss, and received a judgment of $0. *See Vogt*, Dkt. 377-3 (*Vogt* Trial Ex. 242); Ex. 5 (*Vogt* Trial Tr.), 417:12-15. This result in *Vogt* illustrates two things: 1) the incidence of State Farm undercharging class members is extremely rare and has a minimal impact on the damages class members have suffered, and 2) no class member could be made worse off by the litigation. For example, the 29 individuals who did not suffer a net overcharge in *Vogt* because the "cross-over credit" fully offset overcharges from loaded COI rates, took nothing in the litigation, putting them in the same position economically as they would have been had no case been brought. Thus, like *Vogt*, the *Bally* court concluded that the fact that State Farm had charged less than it was authorized to in some instances did not affect the reliability of Mr. Witt's damages model or create an intra-class conflict. *Bally*, 335 F.R.D. at 299-300, 303.

State Farm nevertheless argued that this cross-over phenomenon presented the prospect

---

[5] In *Vogt*, the plaintiff argued that this issue should not be submitted to the jury because State Farm had shown no legal basis to recover "undercharges" from its policy owners. In particular, plaintiff argued that State Farm's decision to not breach the Policy in certain months could not serve as the basis for assessing belated charges against policy owners, especially where State Farm had not identified any provision of the Policy that would allow it to retroactively recover amounts it could have but did not charge policy owners through the COI charge, or that would allow it to make larger COI deductions in one month because it made lower COI deductions in another month. *See* Ex. 4 (*Vogt*, Dkt. 265 (Plaintiff's Motion in Limine)) at 8-9. Mr. Witt prepared a damages calculation that accommodated State Farm's offset defense, Ex. 5 (*Vogt* Trial Tr.), 132:19-24, which the jury adopted by awarding the exact amount of damages reflected in that calculation.

that some current policy owners would be harmed if State Farm *changed its rates* to match its mortality rates. The *Vogt* court rejected that argument because the lawsuit did not set rates going forward. *Vogt*, 2018 WL 4937069, at *3, *aff'd* 963 F.3d at 767-68. And, where State Farm had already taken the position that it could set rates up to the Policy's maximum rates, the lawsuit benefited all class members by lowering the ceiling of what State Farm was permitted to charge. *Id.* Plaintiff's interpretation, which merely requires State Farm to remove undisclosed, non-mortality loads from COI rates, simply cannot harm any class member. *See USAA COI*, 336 F.R.D. at 553. Thus, isolated instances of "cross-over" charges do not create any risk of intra-class conflict.

### b.   State Farm's contention that it "pooled" its mortality rates does not create an intra-class conflict.

Similarly, Plaintiff anticipates that State Farm will argue that Mr. Witt's use of unpooled mortality rates to calculate damages creates an intra-class conflict. At the *Vogt* trial, one key issue for the jury was determining what unloaded rates State Farm should have charged under the Policy. The plaintiff argued that State Farm should have used rates reflecting its mortality expectations as the COI rates because those rates were determined using only the factors listed in the Policy. State Farm identified its mortality rates in the actuarial memoranda for Form 94030. At initial pricing, these rates were identified as a percentage of the SF88-91 mortality rate table[6]—an "unpooled" mortality table—meaning the table assigns a different mortality risk depending on how much time has passed since a given policy was issued. Witt Dec., ¶ 38.[7] State Farm argued to the jury, however, that it had "pooled" the mortality rates shown in the SF88-91

---

[6] The SF88-91 is a table internal to State Farm and was used by State Farm to determine its "pricing" mortality for Form 94030.

[7] The length of time elapsed since underwriting affects mortality risk because health conditions not present at the time of underwriting can develop. *See* Ex. 5 (*Vogt* Trial Tr.), 134:8-23.

before loading them with expenses and profits, and therefore, that damages should be determined using "pooled" mortality rates. A pooled rate table assigns the same mortality risk to each policy owner of the same age, sex, and rate class, regardless of how many years the policy has been held. *Id.* Using State Farm's litigation-created, pooled mortality estimate[8] to calculate damages would have reduced the overall damages to the class by $10,900,554.88. Ex. 5 (*Vogt* Trial Tr.), 132:21-23, 141:13-16. The jury rejected State Farm's contention that it had pooled its mortality rates, and awarded damages using the unpooled mortality rates.[9] *See Vogt*, 963 F.3d at 768 ("Although time and again throughout this appeal State Farm reaffirms its reluctance to accept the jury's finding on this point, the fact remains that the jury concluded State Farm did not pool its mortality rates and any argument premised on pooling must fail."); *Bally*, 335 F.R.D. at 299 ("When faced with this question of fact in *Vogt*, the jury found that State Farm used the unpooled mortality rates to calculate the ultimate COI charges.").

