IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

RONALD K. PAGE, ON BEHALF OF    §
THEMSELVES AND ALL OTHERS    §
SIMILARY SITUATED,    §              SA-20-CV-00617-FB
   §
        *Plaintiff,*    §
   §
vs.    §
   §
STATE FARM LIFE INSURANCE    §
COMPANY,    §
   §
        *Defendant.*    §

**REPORT AND RECOMMENDATION AND ORDER
OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable United States District Judge Fred Biery:**

This Report and Recommendation concerns Plaintiff's Motion for Class Certification [#79] and Defendant State Farm's Memorandum of Law in Support of Motion to Exclude Declaration and Testimony of Scott J. Witt [#112]. All dispositive pretrial matters in this case have been referred to the undersigned for disposition pursuant to Western District of Texas Local Rule CV-72 and Appendix C [#58]. The undersigned has authority to enter an order on Defendant's motion to exclude pursuant to 28 U.S.C. § 636(b)(1)(B) and authority to issue a recommendation on Plaintiff's class certification motion pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, the undersigned will **DENY** Defendant's motion to exclude Witt and recommend Plaintiff's motion for class certification be **GRANTED**.

**I.  Background**

Plaintiff Anna Gonzalez filed this putative class action on May 22, 2020, against State Farm Life Insurance Company (hereinafter "State Farm"), on behalf of herself and all other similarly situated holders of universal life insurance policies issued by State Farm and its

predecessors in interest using Form 94030 in Texas.  (Compl. [#1], at ¶ 1.)  Gonzalez's case was subsequently consolidated with an almost identical suit filed by Plaintiff Ronald K. Page, SA-20-CV-945-FB.   After consolidation, Plaintiffs filed a Consolidated Amended Class Action Complaint.   (Consolidation Order [#42]; Am. Compl. [#64].)   The Court thereafter granted Plaintiffs leave to file another amended pleading.  The First Amended Consolidated Class Action Complaint ("First Amended Complaint") filed on March 2, 2021, remains the live pleading in this case.   (First Am. Compl. [#72].)   After the consolidation and amendments, Gonzalez voluntarily dismissed her claims, leaving Page as the only named Plaintiff.  (Stip. [#75].)

Page's First Amended Complaint alleges that State Farm charged and collected from Page and other similarly situated life insurance-policy owners amounts in excess of that authorized by the express terms of their life insurance policy (hereinafter "the Policy").  (First Am. Compl. [#72], at ¶ 1.)  According to the First Amended Complaint, the Policy allows for a monthly deduction from each policyholder's interest-bearing account, which includes a cost of insurance charge ("COI charge"), a monthly expense charge ("expense charge") in the amount of $5.00, and a charge for any riders.  (*Id.* at ¶ 28.)  The Policy also discloses a "premium expense charge" set at a fixed percentage of five percent of each premium payment made.  (*Id.* at ¶ 38.)

Page alleges that the Policy identifies specific factors State Farm may use to determine the "COI rate" for purposes of making the monthly COI charge deduction and that these factors are limited to age of the insured on the Policy anniversary, sex, applicable rate class, and any projected changes in mortality.  (*Id.* at ¶¶ 29–39.)  Page claims that State Farm nonetheless relied on additional factors that were not disclosed in the Policy and that are unrelated to the insured's mortality risk in determining the COI rate, such as State Farm's profits and expenses, resulting in excessive deductions from the insured's interest-bearing account in violation of the Policy.  (*Id.*)

Based on these allegations, Page asserts two claims of breach of contract (one based on the COI rate provision, and another based on the expense charge provision), as well as claims of conversion, breach of the duty of good faith and fair dealing, and violations of the Texas Deceptive Trade Practices-Consumer Protection Act and other provisions of the Texas Insurance Code.  (*Id.* at ¶¶ 59–107.)  Page seeks declaratory and injunctive relief, as well as compensatory and punitive damages, on behalf of the proposed class.  (*Id.* at ¶¶ 108–13.)

Similar class action have been filed across the country on behalf of policyholders who were issued policies on Form 94030.  *See Vogt v. State Farm Ins. Co.*, No. 2:16-cv-4170-NKL (W.D. Mo.); *Bally v. State Farm*, 18-cv-4954-CRB (N.D. Cal.); *Whitman v. State Farm Life Ins. Co.*, No. 19-cv-06025-BJR (W.D. Wash.); *Jaunich v. State Farm Life Ins. Co.*, No. 20-cv-01567-PAM-JFD (D. Minn.).  This is the only pending class action filed on behalf of Texas policyholders regarding Form 94030 and these allegedly excessive deductions.

Page has now filed a motion to certify this case as a Rule 23 class action.  State Farm argues that liability and damages can be determined on a class-wide basis by calculating the lost "account value" for each policy owner resulting from the unauthorized monthly charges.  In support of the motion, Page provides the Court with the Declaration and Report of Scott J. Witt, one of Page's retained experts.  (Sealed Decl. [#84-1].)  Witt, who is an actuary by training, has provided a methodology for calculating each class member's damages.  (*Id.*)

Along with its response in opposition to class certification, State Farm filed a motion to exclude the testimony of Witt under Rule 702 of the Federal Rules of Evidence and the standards set forth by the Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 589 (1993).  (Mtn. to Exclude [#112].)  The motion challenges Witt's qualifications and the

reliability of his methodology and argues that the Court should exclude Witt's testimony in making its decision on class certification and in resolving the merits issues in this case.

Finally, State Farm has also filed an early motion for summary judgment, which argues that State Farm is entitled to summary judgment on all of Plaintiff's claims as a matter of law under the relevant contractual provisions in the life insurance policy at issue. State Farm asks the Court to construe the Policy, grant it summary judgment, and dismiss as moot Plaintiff's motion for class certification.

The undersigned held hearings on all three motions on November 9 and 18, 2021. After considering the parties' motions, responses, and replies, arguments at the hearings, the record, and governing law, the undersigned finds that State Farm's motion to exclude Witt should be denied. For the reasons that follow, the Court will recommend the certification of this case as a class action under Rule 23. The undersigned will issue a separate report and recommendation on the motion for summary judgment.

## II.  Motion to Exclude Witt

Page has retained Scott J. Witt as an expert to render opinions and provide testimony on State Farm's determination of its COI rates and charges for Form 94030, as well as to present a methodology for determining the losses in account value for each policy resulting from alleged COI overcharges. (Witt Decl. [#84-1], at ¶¶ 8–9.) Mr. Witt was designated as an expert on the same topics in the *Vogt*, *Bally*, *Whitman*, and *Jaunich* cases.