Thus, the theory on which the plaintiff proceeded and prevailed at trial (that State Farm's mortality rates were not "pooled") *maximized* total class damages. However, State Farm argued that some class members' damages would actually have been higher if plaintiff had used pooled mortality rates in the damages model, and therefore, that there was an intra-class conflict between those class members and the rest of the class. Plaintiff anticipates State Farm will make the same argument here, and again, it should be rejected.

First, in certifying the classes in *Vogt* and *Bally*, those courts found that the question as to whether State Farm pooled its mortality rates would have a common answer for all class

---

[8] Notably, in *Vogt*, plaintiff chose not to challenge State Farm's unreliable "pooled" table, as State Farm had provided no evidence (until jury-rejected trial testimony) of its use.

[9] Mr. Witt alternatively calculated a lost Account Value total that incorporated pooled mortality rates, Ex. 5 (*Vogt* Trial Tr.), 141:5-12, which the jury rejected by awarding the damages plaintiff requested using unpooled mortality rates (but providing State Farm an offset).

members. *Vogt*, 2018 WL 1955425, at *4 (whether State Farm used a pooled mortality rate "will have a common answer for all of the members of the proposed class"); *Bally*, 335 F.R.D. at 300 (whether State Farm pooled its mortality rates "amounts to a factual dispute that does not create an intra-class conflict"). Thus, this common factual issue does not affect the propriety of class certification. *Id.*; *cf. Krueger v. Ameriprise Fin., Inc.*, 304 F.R.D. 559, 575 (D. Minn. 2014) (evidence and the law will determine when the breach occurred, "irrespective of the 'preferred' or 'optimal'" date for any single class member).

Second, State Farm never produced a mortality table containing pooled rates, and never produced credible evidence that it had in fact pooled its mortality rates before loading them with expenses and profits. It would have been detrimental to all class members for the plaintiff to adopt State Farm's unsupported position. Ex. 5 (*Vogt* Trial Tr.), 141:21-142:13. As the *Vogt* court found in later refusing to decertify the class, plaintiff "cannot be faulted for failing to argue a fact that was found untrue." *Vogt*, 2018 WL 4937069, at *3.

Third, State Farm is wrong that an intra-class conflict is created simply because class members may have differing preferences for precisely how damages are calculated. *Vogt*, 963 F.3d at 768 ("[E]ven if there are slightly divergent theories that maximize damages for certain members of the class, 'this slight divergence is greatly outweighed by shared interests in establishing [defendant's] liability.'") (quoting *DiFelice v. U.S. Airways, Inc.*, 235 F.R.D. 70, 79 (E.D. Va. 2006); citing Newberg on Class Actions § 3:62 (5th ed.) ("Courts generally reject the argument that an intra-class conflict exists when divergent theories of liability would benefit different groups within the class," including where "different class members desir[e] different methods of calculating damages.")); *Blackie v. Barrack*, 524 F.2d 891, 909 (9th Cir. 1975)

("[T]he conflict [over the calculation of damages], if any, is peripheral, and substantially outweighed by the class members' common interests.").

Fourth, State Farm's argument that its unpooled mortality rates are not the appropriate rates with which to calculate damages because its actual COI rates were pooled is a legal challenge that will have the same answer for all class members, but notably, this argument was rejected by the *Vogt* and *Bally* courts. *Vogt*, 2018 WL 1747336, at *6 ("By referencing both the 'policy year' and the 'policy anniversary' in describing the monthly COI rates, the Policy incorporates the duration of the policy as a factor affecting those rates."); *Bally*, 335 F.R.D. at 299 ("Form 94030 references 'policy year' in the provision describing the factors that go into the monthly COI charges, suggesting that Policy year was incorporated into the pricing scheme.").

Fifth, because the jury in *Vogt* found as a matter of fact that State Farm did *not* pool its mortality rates, Plaintiff will argue that State Farm is precluded from arguing that it did pool its mortality rates. In determining whether issue preclusion applies, the Court considers four factors: "(1) whether the issue decided in the prior adjudication was identical to the issue presented in the present action; (2) whether the prior adjudication resulted in a judgment on the merits; (3) whether the party against whom estoppel is asserted was a party or was in privity with a party to the prior adjudication; and (4) whether the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior suit." *James v. Paul*, 49 S.W.3d 678, 682 (Mo. 2001).[10] Each of these factors applies here. The issue of whether State Farm is collaterally estopped from arguing that it pooled its mortality rates need not be decided now, but

---

[10] The law of issue preclusion in Missouri applies here. *See Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 521 n.9 (5th Cir. 2016) ("When the original suit is based on the federal court's diversity jurisdiction, 'the law that would be applied by state courts in the State in which the federal diversity court sits' governs the judgment's preclusive effect.") (quoting *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508 (2001)).