State Farm's motion challenges the reliability of Witt's methodology for quantifying damages and Witt's qualifications to engage in damages modeling. State Farm asks the Court to exclude Witt's testimony and argues that it should not be considered in deciding Page's class certification motion or the merits issues in this case.

A.      **Legal Standard**

The Fifth Circuit recently clarified that the standards set forth in *Daubert* apply with equal force in the context of a class certification motion.  *Prantil v. Arkema Inc.*, 986 F.3d 570, 575–76 (5th Cir. 2021) ("[I]f an expert's opinion would not be admissible at trial, it should not pave the way for certifying a proposed class.").  Accordingly, the parameters for admissibility of expert testimony established by *Daubert* and Rule 702 fully govern here.

In *Daubert*, the Supreme Court held that trial judges must ensure that any scientific testimony or evidence admitted is not only relevant, but reliable.  509 U.S. at 589.  Subsequent to *Daubert*, Rule 702 of the Federal Rules of Evidence was amended to provide that a witness "qualified as an expert . . . may testify . . . in the form of an opinion . . . if (1) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact issue, (2) the testimony is based upon sufficient facts or data, (3) the testimony is the product of reliable principles and methods, and (4) the witness has applied the principles and methods reliably to the facts of the case."  Fed. R. Evid. 702.  The *Daubert* analysis applies to all proposed expert testimony, including nonscientific "technical" analysis and other "specialized knowledge."  *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999).

When expert testimony is challenged under *Daubert*, the burden of proof rests with the party seeking to present the testimony.  *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 276 (5th Cir. 1998).  A district court enjoys broad discretion in determining the admissibility of expert testimony, and such decisions will not be disturbed on appeal unless a ruling is "manifestly erroneous."  *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 142 (1997).

Under *Daubert*, expert testimony is admissible only if the proponent demonstrates that: (1) the expert is qualified; (2) the evidence is relevant to the suit; and (3) the evidence is reliable. *See Moore*, 151 F.3d at 276; *Watkins v. Telsmith, Inc.*, 121 F.3d 984, 989 (5th Cir. 1997). Notwithstanding the testing of an expert's qualification, reliability, and admissibility, "the rejection of expert testimony is the exception rather than the rule." Fed. R. Evid. 702, Adv. Comm. Notes (2000). *Daubert* did not work a "sea change over federal evidence law," and "the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system." *Id.* (quoting *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1078 (5th Cir. 1996)). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

**B.**    **Analysis**

The Court will deny State Farm's motion to exclude the testimony of Witt.  Page has satisfied his burden to demonstrate that Witt's proposed testimony comports with Rule 702 and *Daubert*'s requirements as to his qualifications and the reliability of his testimony.

### i.    <u>Witt is qualified to testify as an expert.</u>

First, Witt is qualified to render the opinions at issue.  Witt is an actuary and president of Witt Actuarial Services, LLC, a fee-only insurance advisory and actuarial firm.  (*Id.* at ¶ 1.)  He holds a B.S. in mathematics and computer science from Montana Tech and an M.S. in statistics from Oregon State University and is a fellow of the Society of Actuaries and member of the American Academy of Actuaries.  (*Id.* at ¶¶ 2, 6.)  Witt has over 25 years of experience with life insurance products as an actuary and insurance advisor.  (*Id.* at ¶ 3.)  State Farm nonetheless challenges Witt's qualifications, arguing he lacks a degree in economics or other financial

modeling background or experience to qualify him to render an opinion on class damages. *Daubert* does not require experts to hold a specific degree before permitting them to testify, only that the experts have some specialized knowledge that will help the trier of fact understand the evidence. *Kumho Tire Co.*, 526 U.S. at 141. Witt's extensive actuarial, mathematical, and statistical experience with life insurance products qualifies him to testify on the issues bearing on damages in this case.

### ii. Witt's testimony is reliable.

Secondly, Witt's methodology for determining damages is sufficiently reliable. Witt's testimony presents a method for computing class-wide damages if State Farm is found to have violated the Policy by deducting excessive monthly COI and expense charges from class members' accounts. Witt's report states that the amounts attributable to State Farm's consideration of undisclosed factors (such as its "expenses and profit margins") can be calculated to a reasonable degree of actuarial and mathematical certainty for each and every Form 94030 policy issued to each member of the class by using State Farm's own documents and data. (Witt Report [#84-1], at ¶ 14.)

Witt used his same methodology in calculating damages for the classes in *Vogt*, *Bally*, *Whitman*, and *Jaunich*. (*Id.*) Where challenged, Witt's methodology has been consistently found reliable. *See Jaunich v. State Farm Life Ins. Co.*, --F. Supp. 3d.--, 2021 WL 5054461, at *3–4 (D. Minn. Nov. 1, 2021) (denying motion to exclude Witt's testimony); *Whitman v. State Farm Life Ins. Co.*, No. 3:19-CV-6025-BJR, 2021 WL 4264271, at *10 (W.D. Wash. Sept. 20, 2021) (rejecting reliability challenge to Witt's methodology); *Bally v. State Farm Life Ins. Co.*,

335 F.R.D. 288, 297–300 (C.D. Cal. 2020) (denying motion to strike Witt's expert report).[1] Additionally, the Chief Judge of the Western District of Texas recently rejected a motion to exclude the declaration of Witt in the context of a class action against State Farm on behalf of Texas policyholders advancing similar claims on another form universal life insurance policy. *Spegele v. USAA Life Ins. Co.*, 336 F.R.D. 537, 544 (W.D. Tex. 2020).  Though Chief Judge Garcia applied a modified *Daubert* inquiry in analyzing the reliability of Witt's damages methodology (before the Fifth Circuit clarified that *Daubert* applies in full force in the class certification context), he expressly rejected many of the same reliability challenges State Farm advances here, citing to the *Bally* and *Vogt* decisions.  *See id.* at 544–46.

Witt's report describes the monthly COI charge as the COI rate multiplied by the policy's net amount of risk—the amount by which the policy's current death benefit exceeds the value of the account (i.e., the amount State Farm would have to pay the policyholder's beneficiary if the policyholder were to die).  (Witt Report [#84-1], at ¶ 24.)  To calculate each policyholder's loss in account value, Witt simply compared State Farm's internal pricing mortality rates using the factors identified in the Policy with the COI rates State Farm actually used (loaded with the extra-contractual factors).  (*Id.* at ¶¶ 51–54.)