it does provide further support for Plaintiff's argument that he is an adequate representative of the Class in supporting a damages model that uses unpooled mortality rates.

c.   **Mr. Witt's use of mortality rates "blended" for tobacco use does not create an intra-class conflict.**

Plaintiff also anticipates State Farm will argue, as it did in *Bally*, that Mr. Witt's calculation of damages using mortality rates that do not differentiate between tobacco users and non-users[11] creates an intra-class conflict. The *Bally* court rejected this argument, finding, like it did in rejecting State Farm's pooled mortality arguments, that whether or not State Farm's mortality rates were blended for tobacco use was a common question of fact (one likewise resolved by the *Vogt* jury) appropriate for class certification, and whether State Farm did or did not measure its mortality expectations for the Policy using blended tobacco considerations does not create an intra-class conflict. *Bally*, 335 F.R.D. at 300. Notably, Mr. Witt uses rates blended for tobacco/non-tobacco use because State Farm's pricing mortality rates—the rates that State Farm told regulators measured its mortality expectations and which State Farm itself admitted were the rates onto which it added its profits and expense loads (Ex. 5 (*Vogt* Trial Tr.), 111:10-112:13, 113:16-114:7, 115:3-22, 120:11-121:3; Witt Dec., Ex. G (N.J. Actuarial Memo.) at 3, 5)—accounted for tobacco use on a blended basis. Ex. 5 (*Vogt* Trial Tr.), 153:1-6, 155:4-14, 158:13-159:12.

***

Thus, the Court should conclude that Plaintiff and his counsel satisfy the adequacy requirement, and therefore appoint Plaintiff as the Class Representative and his counsel as Class Counsel.

---

[11] This means the mortality risk related to tobacco use is spread across all policy owners, or "blended." Ex. 5 (*Vogt* Trial Tr.), 162:15-17, 206:5-8; Witt Dec., ¶ 37.

**C.**     **Plaintiff Satisfies the Requirements of Rule 23(b)(3).**

**1.**     **Predominance is satisfied.**

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). "In order to 'predominate,' common issues must constitute a significant part of the individual cases." *Mullen*, 186 F.3d at 626. Determining whether legal issues common to the class predominate necessitates an inquiry into how the case will be tried. *Ibe v. Jones*, 836 F.3d 516, 529 (5th Cir. 2016). "This entails identifying the substantive issues that will control the outcome, assessing which issues will predominate, and then determining whether the issues are common to the class." *Id.* Individualized damages calculations do not preclude a finding of predominance, especially when the determination of damages is susceptible to a mathematical or formulaic calculation. *Id.* (citing *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016)).

In this case, because the Policy is a standardized form contract, not subject to individual negotiation, and analyzed under a single state's law, the case is replete with common questions of law and fact that predominate over any individual questions affecting class members. Courts routinely find that common issues predominate under these circumstances. *See, e.g.*, *Vogt*, 2018 WL 1955425, at *6 ("The major portion of the evidence on the claims for breach of contract, conversion, and declaratory judgment is capable of consideration on a class wide basis. The terms of the Policy are the same for all class members. State Farm has not suggested that the determination of COI rates varied on a case-by-case basis. Thus, common questions predominate."); *Bally*, 335 F.R.D. at 304 (finding predominance satisfied; rejecting State Farm's argument that statute of limitations issues defeated predominance); *USAA COI*, 336 F.R.D. at 555 (finding predominance satisfied because the class policies were form policies that were

subject to interpretation under a single state's law, and the insurer's performance was identical under each policy); *Phoenix COI*, 2013 WL 12224042, at *13 (predominance was satisfied because "[t]he insurance policies at issue contain provisions regarding how COI rates are set and what Phoenix can consider in making any changes in rates, and these terms are substantively identical for all the policies held by the members of the Classes"); *Transamerica COI*, 2017 WL 6496803, at *13 (predominance satisfied because "Plaintiffs' claims are premised on Transamerica's uniform policy language and uniform conduct"); *Lincoln Life COI*, 330 F.R.D. at 382-83 (predominance satisfied where the "contract language at issue does not vary by individual class member" and there are "no individualized issues with respect to defendants' conduct towards members of the putative class."); *John Hancock COI*, 2017 WL 4284163, at *6-7.

### a.    Common questions predominate Plaintiff's breach of contract claims.

The substantive elements of Plaintiff's breach of contract claims require the same proof for each class member. To succeed on a breach of contract claim, the plaintiff must show: "(1) the existence of a valid contract, (2) the plaintiff's performance or tendered performance, (3) the defendant's breach of the contract, and (4) damages as a result of the breach." *See, e.g.*, *Marketshare Telecom, L.L.C. v. Ericsson, Inc.*, 198 S.W.3d 908, 923 (Tex. App.—Dallas 2006, no pet.). Each of these elements will be proven through the same evidence for each class member. This is precisely what was proven in *Vogt*, culminating in a class-wide jury verdict.