State Farm argues that Witt's attempt to isolate what the COI rate *should* have been is inherently flawed for two reasons.  First, State Farm contends that Witt's methodology ignores other mortality factors besides age, sex, and rate class that State Farm has always used in its COI ratemaking process—namely tobacco usage.  State Farm claims it has always used tobacco-distinct mortality tables that benefit non-tobacco users, and Witt's methodology incorrectly fails

---

[1]   State Farm did not file a motion to exclude Witt's testimony in *Vogt*, but the Eighth Circuit on appeal addressed some of the same reliability arguments raised by State Farm here in affirming the jury verdict in favor of Missouri policyholders in evaluating the sufficiency of the evidence. *Vogt v. State Farm Life Ins. Co.*, 963 F.3d 753, 769 (8th Cir. 2020).

to differentiate the COI on this basis. Secondly, State Farm argues that Witt erroneously included a factor that State Farm does not in fact use in COI ratemaking—the year each policy was issued, i.e., the duration of the policy.[2] State Farm maintains it has always "pooled" mortality rates, applying the same COI rate for all policyholders of the same age, sex, and rate class regardless of the year the policy was issued. In other words, State Farm believes Witt's methodology does not actually reflect what State Farm's COI rates would have been had State Farm not considered the allegedly impermissible extra-contractual factors and is therefore fundamentally inconsistent with the theory of liability in this case.

The undersigned disagrees on both fronts. Witt's failure to distinguish COI rates for tobacco usage does not make his methodology unreliable. Page's theory of liability in this case is that State Farm can *only* make COI deductions based on the mortality factors expressly disclosed in the Policy (age, sex, and rate class). Per the Policy, "rate class" is defined solely as "the underwriting class of the person insured," without any reference to tobacco usage. (Policy [#84-1], at 42.) Witt's decision to rely on State Farm's internal pricing data that considers only these factors is therefore wholly consistent with this theory. State Farm may indeed have evidence that it has always included the additional factor of tobacco usage in its ratemaking. (*See, e.g.*, Hendren Decl. [#104-11].) And State Farm may argue for a contract interpretation that makes its decision to do so permissible under the Policy. But these are not arguments that undermine the fundamental reliability of Witt's damages model. At this *Daubert* stage, the undersigned declines to reject Witt's damages model and endorse State Farm's interpretation of the Policy and evidentiary record. To do so would be to prematurely reach a merits ruling.

---

[2] According to Witt, policy year is included as a mortality factor because the more years that have passed between policy issuance and the present, the more likely the policyholder is to have changes in behavior and general health condition, translating to an increased risk to State Farm. (Witt Report [#84-1], at ¶ 30.)

State Farm's argument regarding the use of pooled versus non-pooled mortality rates is also not a basis for excluding Witt's expert opinions. Like tobacco usage, whether State Farm actually considered the duration of a policy in its COI ratemaking is a fact issue that will ultimately be resolved by the jury. Moreover, the Policy itself references "policy year" in describing the "Monthly Cost of Insurance Rates." (Policy [#84-1], at 47 ("These rates for each *policy year* are based on the Insured's age on the policy anniversary, sex, and applicable rate class." (emphasis added).) That Witt used the non-pooled rates (based on State Farm's own internal documents)[3] does not make his opinions unreliable.

Finally, the undersigned is unpersuaded by State Farm's additional reliability challenges—that Witt's testimony is unreliable because (1) he did not use his actuarial expertise in rendering his opinion; (2) his calculations at times resulted in higher COI rates; or (3) he failed to provide a separate damages model for Page's other claims (breach of contract based on the expense charge (Count II) and conversion (Count III)). These are not bases for excluding Witt's testimony.

State Farm argues that Witt's methodology is unreliable because he admitted in his deposition that he did not exercise actuarial judgment in rendering his opinion. State Farm made this same argument in *Bally*, and the Court rejected it for the same reason the undersigned will do so here. *See* 335 F.R.D. at 298. Witt's testimony did not disclaim all reliance on his actuarial and other expertise in rendering his opinions; he merely stated that he did not have to formulate his own actuarial risk assessment and pricing rates because he relied on State Farm's own

---

[3] State Farm makes a related argument throughout its motion that the internal documents Witt relied upon in calculating the COI rate (namely its "mortality experience tables") were only one input in its ratemaking process and therefore Witt erred in exclusively relying on these tables. State Farm may present these factual challenges, which seek not just to undermine Witt's damages model but also Page's entire theory of liability, to the jury.

internal documents in creating his damages model.  (*See* Witt Dep. [#99-4], at 50:14–52:2 (testifying that "relatively little actuarial expertise was required in this case" but that he relied on his experience to interpret State Farm's documents), at 177:5–17 (explaining that he used his experience to understand the language in State Farm's documents but did "not have to use any actuarial judgment" in rendering his opinion).  Witt could have used his actuarial judgment to independently assess the cost of insuring each of the policyholders in the class, but that is not the damages model he has offered for use in this case.  Instead, he has offered a damages model relying on State Farm's own risk assessment as reflected in its own internal pricing documents.  Again, this is not a basis for the wholesale exclusion of Witt's expert testimony.

State Farm also argues that there are "deep flaws" in Witt's methodology because his calculations at times resulted in higher COI rates than those actually used by State Farm, whereas if Witt was indeed removing impermissible expense loads, his COI rates should be consistently lower than State Farm's.  This argument has been addressed by other courts denying reliability challenges to Witt's same damages model, which have concluded that "[t]he possibility that certain Class members may have been undercharged at certain points according to Witt's model does not negatively impact its reliability."  *See, e.g.*, *Bally*, 335 F.R.D. at 300.  These calculations merely illustrate that "State Farm recoups profits and expenses in the earlier years of the Policy and refrains from doing so later—when more policies have lapsed or been surrendered, and when actual mortality costs increase."  *See Vogt v. State Farm Life Ins. Co.*, No. 2:16-CV-0410-NKL, 2018 WL 4937330, at *5 (W.D. Mo. Oct. 11, 2018).  The *Vogt* and *Bally* courts both found that Witt's numbers did "not indicate a flaw in the damages model" but "a calculated business decision" on the part of State Farm.  *Id.* at *5; *Bally*, 335 F.R.D. at 300.  The undersigned agrees with this assessment.