Plaintiff's first breach of contract claim (Count I) requires the same proof for all class members. Plaintiff contends that the Policy authorizes State Farm to use only the listed mortality factors when determining the COI rates used to calculate the COI charges that are deducted from Plaintiff's Account Value each month. Count I alleges that State Farm breached and continues to

breach the Policy by loading COI rates with non-mortality factors, including without limitation, expense and profit considerations. Compl. ¶¶ 33-42, 59-66.

Common proof can be used to calculate COI rates that are, as Plaintiff contends is required by the Policy, based on the mortality factors listed in the Policy, which can then be compared to the COI rates State Farm actually used for each policy owner to determine the amount of the non-mortality loads and resulting damages. *See* Witt Dec., ¶¶ 51-61. Because the same proof will determine State Farm's liability and class members' damages, common questions predominate over any individual questions.

Plaintiff's breach of contract claim brought under Count II likewise requires the same proof for all class members. Plaintiff contends that the Policy puts a cap on the amount State Farm may deduct in expenses each month. Count II alleges that State Farm breaches the Policy's fixed Expense charge provision by adding expense loads to its expected mortality to determine its COI rates, thereby imposing unauthorized expenses through its COI charges. Compl. ¶¶ 43-44, 67-70. The same proof will be used for all class members to determine whether State Farm, does, in fact, include unauthorized expense loads in its COI charges and the amount of such loads. Because the same proof will determine State Farm's liability and class members' damages, common questions predominate over any individual questions.

### b.    Common questions predominate Plaintiff's conversion claim.

Because the Policy authorizes State Farm to deduct only certain amounts from policy owners' Account Values, when State Farm takes more money out of policy owners' Account Values than is authorized, it has the obligation to return those funds, and therefore has wrongfully converted them. *See, e.g.*, *Nat'l Union Fire Ins. Co. of Pittsburgh Pa. v. Care Flight Air Ambulance Serv., Inc.*, No. CIV.A. 3-91-1187-H, 1992 WL 613254, at *5 (N.D. Tex. Nov. 2,

1992) ("Conversion is [t]he wrongful exercise of dominion and control over another's property in denial of or inconsistent with [the owner's] rights.") (internal quotations omitted). Accordingly, if Plaintiff succeeds on Counts I or II, he will succeed on Count III for the same reasons. *See Vogt*, 2018 WL 1955425, at *3 (certifying the plaintiff's conversion claim because like his breach of contract and declaratory judgment claims, it "turn[ed] on interpretation of the Policy, which is a standard form contract to which each putative class member was a party [and] . . . State Farm's determination of COI rates, which was uniform."); *Bally*, 335 F.R.D. at 301 (same); *USAA COI*, 336 F.R.D. at 555 (finding predominance satisfied for conversion claim under Texas law). Thus, predominance is satisfied with respect to Plaintiff's conversion claim.

### c. Damages can be determined on a class-wide basis.

Further demonstrating the predominance of common questions, damages are capable of being calculated on a class-wide basis (and for each individual class member) using a common formula. That the specific amount of damages class members suffered may vary does not preclude certification. *See, e.g.*, *Ibe*, 836 F.3d at 529. If Plaintiff establishes State Farm breached its standard form Policy (Counts I and II) and converted class members' money (Count III), each class member's claims would require only proof of damages.[12] The monetary harm to policy owners of State Farm's practice of loading unlisted factors into COI rates, under Plaintiff's Counts I-III, can be calculated in a straightforward way for each policy owner by comparing the COI rates State Farm actually used in determining COI charges with rates determined using only the factors listed in the Policy, and recalculating Account Values using the rates that do not include the undisclosed loads. Witt Dec., ¶¶ 28-45. This calculation can be performed using the

---

[12] In the *Vogt* case, after the district court certified the Missouri class, it granted partial summary judgment in favor of the class. *See Vogt*, Dkt. 335 at 1. The subsequent trial was limited to the determination of damages. *See id.*

24

policy-level data from administrative systems in place at State Farm. *Id*. at ¶¶ 46-61. State Farm retains within its administrative systems a record of, and transaction information related to, premium payments, credited interest rates, policy loans, and policy charges, among other policy data. *Id*. at ¶¶46-47. Using this data, Account Values can be recalculated using alternate COI rates, while leaving unchanged the actual premium payments made, past investment experience, policy loans taken, and other policy charges. *Id*. at ¶¶ 51-61. This is the same methodology Mr. Witt applied in *Vogt* and *Bally*, and used to calculate class-wide damages in the similar COI overcharge case in this district against USAA Life. *See USAA COI*, 336 F.R.D. at 547 (rejecting challenge to Mr. Witt's methodology for calculating damages at class certification).