Regarding damages for Count II (breach of contract based on the expense charge) and Count III (conversion), State Farm argues that Witt's damages model must be excluded because he did not create separate calculations for these causes of action.  This not a basis for exclusion of Witt's testimony, although it could serve as a basis for State Farm to argue on the merits (*e.g.*, in a summary-judgment or Rule 50 motion) that Page has failed to adequately support his claim for damages on Counts II and III.  In any event,  Witt's report explains that he views the damages methodology for Counts I and II as the same; regardless of the contractual provision in the Policy at issue, Page believes any amount in excess of the policy-based COI deductions constitutes a breach of contract, entitling the policyholder to damages.  (Witt Report [#80-2], at ¶ 62.)  Moreover, Witt explains in his report that if the Court were to find that a different model is required for Count II, he could isolate the expense portion of COI rates by using State Farm's asset share workbooks.  (*Id.* at ¶ 63.)  These are all matters that can be attacked through cross examination and evidentiary objections, and do not establish that Witt's testimony must be excluded in its entirety.

Witt's damages model can also be applied to Page's conversion claim.  "Generally, the measure of damages for conversion is the fair market value of the property at the time and place of the conversion."  *United Mobile Networks, L.P. v. Deaton*, 939 S.W.2d 146, 147–48 (Tex. 1997).  Witt's damages model presents a methodology for calculating lost account value "as of any date over the life of a policy."  (Witt Report [#80-2], at ¶ 53.)  The fact that Witt's report does not specifically address Page's claim of conversion is not a basis for excluding his testimony.

In summary, none of the arguments raised by State Farm undercut the reliability of Witt's proposed testimony or methodology on damages.  Additionally, Page has established that Witt's

report and expected testimony are sufficiently reliable under Rule 702 and *Daubert* to be considered for purposes of Page's motion for class certification and as to the merits of Page's claims in this case.  The undersigned will therefore deny State Farm's motion to exclude Witt's expert report and proposed testimony.

### III. Motion for Class Certification

By his motion, Page asks the Court to certify his two claims for breach of contract (Counts I and II), his claim of conversion (Count III), and his request for declaratory and injunctive relief (Count VII) on behalf of the following class:

> All persons who own or owned a universal life insurance policy issued by State Farm on Form 94030 in the State of Texas whose policy was in-force on or after January 1, 2002 and who was subject to at least one monthly deduction.

(Mtn. [#86], at 14.)  Page argues that the proposed class satisfies the requirements of Rule 23(a) and (b) of the Federal Rules of Civil Procedure.  For the reasons that follow, the undersigned agrees and will recommend the District Court grant Page's motion.

### A.      Legal Standard

"The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'"  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–701 (1979)).  In order to justify a departure from this rule, "a class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members."  *Id.* at 348–49 (quoting *E. Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977) (additional internal quotation omitted)).  To ensure that the named plaintiff is the appropriate representative of the class whose claims they wish to litigate, Rule 23(a) imposes four requirements—numerosity, commonality, typicality, and adequate representation.  *Id.* at 349.

Numerosity requires a showing that the class is so numerous that joinder of all members is impracticable.  Fed. R. Civ. P. 23(a).  Commonality requires a showing that there are questions of law or fact common to the class.  *Id.*  Typicality refers to the requirement that the claims or defenses of the representative parties are typical of the claims or defenses of the class.  *Id.*  And the adequate-representation requirement mandates a showing that the representative party and the named class counsel will fairly and adequately protect the interests of the class.  *Id.*

Even where these four requirements are satisfied, certification is only permitted if there is an additional showing that the class action fits into at least one of three specified categories set forth in Rule 23(b).  *See Feder v. Elec. Data Sys. Corp.*, 429 F.3d 125, 129 (5th Cir. 2005).  These categories are: (1) cases in which prosecuting separate actions by or against individual class members would create a risk of inconsistent adjudication; (2) cases in which the party opposing the class has acted or refused to act on grounds that apply generally to the class so that final injunctive or declaratory relief is appropriate with respect to the class as a whole; or (3) cases in which there are questions of law or fact common to class members that predominate over questions affecting only individual members and the class action is superior to other methods for fairly and efficiently adjudicating the controversy.  Fed. R. Civ. P. 23(b).

The Fifth Circuit recently revisited the high standard and "rigorous analysis" required to certify a class action under Rule 23.  *Chavez v. Plan Benefit Servs., Inc.*, 957 F.3d 542, 545 (5th Cir. 2020).  In doing so, the *Chavez* panel emphasized that Rule 23 is not a pleading standard and that courts will often have to look beyond the pleadings to "understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination" as to whether certification is appropriate in a given case.  *Id.* at 546 (quoting *Flecha v. Medicredit, Inc.*, 946 F.3d 762, 766 (5th Cir. 2020)).  The Court also instructed district courts to rigorously

consider both Rule 23(a)'s four prerequisites and the Rule 23(b) class type before certifying a class.  *Id.*  Plaintiff has the burden of showing that Rule 23's requirements are met.  *Dukes*, 564 U.S. at 350–51.

**B.    Analysis**

The District Court should certify Page's breach of contract claims, conversion claim, and request for declaratory and injunctive relief as a class action under Rule 23.  Page's proposed class satisfies the four requirements of Rule 23(a)—numerosity, commonality, typicality, and adequacy of representation.  Page's breach of contract and conversion claims also satisfy Rule 23(b)(3)'s predominance and superiority requirements.  Page's request for declaratory and injunctive relief should be certified under Rule 23(b)(2).

**i.    <u>Numerosity</u>**

Numerosity is satisfied where the proposed class is sufficiently numerous to make joinder of all members impracticable.  Fed. R. Civ. P. 23(a)(1).  The proposed class is sufficiently numerous here.  State Farm's records show that there are over 63,195 policies that suffer from the same alleged defects, and thus approximately that many policyholders in the proposed class.  (Witt Report [#84-1], at ¶ 49.)  Additionally, the Court agrees with Page that because each individual policyholder's claim is relatively modest, separate suits would be impracticable.  Witt calculates, for example, that Page's COI charges exceeded those calculated using COI rates determined only from the Policy-disclosed factors by only $3,322.31.  (*Id.* at ¶ 61.)  The numerosity requirement for certification is satisfied.

**ii.    <u>Commonality</u>**

The commonality requirement is also satisfied.  "[C]ommonality requires more than a shared cause of action or common allegation of fact—it requires a common legal contention

capable of class-wide resolution . . . ."  *Flecha*, 946 F.3d at 767 (citing *Dukes*, 564 U.S. at 349–

50).  In the words of the Supreme Court,

> Commonality requires the plaintiff to demonstrate that the class members
> have suffered the same injury.  This does not mean merely that they have
> all suffered a violation of the same provision of law. . . .  Their claims
> must depend upon a common contention—for example, the assertion of
> discriminatory bias on the part of the same supervisor.  That common
> contention, moreover, must be of such a nature that it is capable of
> classwide resolution—which means that determination of its truth or
> falsity will resolve an issue that is central to the validity of each one of the
> claims in one stroke.