Because State Farm maintains the data for every class member, this methodology does not require any class member to provide individualized evidence of damages. And, although the amount of losses for each policy owner will vary, because the same methodology and formulas are applied for each policy owner using State Farm's own policy owner data, calculating class-wide losses under this methodology is simply an administrative task capable of being performed on a class-wide basis. State Farm has produced policy-level data here, and Mr. Witt can calculate class-wide lost Account Values.[13]

In *Vogt* and *Bally*, State Farm challenged the reliability of Mr. Witt's damages model. Despite its arguments being repeatedly rejected, Plaintiff expects State Farm to make the same

---

[13] The aggregate lost Account Values calculated by Mr. Witt will depend on identification of policy owners who are or will ultimately be excluded from the Class, either because they exclude themselves during the opt-out period, or because they are, for example, State Farm employees who have not yet been identified as such by State Farm.

arguments here.[14] These arguments should be rejected as a basis to deny class certification, for the reasons explained below.

> **(1)      State Farm's offset affirmative defense premised on the cross-over does not affect the reliability of Plaintiff's damages model.**

In *Vogt* and *Bally*, State Farm argued that the fact that Mr. Witt's model *could* produce an "undercharge" in some months indicates the model does not reliably measure the portion of the COI that was determined using unlisted factors. State Farm is wrong. Instead, the rare occurrence of the cross-over simply indicates that State Farm's COI rates occasionally did not include a load for unlisted factors. State Farm's contention that the cross-over phenomenon is increasing, even if true, is irrelevant to the reliability of Mr. Witt's damages model. It simply reinforces Plaintiff's point that State Farm's actual COI rates are not in step with its mortality rates, which increase as each insured ages. As both the *Vogt* and *Bally* courts found, "that State Farm recoups profits and expenses in the earlier years of the Policy and refrains from doing so later—when more policies have lapsed or been surrendered, and when actual mortality costs increase—does not indicate a flaw in the damages model; instead, it more likely indicates a calculated business decision." *Vogt*, 2018 WL 4937330, at *5; *Bally*, 335 F.R.D. at 300 (same).

> **(2)      Calculating damages for policy owners who selected "Death Benefit Option 1" and for whom a death benefit was paid does not affect the reliability of Plaintiff's damages model.**

State Farm also argued in *Vogt* and *Bally* that Mr. Witt's damages model was unreliable because it calculates a lost Account Value for class members who selected Death Benefit Option

---

[14] Each of State Farm's challenges to the reliability of Mr. Witt's damages model goes to the merits of whether the model correctly measures damages, not the Rule 23 question of whether it is capable of measuring damages on a class-wide basis. *See USAA COI*, 336 F.R.D. at 545 ("The Court must weigh Witt's credentials and determine the relevance and reliability of his report to meeting Rule 23's requirements, rather than performing the gatekeeping function for the jury that typifies a full *Daubert* analysis."). Plaintiff nevertheless addresses these issues here to provide the Court context to these arguments.

1 when they purchased their policies and were subsequently paid a death benefit. Upon death, a policy owner who selected Death Benefit Option 1 is entitled to only the face amount of their policy, regardless of the amount in the Account Value. State Farm thus argued that these class members should not have been awarded damages. However, as the district court and Eight Circuit concluded in *Vogt*, because State Farm deducted COI charges that included undisclosed loads from these policy owners' Account Values during their lives, Mr. Witt's damages model accurately calculates the amount of their damages. *See Vogt*, 963 F.3d at 770. Indeed, Plaintiff's calculation of these class members' lost Account Values provides "the most reasonable basis for measuring the harm that was incurred during the life of the policyholders." *Id.* In any event, their presence in the Class does not impact the propriety of class certification because they are a readily identifiable group. *See Bally*, 335 F.R.D. at 300; *Vogt*, 2018 WL 4937330, at *6.

> **(3)    Mr. Witt's use of State Farm's unpooled and tobacco-blended pricing mortality rates to measure damages is reasonable and appropriate.**