*Dukes*, 564 U.S. at 349–50 (citation and quotations omitted).  "What matters to class certification

. . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a class-

wide proceeding to generate common answers apt to drive the resolution of the litigation.

Dissimilarities within the proposed class are what have the potential to impede the generation of

common answers."  *Id.* at 350 (quotations omitted).  In assessing commonality, this Court must

explain how the standard is met "with specific reference to the claims, defenses, relevant facts,

and applicable substantive law raised by the class claims" and must "address actual or potential

differences in purported class members' individual circumstances and claims."  *Chavez*, 957

F.3d at 547–48 (internal citations and quotations omitted).

There are three claims for which Page must demonstrate commonality—breach of

contract based on excessive COI charges (Count I), breach of contract based on excessive

expense charges (Count II), and conversion (Count III).  Page alleges that State Farm's monthly

COI deductions from its policyholders' accounts exceed the amounts disclosed in and permitted

under the Policy and that this conduct constitutes breach of contract (under either theory) and

conversion in violation of Texas law.  Page's theory underlying this case is that, after pricing its

COI rates based on the express "mortality factors" set forth in the contract—the insured's age on

16

the Policy anniversary, sex, and applicable rate class—State Farm increased those rates with undisclosed profit and expense loads unrelated to the insured's mortality risk.  According to Page's motion for class certification, State Farm had a uniform methodology of calculating these deductions for Form 94030 policies and common evidence of that methodology will establish whether Sate Farm is liable for all three of these causes of action.  The undersigned agrees.

**Breach of Contract.**  Common questions, common evidence, and common answers will resolve every class member's breach of contract claims.  To prevail on his claim for breach of contract as to Count I or Count II, Page must show (1) the existence of a valid contract, (2) performance or tendered performance, (3) breach of the contract, and (4) damages.  *See USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 501 n.21 (Tex. 2018).

Trial of this case will focus on breach and damages and require a construction of the Policy, focusing on several provisions.  First the Policy discloses the monthly deductions, comprised of a COI charge, rider charge, and expense charge:

> Monthly Deduction.  This deduction is made each month, whether or not premiums are paid, as long as the cash surrender value is enough to cover that monthly deduction.  Each deduction includes:
> (1) the cost of insurance,
> (2) the monthly charges for any riders, and
> (3) the monthly expense charge.

(Policy [84-1], at 46.)  Elsewhere in the Policy, the Policy expressly states that "the monthly expense charge is $5.00."  (*Id.* at 40.)  The Policy thereafter describes the COI rates charged each month:

> Monthly Cost of Insurance Rates.  <u>These rates for each policy year are based on the Insured's age on the policy anniversary, sex, and applicable rate class</u>.  A rate class will be determined for the Initial Basic Amount and for each increase.  The rates shown on page 4 are the maximum monthly cost of insurance rates for the Initial Basic Amount.  Maximum monthly cost of insurance rates will be provided for each increase in the Basic Amount.  We can charge rates lower than those shown.  <u>Such rates</u>

<u>can be adjusted for projected changes in mortality</u> but cannot exceed the maximum monthly cost of insurance rates.  Such adjustments cannot be made more than once a calendar year.

(*Id.* at 47 (emphasis added).)

Common questions for determining breach will include:  Did the Policy contractually limit State Farm from using only the specified mortality factors when determining each class member's COI rate for purposes of COI monthly deductions?  Similarly, does the Policy contractually limit State Farm from deducting expenses over the $5.00 expense charge disclosed in the Policy?  If so, did State Farm in fact use factors such as its own profits and expenses in determining its COI rates?  And did State Farm in fact deduct expenses through its monthly COI deduction in addition to the disclosed $5.00 expense charge?

The answers to each of these questions will be the same regardless of the policyholder, as Page has made a sufficient showing that State Farm's conduct was consistent as to all Form 94030 policies in Texas and throughout the country.  State Farm's corporate representative, Carl Streily, testified in his deposition that State Farm's method for making its COI deductions first used "pricing mortality . . . to determine a cost of insurance rate, and that cost of insurance rate was then loaded for expenses and profit."  (Streily Dep. [#84-1], at 144:13–24.)  Streily further testified that State Farm used the same pricing and rate scales for all policies issued under Form 94030.  (*Id.* at 140:11–141:22, 166:7–22.)  Witt's expert report similarly states that, "[a]s verified by State Farm's own employees, the pricing and determination of COI rates for Form 94030 are the same everywhere Form 94030 was sold, including being the same for Missouri, California, Washington, and Texas policy owners."  (Witt Report [#84-1], at ¶ 10; *see also id.* at ¶ 33 (explaining that State Farm priced its policies as reflected in the New Jersey Actuarial Memorandum for Form 94030); N.J. Actuarial Mem. [# 84-1], at 299–319.)

State Farm does not contest this evidence of commonality in opposing class certification but rather argues that Page's claims cannot be established with common evidence because the contractual language does not support the construction of the contract alleged in the pleadings. State Farm believes the COI provision invoked in Count I does not speak to or describe the actuarial ratemaking process or limit State Farm to considering only certain "mortality expectations" in developing its COI rates for purposes of Count I.  Rather, State Farm believes that the language in the Policy's COI provision "clearly refers to the process by which State Farm assigns each Insured an individual cost of insurance rate, not the process by which those rates are calculated."  (Resp. [#111], at 25.)

As to Count II, State Farm similarly argues that the expense clause does not limit what expenses or other factors State Farm is allowed to consider in the pricing process.  State Farm contends that nothing in the language capping the monthly expense charge at $5.00 represents the totality of what other expenses State Farm may consider in pricing its Policy and deduct from the account value of its insureds.  State Farm also argues generally that Page's interpretation of the Policy "contradicts commercial and regulatory reality," citing testimony on industry practice in the area of life insurance contracts.

These are not arguments that establish why there is not commonality for purposes of certification but rather merits-based arguments regarding contract construction.  In Texas, "[i]nsurance policies are controlled by rules of interpretation and construction which are applicable to contracts generally."  *Nat'l Union Fire Ins. Co. of Pittsburgh v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995).  Regardless of whether the Court or the factfinder ultimately

adopts Page's or State Farm's interpretation of the contract, common evidence and answers will dictate the result in this case, guided by standard principles of contract interpretation.[4]

In Texas, courts generally construe terms according to their "plain, ordinary meaning, unless the instrument indicates terms have been used in a technical or specialized sense." *Exxon Mobil Corp. v. Ins. Co. of State of Penn.*, 568 S.W.3d 650, 657 (Tex. 2019). *See also Cadence Bank v. Elizondo*, 606 S.W.3d 802, 817 (Tex. App.—Houston [1st Dist.] Mar. 10, 2020, no pet. h.) (op. on reh'g) ("To determine the meaning of an industry term, a court may refer to extrinsic evidence, such as industry dictionaries, statutory definitions, or expert testimony.").