In *Vogt* and *Bally*, State Farm argued that Mr. Witt's use of State Farm's pricing mortality rates to measure damages was unreliable because those rates are unpooled and tobacco-blended, whereas there is no dispute that State Farm's actual COI rates are pooled and tobacco-distinct. Those courts rejected these arguments, concluding that the COI rates provision's reference to "policy year" and the policy-provided definition of "policy year" indicates that the duration of the Policy (*i.e.*, how long it had been since the Policy was issued) was incorporated into the COI rates, meaning they must be unpooled. *Vogt*, 2018 WL 1747336, at *6 (finding "the Policy incorporates the duration of the policy as a factor affecting those rates"); *Bally*, 335 F.R.D. at 299 (finding "Form 94030 references 'policy year' in the provision describing the factors that go into the monthly COI charges, suggesting that Policy year was incorporated into

the pricing scheme"). Similarly, those courts found that the COI rates provision does not reference tobacco use as a mortality factor on which the COI rates were to be differentiated. *Bally*, 335 F.R.D. at 299 (holding "the blended [tobacco] rates that Witt used *reflect the terms of Form 94030*, and his use of those rates comports with plaintiff's damages theory of COI charges beyond the terms of the Policy") (emphasis added); *Vogt*, 963 F.3d. at 769 (stating that Witt did not "differentiate between tobacco and non-tobacco users, [but] there was no need for the damages models to take this mortality factor into account as this was not a mortality factor listed in the policy"). Thus, State Farm's challenges "do[] not negatively impact [the] reliability" of Witt's methodology. *Bally*, 335 F.R.D. at 300 (quoting *Vogt*, 2018 WL 4937330, at *4-5).

That class-wide damages can be calculated using a methodology that can be applied mechanically for every class member using State Farm's policy records supports a finding that predominance is satisfied.

> **d.    Class members' subjective understandings of the Policy's terms do not create individualized issues.**

State Farm will also likely contend, as it did in *Bally*, that each class member's subjective understanding of the Policy's terms is relevant to its interpretation, and therefore, whether State Farm breached the Policy. *See Bally*, 335 F.R.D. at 301. In other words, it is State Farm's contention that the Policy could have different meanings for different policy owners.[15] Not only would this be an absurd outcome where State Farm has acted uniformly as to all class members in its performance of its form Policy, it is also legally incorrect. As Chief Judge Garcia recognized in the similar case against USAA Life Insurance Company when, in opposition to

---

[15] On January 11, 2021, Plaintiff served discovery on State Farm requesting documents and communications regarding any statements by State Farm or its agents to policy owners informing them how the COI rates were determined. As of this filing, State Farm has produced no documents or information responsive to these requests. Ex. 2 (Siegel Dec.), ¶ 10.

class certification, the insurance company submitted declarations from its sales agents purportedly supporting its contention that some class members knew or were told that the COI rates were loaded with unlisted profit and expense factors, "Texas law does not permit the consideration of extrinsic evidence when the provision at issue is unambiguous," and "it is at best unclear if extrinsic evidence would be admissible" even if the form policy is found ambiguous. *USAA COI*, 336 F.R.D. at 555 & n.7 (noting the defendant had not cited any cases that stated "that form contracts should be interpreted using individualized extrinsic evidence" and that "several cases applying Texas law to ambiguous insurance contracts hold that ambiguous provisions must be construed against the drafter, in this case Defendant") (citing *Wellington Underwriting Agencies, Ltd. v. Houston Exploration Co.*, 267 S.W.3d 277, 283 (Tex. App.—Houston [14th Dist.] 2008, pet. granted), *aff'd* 352 S.W.3d 462 (Tex. 2011) ("We thus construe an ambiguous insurance policy strictly against the insurer and liberally in favor of the insured.") (citing *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Hudson Energy Co.*, 811 S.W.2d 552, 555 (Tex. 1991)); *Barnett v. Aetna Life Ins. Co.*, 723 S.W.2d 663, 666 (Tex. 1987)).

Moreover, Chief Judge Garcia recognized that "permitting consideration of individualized extrinsic evidence would run counter to the terms" of the policies in that case, *id.* at 555, which, like the Policy here, did not permit insurance agents' statements to affect the Policy's meaning. *See* Policy at 11 ("Only an officer has the right to change this policy. No agent has the authority to change the policy or waive any of its terms."). The *Bally* court likewise noted that State Farm's argument that its Policy could have thousands of different meanings depending on "unwritten representations that each agent makes to a purchaser" ran "counter to" this language in the Policy. 335 F.R.D. at 302 & n.4. Judge Garcia also concluded, like the *Bally* court, that permitting consideration of evidence regarding policy owners' subjective

understandings of the Policy's meaning, potentially resulting in the standardized Policy being subject to different interpretations, would run counter to "the Restatement (Second) of Contracts, which states that form contracts should be 'interpreted wherever reasonable as treating alike all those similarly situated, without regard to their knowledge or understanding of the standard terms of the writing.'" *USAA COI*, 336 F.R.D. at 555-56 (quoting Restatement (Second) of Contracts § 211(2) and citing *MMR Int'l Ltd. v. Waller Marine, Inc.*, No. H-11-1188, 2013 WL 3864271, at *4 n.2 (S.D. Tex. July 24, 2013) (applying Restatement (Second) of Contracts under Texas law)); *see also Bally*, 335 F.R.D. at 302 (same). Thus, Chief Judge Garcia found "that extrinsic evidence of individualized interpretations of the Class Policies will not defeat predominance." *USAA COI*, 336 F.R.D. at 556. The same analysis should apply here.