State Farm argues generally that Page's interpretation of the contract as limiting deductions to specified mortality factors cannot be harmonized with industry practice and contends that extrinsic evidence will be needed to determine the meaning of the contract in the commercial context of life insurance.  This argument does not affect the commonality analysis. State Farm does not identify any specific terms in the contract that are technical or specialized that might change the meaning of the contract, requiring the consideration of extrinsic evidence. Nor does State Farm explain why, even if extrinsic evidence were needed to construe a term, this evidence would not resolve the contract interpretation issues on a class-wide basis.

Nor is the undersigned persuaded that contract construction in this case will turn on individualized inquiries into each policyholder's understanding of the contract, as opposed to common evidence.  The Fifth Circuit recently recognized that disputes concerning form contracts are generally well suited for class resolution, unless the outcome of the suit will depend on extrinsic evidence that would differ for each class member.  *See, e.g.*, *Cruson v. Jackson Nat'l*

---

[4] State Farm has filed a motion for summary judgment that fleshes out these arguments in more detail.  As previously noted, the undersigned will address these arguments by a separate report and recommendation.

*Life Ins. Co.*, 954 F.3d 240, 255 (5th Cir. 2020).  State Farm maintains that resolution of the class members' claims will depend on extrinsic evidence here, citing, for example, to testimony of its sales agents that some class members had an understanding of the contract consistent with State Farm's interpretation.  Yet, the Policy expressly states that agents cannot make or change the Policy's terms.  (Policy [#84-1], at 49 ("Only an officer has the right to change this policy.  No agent has the authority to change the policy or to waive any of its terms.  All endorsements, amendments, and riders must be signed by an officer to be valid.").)  Thus, any attempt by State Farm to demonstrate that individual conversations between potential insureds and sales agents should be considered in construing the contract runs directly counter to the Policy language.[5]  In summary, the plain language of the COI rate provision and the expense charge provisions are subject to common interpretation under Texas law.

**Conversion.**  To prevail on his claim of conversion, Page must demonstrate that State Farm exercised dominion or control over his property, inconsistent with his rights in the property.  *Waisath v. Lack's Stores, Inc.*, 474 S.W.2d 444, 446 (Tex. 1971).  There can be no conversion where the owner has expressly or impliedly assented to the taking of the property.  *Robinson v. Nat'l Autotech, Inc.*, 117 S.W.3d 37, 39–40 (Tex. App.—Dallas 2003, pet. denied).  Common questions for determining whether State Farm is liable for conversion include whether State Farm misappropriated specific funds placed in its custody for the benefit Page and other class members and whether it did so without their authorization and consent, express or implied.  These questions will be resolved by the same common evidence of how State Farm calculates and makes its monthly deductions from its policyholders' accounts.

---

[5]   The undersigned addresses this argument in more detail in the discussion of predominance *infra*.

Much like its opposition to certification of Page's breach of contract claims, State Farm resorts to merits arguments in arguing a lack of commonality as to Count III.  State Farm argues that the property at issue here—part of an account value—is intangible and therefore not subject to conversion.  This is a legal question that will be resolved identically for each class member and does not bear on the propriety of certification.

The only other argument by State Farm regarding commonality as to Page's conversion claim is that evidence of individual class members' conduct could demonstrate implied consent to the challenged COI deductions, and lack of consent is an essential element of this claim.  *See id.* at 39.  State Farm does not direct the Court to any actual evidence of consent, however, and the general argument that policy owners consent to COI deductions by paying their COI and expense charges is simply not persuasive.  Policy owners like Page pay their premiums, not the COI and expense charges.  These amounts are deducted from the premiums by State Farm on a monthly basis per the Policy.  This is the practice as to every single class member.  There are no individualized inquiries with respect to Page's conversion claim that weigh against certification here.

### iii.   <u>Typicality</u>

Typicality is also satisfied.  Typicality does not require "a complete identity of claims" but there must nonetheless be similarity between the named plaintiff's legal and remedial theories and the theories of the putative class.  *Stirman v. Exxon Corp.*, 280 F.3d 554, 562 (5th Cir. 2002) (citation and quotation omitted).  Again, Page's claims, like the claims of all putative class members, turn on the interpretation and application of a standard, non-negotiated, form contract.  All putative class members were subject to identical policy language.  If Page's allegations are deemed meritorious at trial, each class member will have suffered the same injury

due to the same uniform course of conduct by State Farm.   Furthermore, Page has provided sufficient evidence (via Witt's report) that damages can be determined on a class-wide basis, and the undersigned has already rejected State Farm's argument that Witt's methodology for calculating class-wide damages is unreliable.

### iv.   Adequacy of Representation

The proposed class also satisfies the adequacy requirement that Page and class counsel "fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  Page has a sufficient interest in recouping his individual alleged damages in the amount of $3,322.31.  Page has also hired attorneys with significant experience prosecuting class litigation, including the *Vogt* case, in which they secured a jury verdict of $34.3 million for Missouri policy owners and defended the class judgment on appeal.

Although Page's deposition testimony reveals that he does not have a detailed understanding of the Policy and the nuances of his legal claims, he testified that he has relied on counsel to investigate and present those claims to the Court to ensure that State Farm is complying with the Policy and its terms.  Page has also participated in discovery, sat for a deposition, and has provided testimony that he understands his role to be to make the best decisions for the class members whom he represents with respect to the course of this lawsuit. (Page Dep. [#99-2], at 77:15–19, 90:3–92:11.)   Page will fairly and adequately represent the proposed class.