> **e.   State Farm's statute of limitations defense does not create individualized issues.**

The *Vogt* and *Bally* courts both rejected State Farm's argument that individualized issues related to the statute of limitations defeated predominance. *Vogt*, 2018 WL 1955425, at *6, *aff'd*, 963 F.3d at 765-66; *Bally*, 335 F.R.D. at 304. Both courts concluded that there was no evidence indicating any policy owners knew or should have known State Farm was considering undisclosed factors in its determination of COI rates to result in the accrual of their claims, and thus, "'there [was] nothing to indicate that individual statute-of-limitations issues would predominate so as to make class certification impractical or inappropriate.'" *Id.* (quoting *Vogt*, 2018 WL 1955425, at *6).

The same analysis applies here. Like Missouri and California, Texas applies the discovery rule to prevent the accrual of a plaintiff's claims where the plaintiff did not know, or in the exercise of due diligence would not have learned, of the other party's breach. *See TIB--The Indep. BankersBank v. Canyon Cmty. Bank*, 13 F. Supp. 3d 661, 668 (N.D. Tex. 2014) ("[T]he

30

discovery rule will defer accrual of a cause of action until the plaintiff knew or, by exercising reasonable diligence, should have known of the facts giving rise to a cause of action.") (citation omitted). Like the plaintiffs in *Vogt* and *Bally*, Plaintiff will demonstrate that the statute of limitations has not run on his claims or those of the Class because no class member had any way of knowing that State Farm loaded the COI rates with factors not identified in the Policy, including expenses. Plaintiff's claims for relief and tolling allegations are not premised on any individualized evidence of statements from his insurance agent, State Farm, or anyone else.

Instead, Plaintiff's claims are premised on uniform contract language and State Farm's uniform conduct and thus are appropriate for class-wide resolution. *See, e.g.*, *In re Monumental Life Ins. Co.*, 365 F.3d 408, 421 (5th Cir. 2004) (concluding "whether plaintiffs were provided constructive notice [of defendant's unlawful practices] is an issue that can be decided on a classwide basis"); *Schramm v. JPMorgan Chase Bank, N.A.*, No. LA CV09-09442 JAK, 2011 WL 5034663, at *10, 11-12 (C.D. Cal. Oct. 19, 2011) (holding that a statute of limitations defense did not necessitate individual inquiries into when class members had actual or inquiry notice of their claims when their application depends on common evidence of the defendant's conduct and noting that defendant's "speculation that some class members' claims may be barred on the basis of actual knowledge is not sufficient to defeat certification"); 2 William B. Rubenstein, Newberg on Class Actions § 4:57 (5th ed.) ("Statute of limitations defenses—like damage calculations, affirmative defenses, and counterclaims—rarely defeat class certification.").

Likewise, Plaintiff's fraudulent concealment tolling allegations are also subject to common proof of State Farm's conduct. Plaintiff alleges that State Farm had superior knowledge about the factors it was including in the COI rates, that it did not disclose that it was including

factors not listed in the Policy to class members, and that State Farm sent annual statements to policy owners that identified each month's COI charge while affirmatively concealing the factors it used to calculate the COI rates. Compl. ¶¶ 45-46. The same evidence will prove the claims and tolling allegations of the Class as a whole. *See USAA COI*, 336 F.R.D. at 556 (concluding similar allegations could be resolved with class-wide evidence, stating "Reliance is not an element of fraudulent concealment under Texas law. Rather, all that is required is a showing of 'an underlying wrong, and that the defendant actually knew the plaintiff was in fact wronged, and concealed that fact to deceive the plaintiff.'") (quoting *BP Am. Prod. Co. v. Marshall*, 342 S.W.3d 59, 67-69 (Tex. 2011); *Earle v. Ratliff*, 998 S.W.2d 882, 888 (Tex. 1999)).