### v.   Predominance and Superiority

As noted, in addition to satisfying the requirements of Rule 23(a), to prevail on his motion Page must also demonstrate that one of Rule 23(b)'s three requirements is met.  As to Page's breach of contract and conversion claims, the record before the Court establishes both

that "questions of law or fact common to class members predominate over any questions affecting only individual members," and that "a class action is superior to other available methods of fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

The predominance and superiority inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). "In order to 'predominate,' common issues must constitute a significant part of the individual cases." *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 626 (5th Cir. 1999) (citation omitted). Making this determination requires inquiring into how the case will be tried—"identifying the substantive issues that will control the outcome, assessing which issues will predominate, and then determining whether the issues are common to the class." *Ibe v. Jones*, 836 F.3d 516, 529 (5th Cir. 2016) (internal citation and quotation omitted). Individualized damages calculations do not preclude a finding of predominance, especially when the calculation of damages is susceptible to a mathematical or formulaic calculation. *Id.*

The inquiry into predominance is similar to the question of commonality but more searching in its evaluation of whether the class is sufficiently cohesive. The undersigned has already explained in detail in the discussion of commonality that the Policy at the heart of this litigation is a standardized form contract, not subject to individual negotiation, which will be analyzed uniformly under Texas law. Additionally, the substantive elements of Plaintiff's breach of contract claims require the same proof for each class member. The same proof will be used to prove whether State Farm breached the contract by relying on extra-contractual factors in calculating its COI rates and deductions (as to Count I) and to prove whether State Farm included unauthorized expense loads in its COI charges and the amount of such loads (as to Count II). State Farm has not suggested that the determination of COI rates and charges varied

on an individualized basis, and for the reasons that follow, the subjective understanding of each policy owner as to the Policy's terms will not create individualized issues for adjudication. Common questions also predominate on Plaintiff's conversion claim—which requires proof of the wrongful exercise of control over another's property inconsistent with rights authorized by law.

The undersigned is also unpersuaded by State Farm's arguments that its statute of limitations defense creates individual issues that defeat predominance or that Witt's damages methodology creates an intra-class conflict, resulting in class members with conflicting interests and objectives. To the contrary, Page has established that damages are capable of class-wide calculation per the methodology already deemed reliable by Witt.

**Subjective Understanding of the Policy.** The undersigned briefly addressed this argument in its discussion on commonality *supra* but will elaborate here. State Farm argues that if the Court certifies the class, it will have to consider each class member's subjective understanding of the contract, particularly in light of the evidence that State Farm agents had detailed discussions of the policy terms with many policyholders and life insurance is purchased through a "high-touch sales process." (*See* Kirk-Fair Decl. [#99-6], at ¶¶ 14–28.) The Fifth Circuit explained in *Cruson* that "[p]redominance in form contract cases may be defeated . . . 'if individualized extrinsic evidence bears heavily on the interpretation of the class members' agreements.'" 954 F.3d at 255 (quoting *Sacred Heart Health Sys., Inc. v. Humana Mil. Healthcare Servs., Inc.*, 601 F.3d 1159, 1176–77 (11th Cir. 2010)).

In Texas, extrinsic evidence may only be used to determine the intent of the parties and the meaning of a contract if the contract is found to be ambiguous. *Progressive County Mut. Ins. Co. v. Kelley*, 284 S.W.3d 805, 807–08 (Tex. 2009). A contractual provision is ambiguous if,

after applying the rules of contract interpretation, the provision is subject to two or more reasonable interpretations. *Wells*, 885 F.3d at 890 (citing *Glover v. Nat'l Ins. Underwriters*, 545 S.W.2d 755, 761 (Tex. 1977)). "Ambiguity must be evident from the policy itself; it cannot be created by introducing parol evidence of intent." *Fiess v. State Farm Lloyds*, 202 S.W.3d 744, 747 (Tex. 2006). Moreover, "[a] policy provision is not ambiguous merely because different parties or different courts have interpreted it differently." *Id.* at 746.

The Court need not make a decision as to ambiguity to resolve the predominance inquiry for purposes of certification. Even if the Court were to find the provision ambiguous, evidence of the intent and understanding of each class member as to the meaning of the contract is not the type of extrinsic evidence relevant to the construction of a form insurance contract like the Policy here. The Texas Supreme Court has long held that in cases involving standard form policies, like insurance contracts regulated by state agencies, "the actual intent of the parties is not what counts (as they did not write it), but the ordinary, everyday meaning of the words to the general public." *Id.* at 746. Thus, the Court must construe the Policy "according to what it says, not what regulators or individual insurers thought it said." *See id.* at 745. Moreover, in Texas, ambiguities in insurance contracts must be construed against the insurer by adopting the construction that most favors the consumer, i.e., the class members here. *Id.* In light of this precedent, the subjective understanding of individual class members does not bear on the construction of the Policy or the predominance inquiry for purposes of class certification.

**Intra-Class Conflicts.** Nor is their merit to State Farm's argument that the damages model offered by Witt creates intra-class conflicts that establish a lack of cohesion among the proposed class members so as to destroy predominance. State Farm contends that Witt's damages model systematically favors shorter-term policyholders and tobacco users to the direct

detriment of longer-term policyholders and non-tobacco users, thereby creating various subclasses in conflict with one another. State Farm further believes that Witt's damages model establishes that some class members might have been worse off had State Farm made COI deductions based solely on the explicit terms of the Policy, furthering the conflicts among class members.

The undersigned has already rejected these arguments as a basis for excluding the testimony of Witt based on unreliability. How State Farm calculated its COI deductions (and what factors it considered in doing so) are questions of fact that will be resolved by common evidence. These fact questions affect the ultimate resolution of this case and the calculation of damages but are not a basis for denying class certification. *See Bally*, 335 F.R.D. at 303 (rejecting State Farm's intra-class conflict argument and reasoning that the fact issues raised by State Farm's affected calculation of damages and did not dictate denial of class certification *ab initio*).

Furthermore, the possibility that a small percentage of class members suffered no damages is also not a basis for denying class certification. As Page points out in his briefing, the jury in *Vogt* accounted for the small percentage of policy owners who would have been charged a lower COI rate had State Farm made deductions based exclusively on the contractually disclosed factors by awarding State Farm an offset against damages. The *Vogt* trial transcript establishes that this offset lowered total damages to the class by less than 3 percent, an amount so negligible it cannot reasonably be viewed as causing a risk of conflict among class members. (Vogt Tr. Transcript [#79-6], at 132:21–23, 135:17–137:7, 139:19–140:3.) Additionally, a mere 29 class members out of nearly 24,000 were determined to have suffered no net loss and received

a judgment of $0.  (*Id.* at 417:12–15.)  This Court may resolve any issues regarding the damages of a subset of class members who received no net loss similarly.

**Statute of Limitations Defense.**  Finally, the fact that State Farm has pleaded a statute of limitations defense does not destroy predominance either.  A claim for breach of contract must be brought within four years of accrual.  Tex, Civ. Prac. & Rem. Code § 16.004(a).  A breach of contract claim generally accrues when the contract is breached.  *Stine v. Stewart*, 80 S.W.3d 586, 592 (Tex. 2002).