Chief Judge Garcia in the COI overcharge case against USAA Life likewise rejected the insurer's argument that its statute of limitations defense raised individualized issues. In that case, like Plaintiff expects State Farm to do here, the insurer presented declarations from its sales agents stating that some unidentified class members were informed that the COI rates were determined using factors not disclosed in the policy. Chief Judge Garcia rejected such declarations as defeating predominance related to whether the discovery rule or fraudulent concealment tolled class members' claims. *USAA COI*, 336 F.R.D. at 557 (citing *Torres v. S.G.E., Mgmt., L.L.C.*, 838 F.3d 629, 645-46 & n.74 (5th Cir. 2016) (quoting *Halliburton Co. v. Erica P. John Fund, Inc.*, 134 S.Ct. 2398, 2412 (2014) ("That the defendant might attempt to pick off the occasional class member here or there through individualized rebuttal does not cause individual questions to predominate.")).[16]

---

[16] Moreover, State Farm's statute of limitations defense is not applicable to breaches occurring within four years of the filing of this lawsuit. *See Spin Doctor Golf, Inc. v. Paymentech, L.P.*, 296 S.W.3d 354, 362-63 (Tex. App.—Dallas 2009, no pet.) (holding the parties' agreement was a continuing contract and claims based on breaches occurring within four years of the lawsuit were not barred by the statute of limitations). The Policy is a continuing contract and State Farm

Thus, State Farm's statute of limitations defense does not undermine the predominance of the common issues.

### 2.      Superiority is satisfied.

Finally, Rule 23(b)(3) requires that a class action be superior to other methods of adjudication, an analysis that "encompasses the whole range of practical problems that may render the class action format inappropriate for a particular suit." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 164 (1974). In determining whether superiority is satisfied, a court considers: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Rule 23(b)(3).

Because this case involves a form contract and uniform Texas law governing its interpretation, a class action will be just as manageable as a single plaintiff case. There are no other class actions pending against State Farm making the claims asserted here on behalf of a Texas class. In addition, because all class members' policies were issued in Texas, concentrating this litigation in Texas is desirable. Class certification will greatly benefit the many policy owners, all of whom are in the dark about how State Farm calculates COI charges because State Farm never discloses its COI rates or the factors it uses to determine them, and all have an interest in securing the just adjudication of their rights as against State Farm. *See Bally*, 335 F.R.D. at 305; *Vogt*, 2018 WL 1955425, at *7; *USAA COI*, 336 F.R.D. at 558 (all finding superiority satisfied).

---

breached it each month it loaded its COI rates with non-mortality factors not authorized by the Policy, including expenses.

**D.      Rule 23(b)(2) Is Satisfied.**

With respect to Plaintiff's claim for declaratory judgment and injunctive relief at Count VII, the proposed Class satisfies Rule 23(b)(2) because State Farm "has acted or refused to act on grounds that apply generally to the class, so that final injunctive or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Determination of the merits of Count VII will turn on the same evidence supporting Counts I and II. As such, certification of Count VII under Rule 23(b)(2) is appropriate. *See Vogt*, 2018 WL 1955425, at *7 (certifying the plaintiff's declaratory judgment claim under 23(b)(2) for purposes of interpreting the Policy because "the terms of the Policy are the same for all potential class members, [and therefore] the interpretation will result in one declaratory judgment applicable to all class members"); *Bally*, 335 F.R.D. at 305 (same, stating: "The terms of Form 94030 are the same for all prospective Class members, so an injunction or declaration relating to the contract terms will be uniform."); *USAA COI*, 336 F.R.D. at 558-59 (approving of "'divided certification,' certifying the damages claims under Rule 23(b)(3) while certifying the injunctive relief under 23(b)(2)").

<u>**CONCLUSION**</u>

Because all of the required elements of Rule 23 are satisfied, Plaintiff's motion for class certification should be granted, and Plaintiff Page should be appointed as the Class Representative and his counsel appointed as Class Counsel.

34

Dated: June 15, 2021     Respectfully submitted,

STUEVE SIEGEL HANSON LLP

*/s/ Norman E. Siegel*
Norman E. Siegel (admitted *pro hac vice*)
siegel@stuevesiegel.com
Lindsay Todd Perkins (admitted *pro hac vice*)
perkins@stuevesiegel.com
Ethan M. Lange (Tex. Bar No. 24064150)
lange@stuevesiegel.com
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Tel: 816-714-7100
Fax: 816-714-7101

John J. Schirger (admitted *pro hac vice*)
jschirger@millerschirger.com
Matthew W. Lytle (admitted *pro hac vice*)
mlytle@millerschirger.com
Joseph M. Feierabend (admitted *pro hac vice*)
jfeierabend@millerschirger.com
MILLER SCHIRGER, LLC
4520 Main Street, Suite 1570
Kansas City, Missouri 64111
Tel: 816-561-6500
Fax: 816-561-6501

James T. Clancy (Tex. Bar No. 00795292)
jclancy@branscomblaw.com
BRANSCOMB, PLLC
802 N. Carancahua, Suite 1900
Corpus Christi, Texas 78401-0036
Tel: (361) 886-3800
Fax: (361) 886-3805

*Attorneys for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 15, 2021, I caused a true and correct copy of the foregoing to

be filed on the Court's CM/ECF system, which served notice on all counsel of record.

*/s/ Norman E. Siegel*
Norman E. Siegel

36