"The discovery rule defers accrual of a claim until the injured party learned of, or in the exercise of reasonable diligence should have learned of, the wrongful act causing the injury."  *B. Mahler Interests., L.P. v. DMAC Constr., Inc.*, 503 S.W.3d 43, 49 (Tex. App.—Houston [14th Dist.] 2016, no pet.).  The discovery rule is therefore limited to "circumstances where the nature of the injury incurred is inherently undiscoverable and the evidence of injury is objectively verifiable."  *Id.* (internal quotation and citation omitted).  "The discovery rule may apply to a breach of contract claim, but 'those cases should be rare, as diligent contracting parties should generally discover any breach during the relatively long four-year limitations period provided for such claims.'"  *Clear Lake Ctr., L.P. v. Garden Ridge, L.P.*, 416 S.W.3d 527, 543 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (quoting *Via Net v. TIG Ins. Co.*, 211 S.W.3d 310, 315 (Tex. 2006)).

State Farm argues that Page's breach of contract claims are barred by Texas's four-year statute of limitations because he purchased his policy, and the challenged deductions began, in 1997, meaning the limitations period expired well before he filed suit.  According to State Farm, the discovery rule does not apply to the claims asserted in this case because the breaches at issue are not inherently undiscoverable due to the "high-touch" process discussed *supra*, in which

agents explained the details of the life insurance policies at issue at length to potential policyholders, who in turn had the opportunity to ask questions about any aspect of the contract, including the COI deductions.  State Farm argues further that if the discovery rule does apply, the Court will be faced with having to evaluate when each class member became aware of the allegedly improper deductions to determine if their individual claims are timely, undermining class cohesion.

State Farm's arguments regarding its limitations defense have been repeatedly rejected by the other courts faced with the decision of whether or not to certify a class of policyowners who purchased policies issued on Form 94030.  *See, e.g.*, *Vogt*, 963 F.3d at 765 (affirming grant of summary judgment in Vogt's favor on State Farm's affirmative defense of limitations); *Bally*, 536 F. Supp. 3d at 516 (granting Bally's motion for summary judgment on State Farm's limitations defense).  Contrary to State Farm's arguments, the *Vogt* court determined that no class member could possibly have known that State Farm loaded the COI rates with factors not disclosed in the Policy without access to the Policy's COI rates and State Farm's underlying pricing mortality rates.  *See* 963 F.3d at 765 ("Although a reasonably prudent person might have had some suspicions about the rising COI fees, this alone would be insufficient to put such a person on notice and trigger the running of the statute of limitations.")  Because the *Vogt* court determined that the alleged breaches of contract at issue were not inherently discoverable without the assistance of an attorney and an actuarial expert, it further found that the discovery rule applied to toll the statute of limitations.  *See id.*  State Farm has not at this juncture convinced the undersigned otherwise.

Additionally, State Farm's concerns about the discovery rule leading to mini-trials on when each class member discovered the breach are unfounded.  Nothing in the record before the

Court indicates that the policyholders would have been on notice of the alleged breach.  Any concerns about individualized inquiries pertaining to the discovery rule do not negate predominance or provide a basis for denying Page's motion for class certification.

**Superiority.**  In addition to predominance, Rule 23(b)(3) also requires that a class action be superior to other methods of adjudication.  In determining whether superiority is satisfied, a court considers: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action."  Fed. R. Civ. P. 23(b)(3).

Page has also established that a class action is superior to individualized resolution of class members' claims.  There are no other class actions pending against State Farm regarding Form 94030 on behalf of Texas policyholders.  As already noted, certification will benefit all of the thousands of class members who, without the assistance of an attorney, would remain oblivious to their alleged injuries.  The Court should certify Page's breach of contract and conversion claims.

### vi.   <u>Rule 23(b)(2)</u>

With respect to Page's claim for declaratory judgment and injunctive relief at Count VII, the proposed class satisfies Rule 23(b)(2) because State Farm "has acted or refused to act on grounds that apply generally to the class, so that final injunctive or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).  The undersigned agrees with Page that the determination of the merits of this claim will depend on the same evidence supporting Plaintiff's other counts, and the interpretation of the evidence "will result in

one declaratory judgment applicable to all class members." *Vogt*, 2018 WL 1955425, at *7 (certifying declaratory judgment claim under Rule 23(b)(2)).

State Farm argues that certification under Rule 23(b)(2) is inappropriate because the monetary relief Page seeks is not "incidental" to his claim for declaratory and injunctive relief. *See Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 415 (5th Cir. 1998) (holding that monetary relief predominates in (b)(2) class actions unless it is incidental to requested injunctive or declaratory relief, i.e., "damages that flow directly from liability to the class as a whole on the claims forming the basis of the injunctive or declaratory relief"). Yet, Page does not seek to certify any claim for monetary relief under Rule 23(b)(2). Thus, there is no basis for concern that he is attempting to "shoehorn [a] damages action[s] into the Rule 23(b)(2) framework." *See Bolin v. Sears, Roebuck & Co.*, 231 F.3d 970, 976 (5th Cir. 2000). The Court should certify Page's declaratory judgment claim under Rule 23(b)(2).

## IV.  Conclusion and Recommendation

Having considered the parties' motions, responses, and replies, oral argument, the record, and governing law,

**IT IS HEREBY ORDERED** that Defendant State Farm's Memorandum of Law in Support of Motion to Exclude Declaration and Testimony of Scott J. Witt [#112] is **DENIED**.

The undersigned also hereby **recommends** that Plaintiff's Motion for Class Certification [#79] be **GRANTED** and the District Court order the following:

- The Class be composed of and defined as:

  All persons who own or owned a universal life insurance policy issued by State Farm on Form 94030 in the State of Texas whose policy was in-force on or after January 1, 2002 and who was subject to at least one monthly deduction.

> Excluded from the Class are: State Farm; any entity in which State Farm has a controlling interest; any of the officers, directors, or employees of State Farm and their immediate family; the legal representatives, heirs, successors, and assigns of State Farm; anyone employed with Plaintiff's counsel's firms; any Judge to whom this case is assigned, and his or her immediate family; and policies that insured males with an issue age of zero and terminated in the first policy year.

- Counsel for Plaintiff be appointed Class Counsel pursuant to Rule 23(g) of the Federal Rules of Civil Procedure.

### V.  Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested.  Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The party shall file the objections with the Clerk of Court and serve the objections on all other parties.  A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections.  A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court.  *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root*, *Inc.,* 200 F.3d 335, 340 (5th Cir. 2000).  Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the un-objected-to proposed factual findings and legal

conclusions accepted by the district court.  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

SIGNED this 10th day of February, 2022.


_____
ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE