IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| RONALD K. PAGE, ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARY SITUATED, | § § § § | SA-20-CV-00617-FB |
| *Plaintiff,* | § § | |
| vs. | § § | |
| STATE FARM LIFE INSURANCE COMPANY, | § § § | |
| *Defendant.* | § § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable United States District Judge Fred Biery:**

This Report and Recommendation concerns Defendant State Farm Life Insurance Company's Motion for Summary Judgment [#105].  All dispositive pretrial matters in this case have been referred to the undersigned for disposition pursuant to Western District of Texas Local Rule CV-72 and Appendix C [#58].  The undersigned has authority to issue a recommendation on Plaintiff's class certification motion pursuant to 28 U.S.C. § 636(b)(1)(B).  For the reasons set forth below, the undersigned will recommend that the District Court **grant in part and deny in part** Defendant's motion.

## I.  Background

Plaintiff Anna Gonzalez filed this putative class action on May 22, 2020, against State Farm Life Insurance Company (hereinafter "State Farm"), on behalf of herself and all other similarly situated holders of universal life insurance policies issued by State Farm and its predecessors in interest using Form 94030 in Texas.  (Compl. [#1], at ¶ 1.)  Gonzalez's case was subsequently consolidated with an almost identical suit filed by Plaintiff Ronald K. Page, SA-20-

CV-945-FB.   After consolidation, Plaintiffs filed a Consolidated Amended Class Action Complaint.   (Consolidation Order [#42]; Consol. Am. Compl. [#64].)   The Court thereafter granted Plaintiffs leave to file another amended pleading.   The First Amended Consolidated Class Action Complaint ("First Amended Complaint") filed on March 2, 2021, remains the live pleading in this case.   (First Am. Compl. [#72].)   After the consolidation and amendments, Gonzalez voluntarily dismissed her claims, leaving Page as the only named Plaintiff.   (Stip. [#75].)

Page's First Amended Complaint alleges that State Farm charged and collected from Page and other similarly situated life-insurance policyholders amounts in excess of that authorized by the express terms of their life insurance policy (hereinafter "the Policy").   (First Am. Compl. [#72], at ¶ 1.)   According to the First Amended Complaint, the Policy allows for a monthly deduction from each policyholder's interest-bearing account, which includes a cost of insurance charge ("COI charge"), a monthly expense charge in the amount of $5.00 ("expense charge"), and a charge for any riders.   (*Id.* at ¶ 28.)   The Policy also discloses a "premium expense charge" set at a fixed percentage of five percent of each premium payment made.   (*Id.* at ¶ 38.)

Page alleges that the Policy identifies specific factors State Farm may use to determine the "COI rate" for purposes of making the monthly COI charge deduction and that these factors are limited to age of the insured on the Policy anniversary, sex, applicable rate class, and any projected changes in mortality.   (*Id.* at ¶¶ 29–39.)   Page claims that State Farm nonetheless relied on additional factors that were not disclosed in the Policy and that are unrelated to the insured's mortality risk in determining the COI rate, such as State Farm's profits and expenses, resulting in excessive deductions from the insured's interest-bearing account in violation of the Policy.   (*Id.*)

Based on these allegations, Page asserts two claims of breach of contract (one based on the COI rate provision, and another based on the expense charge provision), as well as claims of conversion, breach of the duty of good faith and fair dealing, and violations of the Texas Deceptive Trade Practices-Consumer Protection Act and other provisions of the Texas Insurance Code. (*Id.* at ¶¶ 59–107.) Page seeks declaratory and injunctive relief, as well as compensatory and punitive damages, on behalf of the proposed class. (*Id.* at ¶¶ 108–13.)

Similar class action have been filed across the country on behalf of policyholders who were issued policies on Form 94030. *See Vogt v. State Farm Ins. Co.*, No. 2:16-cv-4170-NKL (W.D. Mo.); *Bally v. State Farm Life Ins. Co.*, 18-cv-4954-CRB (N.D. Cal.); *Whitman v. State Farm Life Ins. Co.*, No. 19-cv-06025-BJR (W.D. Wash.); *Jaunich v. State Farm Life Ins. Co.*, No. 20-cv-01567-PAM-JFD (D. Minn.). This is the only pending class action filed on behalf of Texas policyholders regarding Form 94030 and these allegedly excessive deductions.

Page moved to certify this case as a Rule 23 class action. In support of the motion, Page provided the Court with the Declaration and Report of Scott J. Witt, one of Page's retained experts. (Sealed Decl. [#84-1].) State Farm moved to exclude the testimony of Witt under Rule 702 of the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 589 (1993). State Farm also filed an early motion for summary judgment, which argues that State Farm is entitled to summary judgment on all of Plaintiff's claims as a matter of law under the relevant contractual provisions in the Policy.

The undersigned held hearings on all three motions and subsequently issued an order and report and recommendation to the District Court [#137], denying State Farm's motion to exclude Witt and recommending the Court grant Page's motion for class certification. The report and

recommendation remains pending before the District Court.  The motion for summary judgment is now ripe for review.

## II.  Summary Judgment Standard

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also* Fed. R. Civ. P. 56(c).  A dispute is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  *Catrett*, 477 U.S. at 323.  Once the movant carries its burden, the burden shifts to the nonmoving party to establish the existence of a genuine issue for trial.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wise v. E.I. Dupont de Nemours & Co.*, 58 F.3d 193, 195 (5th Cir. 1995).  The non-movant must respond to the motion by setting forth particular facts indicating that there is a genuine issue for trial.  *Miss. River Basin Alliance v. Westphal*, 230 F.3d 170, 174 (5th Cir. 2000). The parties may satisfy their respective burdens by tendering depositions, affidavits, and other competent evidence.  *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). The Court will view the summary judgment evidence in the light most favorable to the non-movant.  *Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993).

"After the non-movant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the non-movant, summary judgment will be granted." *Westphal*, 230 F.3d at 174.  However, if the party moving for summary judgment fails to satisfy its initial burden of demonstrating the absence of a genuine issue of material fact, the motion must be denied, regardless of the nonmovant's response.  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

### III.  Relevant Contractual Language

The Policy at issue in this case is a universal life insurance policy issued by State Farm between 1994 and 2004 that pays a death benefit to beneficiaries on the death of the insured. (Mason Decl. [#104-1], at 2.)  The Policy includes an individual account value that accrues interest at a guaranteed rate of no less than 4%.  (Policy [#72], at 34.)  The account value at a given time is comprised of 95% of any premium payments by the policyholder, any dividend paid and added to the account value, and accrued interest, reduced by certain contractually specified deductions.  (*Id.* at 33.)

The relevant provisions of the Policy requiring construction to resolve State Farm's motion for summary judgment address State Farm's calculation of each policyholder's account value and its calculation of monthly deductions and COI rates.  Per the Policy, these specified deductions are comprised of a COI charge, a rider charge, and an expense charge:

> Monthly Deduction.  This deduction is made each month, whether or not premiums are paid, as long as the cash surrender value is enough to cover that monthly deduction.  Each deduction includes:
> (1) the cost of insurance,
> (2) the monthly charges for any riders, and
> (3) the monthly expense charge.

(*Id.* at 33.)  The "COI" is "calculated each month" by an equation set forth in the Policy that multiplies the monthly COI rate by the Policy's net amount of risk (the amount by which the

death benefit amount exceeds the account value, i.e., the amount of its own funds State Farm must pay if the insured dies).  (*Id.* at 34; Witt Decl. [#84-1], at ¶¶ 23–24.)

The Policy includes a table of maximum monthly COI rates based on the policyholder's age.  (Policy [#72], at 28.)  Additionally, there is a provision describing how State Farm calculates the COI rates charged each month as follows:

> Monthly COI Rates.  These rates for each policy year are based on the Insured's age on the policy anniversary, sex, and applicable rate class.  A rate class will be determined for the Initial Basic Amount and for each increase.  The rates shown on page 4 are the maximum monthly COI rates for the Initial Basic Amount.  Maximum monthly COI rates will be provided for each increase in the Basic Amount.  We can charge rates lower than those shown.  Such rates can be adjusted for projected changes in mortality but cannot exceed the maximum monthly COI rates.  Such adjustments cannot be made more than once a calendar year.

(*Id.* at 34 (emphasis added).)  "Rate Class" is defined elsewhere in the Policy as the "underwriting class of the person insured."  (*Id.* at 29.)

In addition to the provision describing the monthly COI rates, the Policy also provides that a "premium expense charge of 5% is deducted from each premium paid" and that "[t]he monthly expense charge is $5.00."  (*Id.* at 27.)

## IV.  Analysis

State Farm's motion for summary judgment asks the Court to construe the Policy as a matter of law and grant it summary judgment on all of Page's claims.  Page's First Amended Complaint asserts the following claims: breach of contract on the COI charge provision (Count I), breach of contract on the expense charge provision (Count II), conversion (Count III), breach of the duty of good faith and fair dealing (Count IV), violation of the Texas Insurance Code (Count V), violation of the Texas Deceptive Trade Practices-Consumer Protection Act ("DTPA") (Count VI), and declaratory and injunctive relief (Count VII).  (First Am. Compl. [#72], at ¶¶

59–112.)  State Farm argues that the merit of each of these claims depends on a theory of liability that rests on a complete misreading of the Policy language.  The undersigned will consider each of Page's claims in turn, beginning with the two breach of contract claims.

## A.    Breach of Contract Claims

Page asserts two breach of contract claims in his First Amended Class Action Complaint. Count I alleges that State Farm breached the Policy by loading unauthorized factors in its monthly COI rates, causing those rates to be higher than what is expressly authorized by the Policy.  (*Id.* at ¶ 63.)  Count II alleges that State Farm breached the Policy by impermissibly deducting expenses from policyholders' account values in amounts in excess of the fixed expense charges expressly authorized by the Policy.  (*Id.* at ¶ 68.)  State Farm asks the Court to apply general principles of contract interpretation and hold that the Policy language at issue is unambiguous and should be construed as a matter of law in its favor.  For the reasons that follow, the undersigned finds State Farm is not entitled to summary judgment on either of these claims.

### i.    <u>Governing Principles of Contract Interpretation</u>

"The interpretation of an unambiguous contract is a matter of law; the interpretation of an ambiguous contract through extrinsic evidence of the parties' intent is a matter of fact."  *So. Nat'l Gas Co. v. Pursue Energy*, 781 F.2d 1079, 1081 (5th Cir. 1986).  A district court therefore "may properly grant summary judgment when a contract is unambiguous, but may not grant summary judgment when a contract is ambiguous and the parties' intent presents a genuine issue of material fact."  *Id.*

The parties agree Texas law governs the construction of the contract at issue in this diversity case.  Under Texas law, the same rules apply to the interpretation of insurance contracts as apply to the interpretation of other contracts.  *Am. Nat'l Gen. Ins. Co. v. Ryan*, 274 F.3d 319,

323 (5th Cir. 2001) (citing *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133 (Tex. 1994)). The primary concern of a court in construing a written contract is to ascertain the true intent of the parties as expressed in the instrument or, in the case of a state-promulgated form, to ensure contract terms are construed according to "the ordinary, everyday meaning of the words to the general public." *Exxon Mobil Corp. v. Ins. Co. of State*, 568 S.W.3d 650, 657 (Tex. 2019) (quoting *Progressive Cty. Mut. Ins. Co. v. Sink*, 107 S.W.3d 547, 551 (Tex. 2003)). The most important consideration in interpreting the meaning of a contract is "the agreement's plain, grammatical language." *Endeavor Energy Res., L.P. v. Energen Res. Corp.*, 615 S.W.3d 144, 148 (Tex. 2020). To that end, the terms used in the policy are given their plain, ordinary meaning unless the policy itself shows that the parties intended the terms to have a different, technical meaning. *Exxon Mobil Corp.*, 568 S.W.3d at 657. Context is important, and this Court must examine the entire writing and endeavor to harmonize and give effect to all the provisions so that none are rendered meaningless. *Id.*

Additionally, when contractual text alone is inconclusive as to its meaning, courts may consider facts and circumstances giving context to the parties' transaction, bearing in mind the particular business activity sought to be served, so as to avoid unreasonable constructions where possible. *Endeavor Energy Res.*, 615 S.W.3d at 148. "Although consideration of surrounding circumstances is sometimes helpful in understanding the words chosen by the parties, such extrinsic evidence cannot justify interpreting contractual 'language [to] say what it unambiguously does not say.'" *Id.* (quoting *First Bank v. Brumitt*, 519 S.W.3d 95, 110 (Tex. 2017)).

If, after applying these general rules of contract interpretation, a contract provision is subject to two or more reasonable interpretations, i.e., it cannot be given a certain or definite

meaning, the provision is ambiguous as a matter of law. *Plains Expl. & Prod. Co. v. Torch Energy Advisors Inc.*, 473 S.W.3d 296, 305 (Tex. 2015). "Mere disagreement over the interpretation of an agreement does not necessarily render the contract ambiguous." *Id.* As noted, a contract may be read in light of the circumstances surrounding its execution to determine whether an ambiguity exists, but consideration of such extrinsic evidence has its limits. *Id.* If the instrument, "by its terms, plainly and clearly discloses the intention of the parties," such evidence is not admissible to create an ambiguity where none exists. *Id.* (quoting *Sun Oil Co. v. Madeley*, 626 S.W.2d 726, 732 (Tex. 1981)).

Evidence of the parties' subjective intent and conduct as to the meaning of their agreement is "only relevant after the court has determined that the contract is ambiguous." *E. Montgomery Cnty. Mun. Util. Dist. No. 1 v. Roman Forest Consol. Mun. Util. Dist.*, 620 S.W.2d 110, 112 (Tex. 1981). Once an ambiguity has been established, insurance contracts are to be strictly construed against the insurer and in favor of the insured. *So. Life and Health Ins. Co. v. Simon*, 416 S.W.2d 793, 795 (Tex. 1967). "The policy of strict construction against the insurer is especially strong when the court is dealing with exceptions and words of limitation." *Blaylock v. Am. Guar. Bank Liab. Ins. Co.*, 632 S.W.2d 719, 721 (Tex. 1982).

### ii.    Count I – Breach of Contract on COI Charge Provision

The Court should deny State Farm's motion for summary judgment as to Count I. The undersigned agrees with Page that an ordinary policyholder could reasonably read the Policy's plain language as prohibiting State Farm from loading its COI rates with undisclosed profit and expense factors. Because State Farm's interpretation of the contract is not the *only* reasonable interpretation of the COI charge provision, the contract is not unambiguous as a matter of law.

State Farm is therefore not entitled to summary judgment on Page's claim of breach of contract based on the Policy's COI charge provision.

Page's theory underlying Count I is that the Policy specifies the factors State Farm may permissibly use to determine its monthly COI rates—"age on the policy anniversary, sex, and applicable rate class," and "projected changes in mortality." (First Am. Compl. [#72], at ¶¶ 31.) Accordingly, Page alleges that State Farm is authorized to determine its monthly COI rates for each year using *only* the insured's age, sex, applicable rate class, and projected changes in mortality. (*Id.* at ¶ 33.) Page contends that no reasonable layperson would understand the Policy to permit State Farm to use additional factors, such as its profits and expenses, to determine an insured's COI rate. (*Id.* at ¶ 36.) Page alleges that by doing so State Farm has repeatedly and continuously breached the Policy and impermissibly inflated policyholders' COI rates to their financial detriment. (*Id.* at ¶ 41.)

State Farm asks the Court to conclude that Page's theory is fundamentally flawed and cannot be harmonized with the contractual language. According to State Farm, the *only* reasonable construction of the contract is that the words "the Insured's age on the policy anniversary, sex, and applicable rate class" refer not to its process of COI ratemaking but merely describe the attributes or personal characteristics State Farm uses to *assign* COI rates to each insured for each policy year from its underlying rate tables. In other words, State Farm believes that Page's theory of contract interpretation improperly conflates two distinct processes—(1) the process by which State Farm developed its underlying pricing and rate tables for the Policy during the design and pricing phase, before it submitted the Policy for approval by the Texas Department of Insurance or offered it to Texas consumers, based on its business needs and regulatory requirements, and (2) the process by which State Farm, after the Policy was approved

10

and offered for sale, assigned each insured a COI rate from its preexisting rate tables after underwriting, based on each insured's age, sex, and applicable rate class.  State Farm argues that nothing in the contractual language can be read to describe or limit the pricing process State Farm conducted *before* the Policy was approved by regulators or sold to the public.

    a.    **The text of the Policy does not support State Farm's position that its interpretation of the contract is the only reasonable construction of the contract.**

In evaluating the merits of each of the parties' arguments, this Court must begin with evaluating the contractual language in an attempt to give it its plain and ordinary meaning. *Exxon Mobil Corp.*, 568 S.W.3d at 657.  Again, the Policy states that the COI is calculated each month by multiplying the COI rate by the Policy's net amount of risk.  (Policy [#72], at 33–34.)  The COI is then deducted monthly, along with other charges.  (*Id.*)  The COI rate cannot exceed certain specified maximum monthly COI rates based on the policyholder's age.  (*Id.* at 28.)  The Policy further states that COI rates for each policy year "are based on the Insured's age on the policy anniversary, sex, and applicable rate class" and "can be adjusted for projected changes in mortality" no more than once per calendar year.  (*Id.* at 34.)

The majority of litigation in other jurisdictions on Form 94030 has focused on the term "based on" in evaluating the textual meaning of the contractual language at issue.  In these other cases, the plaintiffs have taken the position that by stating that the COI rates for each policy year "are based on" an insured's age, sex, and applicable rate class, the Policy implies exclusivity and is at least ambiguous as to whether the parties intended to set forth a list of exhaustive or non-exhaustive factors that could be permissibly considered by State Farm in its calculation of COI rates.  This is the position endorsed by the Eighth Circuit in affirming the $34 million jury verdict in favor of the class of over 25,000 Form 94030 policyholders.  *Vogt v. State Farm Life*

*Ins. Co.*, 963 F.3d 753, 763–64 (8th Cir. 2020), *cert. denied*, 141 S. Ct. 2551 (2021) (holding that under Missouri law the term "based on" (which is not otherwise defined in the policy) was at least ambiguous as to whether or not it allowed State Farm to include non-listed factors in calculating rates and thus was required to be construed against the insurer).  *See also Bally v. State Farm Life Ins. Co.*, No. 18-cv-04954, 2019 WL 3891149, at *5–6 (N.D. Cal. Aug. 19, 2019) (concluding that the "key phrase" in the policy, "based on," was ambiguous as to whether it permitted the consideration of unlisted factors and denying summary judgment to State Farm).

State Farm argues that the *Vogt* court erred in its interpretation of the phrase "based on" and asks this Court to instead follow the guidance of the Seventh and Eleventh Circuits in their analysis of COI rate clause provisions from other insurance policies.  The Seventh and Eleventh Circuits both concluded that the term "based on" does not connote exclusivity and affirmed the grant of summary judgment for the insurer on breach of contract claims alleging breach with respect to a COI charge provision.  *See Norem v. Lincoln Ben. Life Co.*, 737 F.3d 1145, 1149–55 (7th Cir. 2013) (concluding that term "based on" in another COI rate clause provision did not connote exclusivity and did not prohibit the insurer from considering factors not listed in the provision in setting policy rates); *see also Slam Dunk I, LLC v. Conn. Gen. Life Ins. Co.*, 853 Fed. App'x 451, 454–55 (11th Cir. 2021) (agreeing with *Norem* that nothing about the term "based on" implies that the list of factors is exhaustive, just as a cake recipe "based on" flour, sugar, and eggs would not be limited solely to those ingredients).

Although the Texas Supreme Court has made it clear that a policy provision is not ambiguous merely because "different courts have interpreted it differently," *Fiess v. State Farm Lloyds,* 202 S.W.3d 744, 746 (Tex. 2006), it is nevertheless significant that the circuit courts of appeal addressing similar COI provisions have reached contrary conclusions as to what

constitutes a reasonable interpretation of the contract.  As noted by the *Vogt* court, the term "based on" is not defined elsewhere in the Policy.  The common dictionary definition of "based on" is "to find a foundation or basis for," with reference to a particular definition for the word "based" as "the fundamental part of something."  *See* Merriam-Webster Online Dictionary, *available at* https://www.merriam-webster.com/dictionary/based%20on (last visited Mar. 10, 2022).  Applying this definition, State Farm's interpretation of the contract as advanced in prior litigation over Form 94030 is reasonable; the specified factors are the fundamental factors considered by State Farm in setting its COI rates, but the contract does not expressly foreclose the consideration of other factors.  But this not the end of the Court's inquiry.  Like the Eighth Circuit, the undersigned acknowledges that there are other reasonable interpretations of the contract, as "a person of ordinary intelligence purchasing an insurance policy would not read the provision and understand . . . that the insurer would also be free to incorporate other, unlisted factors into this calculation."  *Vogt*, 963 F.3d at 763–64.  If the parties were merely focusing on the "based on" language in this case, that would be the end of the Court's analysis.

Yet, State Farm does not focus on the "based on" language in this case, instead arguing that another term in the COI provision dictates an interpretation in its favor—"applicable rate class."  This term was the focus of the Northern District of California's decision in granting summary judgment to State Farm on a similar breach of contract claim on Form 94030's COI charge provision in the *Bally* case.  *See Bally v. State Farm Life Ins. Co.*, 536 F. Supp. 3d 495 (N.D. Cal. Apr. 28, 2021).  The *Bally* court had, as cited *supra*, previously denied summary judgment to State Farm on this claim focusing on the "based on" language.  In a second summary judgment motion, State Farm advanced other arguments on a more robust record, and the court concluded that the term "applicable rate class" unambiguously allowed State Farm to

consider factors outside of those specified in the contract in setting its COI rates.  *Id.* at 507–08 (concluding that the Policy "makes no promises about how the 'applicable rate class' will be developed, and certainly never promises that those rates will only be developed using mortality factors").  The court interpreted the word "applicable," along with the definition of "rate class" as "the underwriting class of the person insured" in the Policy definitions, to refer to the assignment of predetermined rate classes established through the underwriting process.[1]  *Id.*  In light of this language, the court found that Bally had failed to persuade it that a layperson would reasonably conclude otherwise.  The *Bally* court therefore concluded, "given that the Policy reflects that the applicable rate classes had already been developed," a layperson could not review the Policy and the table of maximum rates and conclude that State Farm was bound to develop its COI rates in a specific manner.  *Id.*  State Farm asks the Court to reach the same conclusion here.  The undersigned is not persuaded.

To embrace State Farm's argument, the Court would have to conclude that the Policy communicates to an ordinary lay policyholder that there are two distinct processes at issue in the COI charge provision—the pre-market development of COI rates and the post-market assignment of those rates to a given insured.  The Policy does not clearly separate these two processes.  Nor does it clearly express that COI ratemaking occurs only prior to market approval.  And most importantly, there is nothing textually in the COI rate provision that suggests the provision is limited to a description of the assignment of rates, as opposed to rate calculation itself.

---

[1] State Farm's witnesses address the meaning of the word "applicable" in the contract consistent with this interpretation.  (*See, e.g.*, Hendren Decl. [#104-11], at 5 (the word "applicable" presupposes an existing rate table and therefore "applicable rate class" cannot be referring to the rate development process")).)

In fact, the provision itself refers to the "adjust[ment] of rates for projected changes in mortality."  The plain meaning of the word "adjust" presupposes an alteration or recalculation of some kind, not simply an assignment of rates that require no further calculation.  *See, e.g.*, "Adjust," Webster's Ninth New Collegiate Dictionary 57 (9th ed. 1991) ("to bring to a more satisfactory state: rectify"); "Adjust," Cambridge Dictionary Online ("to change something slightly . . . ."), available at https://dictionary.cambridge.org/dictionary/english/adjust (last visited Mar. 10, 2022).

For the COI charge provision to be so limited by its text, there would need to be additional language referencing rate assignment.  But no such language appears in the contract.  Yet State Farm repeatedly inserts the word "assign" when describing the Policy language to advance its contractual interpretation throughout its briefing.  (Summ. J. Mtn. [#105], at 8, 12 (the specified characteristics are used "to *assign*" an individual's monthly COI rate under any specific policy); *id.* at 9 (the plain language of the Policy "simply and accurately describes how State Farm *assigns* individual [COI] rates to each Insured each month"); *id.* at 12 (the specified factors are "the only factors State Farm considers when *assigning* an Insured's [COI] rate from its pre-existing tables"); *id.* at 18 (COI rates are "then *assigned* to individual Insureds 'based' on those factors") (emphasis added).)

Finally (and tellingly), despite arguing that there pre-market ratemaking is separate from rate assignment, State Farm has not argued in its briefing that it only loaded its rates with profits and expenses during the pre-market rate development and through "the applicable rate class" factor.  Page does not dispute the fact that State Farm has a process by which it develops its rate classes, such as the rate class given to Page, "Standard Rate Class—Male Non-Tobacco" for Page.  (Policy [#72], at 27, 29.)  Page alleges that State Farm used the rate class to develop its

pricing mortality rates and subsequently loaded these rates to account for its profits and expenses. Nothing in the contractual language itself supports State Farm's interpretation that it has discretion to consider such factors as its profits and expenses at all stages and in all aspects of its ratemaking.

In summary, in looking solely to the text of the contract, whether one focuses on the "based on" language or the phrase "applicable rate class," the Policy is subject to more than one reasonable interpretation. And, as the *Jaunich* court found in reaching the same conclusion, which provision State Farm focuses on in seeking summary judgment is "immaterial," as the substance of Page's claim "does not hang solely on either claim," but rather whether the contract as a whole unambiguously allows State Farm to load profits and expenses into its COI rates. *Jaunich v. State Farm Life Ins. Co.*, No. 20-1567, 2021 WL 5054461, at *2 (D. Minn. Nov. 1, 2021) (applying Minnesota law and denying summary judgment to State Farm). Based purely on a textual analysis of the relevant contractual language, the undersigned cannot say that State Farm is entitled to summary judgment because the only reasonable interpretation of the contract is that it is describing the process by which State Farm assigns policyholders a COI rate (rather than the ratemaking process itself). State Farm seems to concede as much by urging the Court to consider its voluminous extrinsic summary-judgment evidence, which it claims demonstrates that its interpretation comports with commercial and industry practice in the insurance business and the expectations of state insurance regulators. If its textual interpretation were the only reasonable one, it would not be necessary to consider the extrinsic evidence.

**b.** **State Farm's extrinsic evidence on the commercial context of the Policy is contested and does not conclusively establish that its interpretation of the COI charge provision is the *only* reasonable construction of the contract.**

In construing the contract, to aid the Court's textual analysis, State Farm asks the Court to consider declarations, expert reports, and accompanying exhibits from economists, actuaries, and insurance professionals familiar with the pricing and sale of universal life policies generally, State Farm's underwriting process specifically, and how this Policy was explained and sold to customers. As previously noted, Texas law does permit the consideration of the "commercial context" in which the parties were operating when negotiating or entering into a contract in determining whether a contract is susceptible to one or more interpretations or is unambiguous as a matter of law. *Farmers Group, Inc. v. Geter*, 620 S.W.3d 702, 710 (Tex. 2021). But again, such extrinsic evidence of commercial context and surrounding circumstances cannot supplant the requirement that the interpretation of a contract remain tethered to its language. *See Endeavor Energy Res.*, 615 S.W.3d at 148 (extrinsic evidence cannot be used to justify interpreting contractual language to "say what it unambiguously does not say") (internal quotation and citation omitted); *URI, Inc. v. Kleberg Cty.*, 543 S.W.3d 755, 757 (Tex. 2018) (consideration of surrounding facts and circumstances only appropriate "to aid the interpretation of [a contract's] language").

The extrinsic evidence that State Farm submitted in support of its motion for summary judgment, when considered alongside the extrinsic evidence submitted by Page, does not conclusively establish that its interpretation of the COI charge provision is the only reasonable construction of the contract. The COI charge provision is therefore not unambiguous as a matter of law, and State Farm is not entitled to summary judgment.

State Farm's extrinsic evidence consists of declarations and expert reports from Mary Jo Hudson, former Director of the Ohio Department of Insurance; Amy Prestegaard, a Life/Health New Business and Service Director for State Farm; Ronald Webb, an independent contractor for State Farm who sold the Policy to consumers; Alan R. Hendren, the Assistant Vice President of State Farm's actuarial group; Rebecca Kirk Fair, an economist and consultant on consumer behavior and understanding; and Craig Reynolds, State Farm's actuarial expert, among other testimony and documents. These experts and witnesses have each issued opinions on the interpretation of the COI charge provision based on their individual professional experience and expertise. These opinions collectively stand for the following propositions:

- The pricing of a universal life insurance policy like Form 94030 involves two distinct processes—the development of an underlying policy rate structure and the assignment of a COI rate to a given insured (Hudson Report [#104-3], at 9; Hendren Decl. [#104-11], at 4–5);

- In pricing its universal life policies, State Farm's actuaries considered various actuarial, regulatory, and competitive considerations (such as "expenses," "commissions," and "profit margins") that would allow it to achieve the company's financial objectives, which include providing promised benefits to policyholders (Hendren Decl. [#104-11], at 9–10, 21);

- The underwriting process by which an insured is assigned a rate class takes into account different life expectancies for certain groups, such as male versus female, smoker versus non-smoker, and health history (Hudson Report [#104-3], at 19; Kirk-Fair Report [#108-5], at 36);

- Once an insured's rate class is determined, the insured's COI rate is calculated from preexisting COI rate tables (Prestegaard Decl. [#104-6], at 6);

- The COI charge provision in the Policy does not describe the actuarial process by which an insurer develops its rates but rather identifies the criteria unique to the insured that will be used in assigning that individual a COI rate for each month over the life of the Policy (Hudson Report [#104-3], at 9; Prestegaard Decl. [#104-6], at 3);

- In marketing the Policy to the public, sales agents would typically explain that the monthly deductions from a policyholder's Account Value generally took into account State Farm's costs of doing business, including operating expenses and

other expenses and profit, and that these rates were predetermined prior to marketing the policies (Webb Decl. [#104-9], at 5);

- A rational regulator would view the language in the Policy's COI charge describing policyholder characteristics "as explaining to the policyholder how a rate from the Company's existing schedule of rates will be assigned to them" (Hudson Report [#104-3], at 30);

- The Texas Department of Insurance disapproved a prior version of the Policy in 1993, raising a series of issues, including several related to COI rates, but after revisions were made ultimately approved Form 94030, without ever expressing concern about whether the Policy terms accurately reflected the underwriting process (*Id.* at 26–31);

- A policy that used factors pertaining only to the insured's mortality risk and did not take into account the insurer's operating costs, expenses, reserve requirements, and other revenue needs would not satisfy established regulatory expectations, be profitable for the insurer, or result in a competitive product (*Id.* at 10; Hendren Decl. [#104-11], at 18–19); and

- State Farm's development of its COI rates is consistent with the guidance set forth in the Actuarial Standards of Practice (ASOP), general industry practice, and sound financial management practices (Reynolds Report [#108-6], at 28–43).

Taken together, these opinions establish that the pricing of universal life insurance policies is a complex actuarial process that takes into consideration a variety of factors in developing rate classes and calculating the cost of insurance. These opinions also stand for the proposition that the consideration of profits and expenses in developing rate classes and calculating the cost of insurance would not deviate from common practice with the insurance industry or national actuarial standards. Additionally, these opinions establish that State Farm intended all along to do just that in pricing Form 94030. What these opinions do not address, however, is why, regardless of what individual sales agents claim they told potential policyholders, the Policy did not clearly disclose what State Farm was doing.

Page's actuarial expert, Witt, offers competing testimony regarding the commercial context of the sale of Universal Life insurance policies, and the testimony undermines State

Farm's argument that its interpretation of the Policy is the only reasonable one. Witt's rebuttal report agrees with State Farm's experts that it is common industry practice to consider a whole host of factors in pricing insurance policies, but Witt further states that it is also common industry practice to either (1) specifically disclose all the factors considered and used in determining COI rates, or (2) include qualifying language, not present in Form 94030, to indicate that an identified list of factors is not exhaustive. (Witt Rebuttal Report [#116-2], at 4.) Witt's report provides examples of such language in insurance policies that he has reviewed over the course of his career. (*See id.* at 5 ("The Monthly COI Rates . . . are set by Us based on investment earnings, mortality, expenses, persistency, capital and reserve requirements, taxes and profits."); *see also id.* ("The COI rate for each death benefit coverage layer is based on multiple factors, including, but not limited to, the insured's sex, issue age, attained age, policy year, payment class and face amount. We may change the COI rates *for any reason* . . . .").)

It is Witt's position that State Farm could have considered profits and expenses in calculating its COI rates and complied with actuarial standards, just as it could have considered mortality factors alone and done so. (*See id.* at 7.) But this case is not about how an insurer is permitted to price its products in the first instance or what is the most prudent or profitable business practice for an insurer, but whether State Farm engaged in conduct that is inconsistent with language in the Policy in order to cover its costs and meet its profit goals. (*Id.* at 4–5.) Per Witt, neither ASOP nor any other insurance standard permits or approves of an insurer engaging in conduct that violates the terms of its agreements with policyholders. (*Id.* at 7–10.) State Farm cannot point to its own conduct, conduct that is alleged to be in breach of the contract, as evidence supporting its interpretation of the Policy.

In summary, the extrinsic evidence submitted by State Farm does not conclusively establish that State Farm's interpretation of the COI charge provision is the only reasonable one. An ordinary policyholder could reasonably interpret the COI charge provision as limiting State Farm to considering only those specified factors related to an insured's mortality in calculating the COI.

**c.    None of State Farm's other arguments with respect to the COI charge provision entitle it to summary judgment.**

State Farm further argues that even if Page could prove that State Farm breached the Policy by violating the COI charge provision, it would still be entitled to summary judgment because Page cannot offer proof of damages.  In making this argument, State Farm relies on its *Daubert* challenge of Page's damages expert, Witt, arguing that Witt's proposed testimony should be excluded because of the unreliability of his damages model.  The undersigned has already rejected State Farm's arguments to this effect and denied its motion to exclude Witt. (*See* Order Denying *Daubert* Motion [#137]).  State Farm is not entitled to summary judgment on Page's breach of contract claim based on its objections to Witt's expert testimony.

 Finally, State Farm argues (and the *Bally* court agreed) that an additional reason to grant it summary judgment is that there is no evidence that Page or any other proposed class member actually understood the language in the Policy to refer to or limit the process by which State Farm developed its underlying rate structure and rate tables.  *See Bally*, 536 F. Supp. 3d at 503 ("Nor is there any evidence that any policyholders actually understood the Monthly COI Rates provision as Bally urges.").  The subjective understanding of the contract by Page and other class members is not relevant to the Court's analysis of whether the COI rate provision is unambiguous as a matter of law.  Determining the intent of the parties by extrinsic evidence is an issue "uniquely within the realm of the trier of fact" because it depends heavily upon the

21

credibility of the witnesses and the weight of the evidence. *Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 434 (Tex. 1986). State Farm is not entitled to summary judgment because the text of the Policy and the extrinsic evidence properly considered by the Court establish that there is more than one reasonable construction of the contract at issue.

### iii.   <u>Count II – Breach of Contract on Expense Charge Claim</u>

The Court should also deny State Farm's motion for summary judgment as to Count II. Page's theory as to this claim is that, by loading monthly COI rates with undisclosed and unauthorized expenses, State Farm impermissibly deducted expenses from the Account Values of Page and other class members in amounts in excess of the fixed expense charges expressly authorized by the Policies. (First Am. Compl. [#72], at ¶ 68.) State Farm argues that the Policy's monthly expense charge of $5.00 and 5% premium expense charge are not a cap on the expenses State Farm may consider in pricing its cost of insurance and do not otherwise limit its pre-market pricing process (discussed *supra*). State Farm further contends that Count II is really just a repackaging of Count I, derivative to and dependent upon the challenge to the COI charge rate provision. Page clarifies in his response to State Farm's motion that Count II only concerns the $5 monthly expense charge and does not relate to the 5% premium expense charge. Additionally, the undersigned rejects State Farm's argument that Counts I and II are duplicative or derivative of one another; the $5 monthly expense charge provision is a distinct contractual provision specifically addressing expenses and is an additional basis for breach of contract separate from Page's allegations in Count I.

Interpreting the text of the expense charge provision is simple. The text states that "[t]he monthly expense charge is $5.00." (Policy [#72], at 38.) State Farm asks the Court to conclude that this reference to expenses in the Policy cannot be read to constitute an independent promise

about what expenses may be considered in the ratemaking process or in developing State Farm's pricing as a whole.  The undesigned disagrees.

"Expense charge" is not defined anywhere in the Policy.  Nor is it clear from the Policy whether this charge is intended to be a cap on all monthly expenses or some other demarcated charge for some particular type of expense.  As the *Bally* court noted, "Had State Farm called it something else—something generic but unrelated to expense, like a $5.00 'monthly fee,' or something relating to expenses but limited in scope, like a $5.00 'monthly stamp expense charge'—State Farm would be on firmer footing."  *Bally*, 536 F. Supp. 3d at 509.  But because State Farm choose to call the charge a "monthly expense charge," policyholders could reasonably understand the provision to cover all monthly expenses.  *See id.* ("The class's interpretation . . . is therefore entirely reasonable, and possibly the only reasonable reading."); *see also Vogt*, No. 16-cv-04170-NKP (W.D. Mo. June 2, 2018), dkt. 335 (Order on Summ. J.) ("As a matter of law, this violated the language in the Policy stating that the expense charge would be $5.00 each month.").  In the same order granting State Farm summary judgment on Count I, the *Bally* court denied summary judgment on Count II, concluding that the monthly expense charge provision was at least ambiguous as to whether it limited the deduction of monthly expenses to the disclosed $5.00 monthly charge.  536 F. Supp. 3d at 509.  Bally subsequently moved for summary judgment on behalf of the class on Count II and prevailed. *Bally v. State Farm Life Ins. Co.*, No. 18-CV-04954-CRB, 2022 WL 562714, at *3 (N.D. Cal. Feb. 24, 2022) (rejecting State Farm's argument that nothing in the policy prohibits State Farm from including expense loads in developing the cost of insurance rates).

The undersigned agrees with the *Bally* court that the $5.00 monthly expense charge provision could be reasonably understood by an average policyholder "as conveying that the

only part of the monthly deduction that went to covering State Farm's expenses" was the $5.00 charge. *Id.* Nothing in State Farm's extrinsic evidence of the commercial context of the transaction establishes otherwise. Because Page's interpretation of the contract is reasonable, State Farm's interpretation cannot be the only reasonable construction of the Policy.

Finally, the Court should reject State Farm's argument that it is entitled to summary judgment because there is no evidence that it did not fully cover its expenses through the $5.00 expense charge and the 5% premium expense charge. (*See* Stiroh Decl. [#108-4], at ¶¶ 88–89 (challenging Witt's damages model and concluded that State Farm's two expense charges sufficiently covered its anticipated expenses).) State Farm's Assistant Vice President, Alan Hendren, admits in his deposition that State Farm considered expenses in the development of its underlying COI rates. (Hendren Decl. [#104-11], at 21). State Farm's assertion that in doing so, that it did not exceed the disclosed $5.00 monthly expense charge and the 5% premium expense charge, is a question to be addressed by the factfinder at trial and through damages modeling. State Farm is not entitled to summary judgment on Count II.

## B.    Count III – Conversion

State Farm also seeks summary judgment on Page's claim of conversion. Page's conversion claim alleges that State Farm intentionally and substantially interfered with its property interest by deducting COI charges and expense charges from his Account Values in excess of amounts permitted by the terms of the Policy. (First Am. Compl. [#72], at ¶¶ 72–73.) Page further alleges that by doing so, State Farm assumed and exercised dominion and control over, and misappropriated and misapplied specific funds placed in its custody for the benefit of the class members without authorization or consent. (*Id.* at ¶¶ 73–74.) Page's conversion claim provides a vehicle for obtaining punitive damages on behalf of the class. (*Id.* at ¶ 113.) Under

Texas law, a plaintiff is entitled to punitive damages for conversion if he proves by clear and convincing evidence that the conversion was achieved through fraud, malice, or gross negligence.  *In re Barney's Boats of Chicago, Inc.*, 616 F.2d 164, 166 (5th Cir. 1980); *Dillard Dep't Stores, Inc. v. Silva*, 148 S.W.3d 370, 372–73 (Tex. 2004) (citing Tex. Civ. Prac. & Rem. Code § 41.003(a)).  Punitive damages are not available for breach of contract.  *Safeshred, Inc. v. Martinez*, 365 S.W.3d 655, 659 (Tex. 2012).

The tort of conversion involves the unauthorized and unlawful assumption and exercise of dominion and control over the personal property of another to the exclusion of and inconsistent with the other's superior rights in the property.  *See Frankoff v. Norman*, 448 S.W.3d 75, 85 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (listing elements).  The essence of a conversion claim is not the actual taking of property by the defendant but the wrongful deprivation of property from a person who is entitled to possession of the property.  *Branham v. Prewitt*, 636 S.W.2d 507, 510 (Tex. App.—San Antonio 1982, writ ref'd n.r.e.).  There must be such active interference with the owner's right of control to deprive the owner of the free use and enjoyment of the owner's property.  *Id.*

State Farm advances two arguments regarding Page's conversion claim: (1) the economic-loss rule bars the claim, and (2) money cannot be the subject of a conversion claim. First, the fact that Page's conversion claim concerns money is not a bar to the claim.  Texas law permits claims based on the conversion of money "when its identification is possible and there is an obligation to deliver the specific money in question or otherwise particularly treat specific money."  *Hernandez v. Sovereign Cherokee Nation Tejas*, 343 S.W.3d 162, 175 (Tex. Civ. App.—Dallas 2011, no pet.) (internal quotation and citation omitted).  Money is only subject to conversion, however, "when it can be identified as a specific chattel and not where an

indebtedness may be discharged by the payment of money generally." *Paschal v. Great W. Drilling, Ltd.*, 215 S.W.3d 437, 456 (Tex. App.—Eastland 2006, no pet.).  In other words, in Texas, an action for conversion of money will only lie where the money is (1) delivered for safekeeping; (2) intended to be kept segregated; (3) substantially in the form in which it is received or an intact fund; and (4) not the subject of a title claim by its keeper. *Newsome v. Charter Bank Colonial*, 940 S.W.2d 157, 161 (Tex. App.—Houston [14th Dist.] 1996, writ denied).

In another context, a Texas Court of Appeals has referred to "[t]he right to receive insurance proceeds payable at a future but uncertain date" as "property" of the nature of a "chose in action which matures at the death of the insured." *Davis v. Tenn. Life. Ins. Co.*, 562 S.W.2d 868, 871 (Tex. App.—Houston [1st Dist.] 1978, writ ref'd n.r.e.).  Applying this principle, another Texas appellate court concluded that the proceeds of a life insurance policy remained property subject to conversion, as opposed to a general debt that could be discharged through the payment of money, even when the policies had matured through an insured's death. *Paschal*, 215 S.W.3d at 456.  In doing so, the court appears to have presumed the life insurance proceeds were subject to conversion while still in possession of insurer.

Page owns his Policy and the funds in his Account Value.  Page delivered the funds to the custody of State Farm for his and his beneficiary's benefit and for its safekeeping.  Page alleges that State Farm deducted and misappropriated a portion of those funds in contravention to the terms of the Policy.  Page has presented a damages model that identifies the specific funds converted.  Page can theoretically bring a claim for conversion regarding the misappropriation of the funds in his Account Value, even though the claim concerns the conversion of money.

The economic-loss rule, on the other hand, bars Page's claim for conversion.  The economic-loss rule "generally precludes recovery in tort for economic losses resulting from the failure of a party to perform under a contract." *Lamar Homes, Inc. v. Mid–Continent Cas. Co.*, 242 S.W.3d 1, 12 (Tex. 2007) (citing *Sw. Bell. Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494–95 (Tex. 1991)).  In determining whether a tort claim is merely a repackaged breach of contract claim, a court must consider: (1) whether the claim is for breach of duty created by contract, as opposed to a duty imposed by law; and (2) whether the injury is only the economic loss to the subject of the contract itself.  *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 45–47 (Tex. 1998); *see also DeLanney*, 809 S.W.2d at 494–95.

Page argues that the economic-loss rule does not preclude his conversion claim because this claim is premised on an independent tort duty not to appropriate another's funds.  Even if Page could establish as much, his claim still fails as a matter of law because he has not provided evidence that his injury stemming from the misappropriation of funds is distinct from his economic loss under the contract.  Page has not identified any loss separate and apart from the economic loss flowing from the alleged breach of contract.  *Compare ConocoPhillips Co. v. Koopmann*, 542 S.W.3d 643, 666–67 (Tex. App.—Corpus Christi–Edinburg, 2016, pet. granted) (applying economic-loss rule to bar conversion claim concerning failure to pay royalties under valid and enforceable lease agreement, as loss was limited to contractual benefit of lease itself— royalties) *with Montgomery Ward & Co. v. Scharrenbeck*, 204 S.W.2d 508, 510 (Tex. 1947) (rejecting economic-loss rule's application where plaintiff lost not only contractual benefit of working water heater but also his entire home).

Page points to decisions in the other Form 94030 cases across the country that have allowed conversion claims to proceed, holding they are not barred by the economic-loss rule.

Yet these decisions are based on the law of other states, and a review of the cases cited by both parties confirm that various jurisdictions have developed their economic-loss doctrines differently. *See Vogt v. State Farm Life Ins. Co.*, No. 2:16-CV-04170-NKL, 2017 WL 1498073, at *2–3 (W.D. Mo. Apr. 26, 2017) (denying motion to dismiss conversion claim under Missouri law because Missouri Supreme Court has limited economic-loss doctrine to its traditional application to police boundaries between warranty claims sounding in contract and negligence), *affirmed Vogt*, 963 F.3d at 774; *Bally*, 2019 WL 3891149, at *4 (denying motion to dismiss conversion claim under California law because California distinguishes between tort claims based on misappropriation and contract claims based on overcharges). *See also Jaunich v. State Farm Life Ins. Co.*, No. 20-1567 (PAM/BRT), 2020 WL 6712219, at *2 (D. Minn. Nov. 16, 2020) (distinguishing Minnesota from Missouri law and concluding that the plaintiff had failed to sufficiently plead that the alleged conversion is separate from the alleged breach or that the respective damages would be distinct).

Page has not directed the Court to any authority from Texas supporting his assertion that the Texas Supreme Court would recognize an independent conversion claim based on the wrongful exercise of dominion and control over Page's funds, despite the fact that he has not identified any additional loss beyond the economic expectations of the contract. Accordingly, applying the general standards for conversion claims in Texas, the Court concludes that State Farm is entitled to summary judgment on Page's conversion claim and his accompanying request for punitive damages.

## C.    Counts IV through VII – Remaining Claims

State Farm seeks summary judgment on Page's remaining claims—breach of the duty of good faith and fair dealing (Count IV), violations of Section 541 of the Texas Insurance Code

(Count V), violation of Section 17.46 of the DTPA (Count VI), and declaratory and injunctive relief (Count VII).  The undersigned notes that Page did not seek certification of Counts IV, V, or VI as a class action.  (*See* Mtn. for Class Cert. [#80-1], at 13–14.)  Therefore these claims only pertain to Page individually.

State Farm argues that all of these claims rest on State Farm allegedly misrepresenting that the monthly COI rates would be established using only mortality factors.  Yet, State Farm believes (as discussed regarding the breach of contract claims) that it has demonstrated that the Policy unambiguously demonstrates that it is permitted to consider non-mortality factors in calculating the applicable rate class later used as one of the three COI factors specified in the contract.  As the undersigned has already concluded that State Farm's construction of the contract is not the only reasonable one, this is not a basis for granting summary judgment on Page's remaining claims.

The only additional argument State Farm advances regarding these claims is, similar to its attack on Page's conversion claim, that Page is attempting to shoehorn a breach of contract action into a statutory misrepresentation case.  In addition to the economic-loss doctrine distinguishing between contract and tort claims, the Texas Supreme Court has clearly articulated that an allegation of breach of contract—without more—does not constitute a false, misleading, or deceptive action such as would violate Section 17.46 of the DTPA.  *Crawford v. Ace Sign, Inc.*, 917 S.W.2d 12, 14 (Tex. 1996).  Page responds that State Farm engaged in unfair and deceptive practices in violation of the DTPA by providing him with "untrue and misleading illustrations" regarding the Policy.  (Resp. [#120], at 39.)  State Farm's reply argues that Page offers no evidence of any such misrepresentations that do not turn on the validity of his contract claims.  (Reply [#123], at 24.)  The undersigned disagrees.

State Farm's own summary judgment evidence describes the process of marketing and selling its universal life insurance policies as "high-touch," as it included face-to-face meetings with potential policyholders and the provision of illustrations of projected benefits generated by a computer program. (White Decl. [#104-10], at 5–7; Kirk-Fair Decl. [#99-6], at ¶¶ 14–28). Additionally, State Farm's illustrations provided to policyholders refer to COI charges as "mortality charges." (Page Policy Illustration [#84-1], at 135–37 (referring to "interest rates and mortality charges" throughout illustration).) If State Farm is ultimately liable for breach of contract, and its illustrations provided to Page and other class members communicated that they would not be accounting for their profits and expenses in deducting a policyholder's monthly COI charge, State Farm could also be liable for statutory misrepresentation. Similarly, Page's extra-contractual claims under the Texas Insurance Code rise and fall with his breach of contract claims. *See State Farm Lloyds v. Page*, 315 S.W.3d 525, 532 (Tex. 2010) ("[T]o the extent the policy affords coverage, extra-contractual claims remain viable.").

State Farm has not articulated any other basis for its entitlement to summary judgment on Page's additional claims, such as his claim of breach of good faith and fair dealing. Accordingly, the Court should deny State Farm's motion for summary judgment as to Counts IV through VII.

## D.    Statute of Limitations

Finally, State Farm argues that the four-year statute of limitations period for breach of contract claims bars Counts I and II and the two-year statute of limitations period for conversion and the DTPA bar those claims. *See* Tex. Civ. Prac. & Rem. Code §§ 16.003(a) (conversion claims subject to two-year statute of limitation), 16.051 (breach-of-contract claims subject to four-year residual statute of limitation), 17.565 (DTPA claims subject to two-year limitations

period)).   State Farm does not make arguments regarding the limitations period applying to Page's Texas Insurance Code claim or his claim of breach of the duty of good faith and fair dealing, but those claims are also subject to two-year limitations periods.  *See* Tex. Civ. Prac. & Rem. Code § 16.003(a); Tex. Ins. Code. § 541.162(a).

Under Texas law, "[c]auses of action accrue and statutes of limitations begin to run when facts come into existence that authorize a claimant to seek a judicial remedy." *Exxon Corp. v. Emerald Oil & Gas Co., L.C.*, 348 S.W.3d 194, 202 (Tex. 2011).  Therefore, "a cause of action generally accrues when a wrongful act causes some legal injury, even if the fact of injury is not discovered until later, and even if all resulting damages have not yet occurred." *Valdez v. Hollenbeck*, 465 S.W.3d 217, 229 (Tex. 2015).  Texas courts often refer to this as the "legal injury rule." *See, e.g.*, *Schlumberger Tech. Corp. v. Pasko*, 544 S.W.3d 830, 834 (Tex. 2018).

Breach of contract claims generally accrue at breach.  *Stine v. Stewart*, 80 S.W.3d 586, 592 (Tex. 2002).  State Farm argues that Page acquired his policy in 1997 and deductions from his Account Value began almost immediately.  Because Page suffered legal injury at the time of the first deductions, and could have sought legal remedy, State Farm argues his claims are time-barred.

Texas recognizes the "discovery rule" as "a very limited exception" to the legal injury rule. *Wagner & Brown, Ltd. v. Horwood*, 58 S.W.3d 732, 734 (Tex. 2001) (internal quotation and citation omitted).  This "exception operates to defer accrual of a cause of action until the plaintiff knows or, by exercising reasonable diligence, should know of the facts giving rise to the claim." *Id.*  When applying the discovery rule, the question is not whether the plaintiff has actual knowledge of a particular claim or cause of action but whether "the plaintiff has 'knowledge of facts which would cause a reasonable person to diligently make inquiry to determine his or her

legal rights.'"  *Tex. Soil Recycling, Inc. v. Intercargo Ins. Co.*, 273 F.3d 644, 649 (5th Cir. 2001) (internal quotation and citation omitted).  The rule applies generally where the nature of the injury incurred is "inherently undiscoverable" and the evidence of injury is "objectively verifiable."  *Computer Assoc. Int'l, Inc. v. Altai, Inc.*, 918 S.W.3d 453, 456 (Tex. 1996).  "An injury is inherently undiscoverable if it is, by its nature, unlikely to be discovered within the prescribed limitations period despite due diligence."  *Wagner & Brown*, 58 S.W.3d at 734–35.  Chapter 541 of the Texas Insurance Code and the DTPA have codified the discovery rule into their limitations provisions.  Tex. Bus. & Comm. Code § 17.565; Tex. Ins. Code § 541.162(a)(2).

Page argues that the discovery rule applies here to toll the accrual of his claims, as no ordinary policyholder could have discovered that State Farm was improperly loading its COI rates with profits and expenses without the help of an attorney and actuarial expert.  State Farm replies that there is no evidence that Page exercised diligence with respect to his claims by inquiring about the COI charges reflected in his statements and that the discovery rule does not apply to breach of contract claims.

As an initial matter, the Court should reject State Farm's argument that the discovery rule is by its nature inapplicable to claims based on breach of contract.  "The discovery rule may apply to a breach of contract claim, but 'those cases should be rare, as diligent contracting parties should generally discover any breach during the relatively long four-year limitations period provided for such claims.'"  *Clear Lake Ctr., L.P. v. Garden Ridge, L.P.*, 416 S.W.3d 527, 543 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (quoting *Via Net v. TIG Ins. Co.*, 211 S.W.3d 310, 315 (Tex. 2006)).  Page argues this is one such rare case where even the exercise of due diligence would not result in the discovery of breach by an ordinary policyholder.

The parties disagree as to who bears the burden of proof on the application of the discovery rule.  In Texas, a defendant who moves for summary judgment on the affirmative defense of limitations has the burden to: (1) conclusively prove when the cause of action accrued, and (2) negate the discovery rule, if it has been asserted and applies.  *See Via Net*, 211 S.W.3d at 313; *Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 846 (Tex. 2005); *Burns v. Thomas*, 786 S.W.2d 266, 267 (Tex. 1990).  State Farm responds that Page, as the party with the ultimate responsibility for proving the application of the discovery rule at trial, bears the burden of raising a genuine issue of material fact as to its application to survive summary judgment.  *See Silo Rest. Inc. v. Allied Prop. & Cas. Ins. Co.*, 420 F. Supp. 3d 562, 575 (W.D. Tex. 2019) ("Despite Texas law placing the summary judgment burden on defendants to negate the discovery rule, plaintiffs have the burden to establish each element of asserted defenses to the statutes of limitations as a matter of federal procedural law."); *see also FDIC v. Shrader & York*, 991 F.2d 216, 220 (5th Cir. 1993) (declining to place burden on defendant to negate the discovery rule in summary-judgment posture).  *But see Tex. Soil Recycling, Inc. v. Intercargo Ins. Co.*, 273 F.3d 644, 649 (5th Cir. 2001) (placing burden on defendant to negate the discovery rule on motion for summary judgment).

Despite this conflict in Fifth Circuit precedent, the Court should follow the approach of *Silo Restaurant*, the district court case cited by State Farm.  Page has the ultimate burden of proof on the discovery rule at trial.  *See Rhone–Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 n.3 (Tex. 1999); *Woods v. William M. Mercer, Inc.*, 769 S.W.2d 515, 518 (Tex. 1988).  Page therefore also has the burden to raise a genuine issue of material fact on the discovery rule's application to survive summary judgment in federal court.  Although the Court should adopt the

evidentiary standard argued by State Farm, it should nonetheless deny State Farm's motion for summary judgment on limitations, as Page has satisfied this burden.

The undersigned agrees with Page that there is sufficient evidence from which a factfinder could conclude that his asserted legal injury in this lawsuit is inherently undiscoverable, regardless of any exercise of due diligence.  Multiple witnesses for State Farm testified in their depositions that State Farm does not disclose its mortality assumptions or the expenses underlying its COI rates to its policyholders; policyholders would only be on notice as to what the COI rate represents based on "what the policy form language tells them."  (Streily Dep. [#84-1], at 72; Holzbauer Dep. [#84-1], at 405.)  Moreover, as already noted, State Farm's illustrations provided to policyholders refer to COI charges as "mortality charges," a representation that supports Page's assertion that an ordinary policyholder would reasonably construe the contract (and any COI deductions in policy statements) as tethered to the specified factors in the contract (and not State Farm's profit and expense considerations).  (Page Policy Illustration [#84-1], at 135–37.)  Although several of State Farm's witnesses assert that the bases for the calculation of COI rates were disclosed to policyholders at various stages of the marketing and sale of the Policy (*see* Prestegaard Decl. [#104-6], at ¶ 9; Webb Decl. [#104-9], at 5), these statements are contradicted by the other evidence cited herein, generating a fact issue for the jury.

Moreover, in addition to the discovery rule, accrual may be delayed where the circumstances demonstrate the fraudulent concealment of information necessary to evaluate whether contractual rights have been violated.  *Wagner & Brown*, 58 S.W.3d at 736–37 (explaining that fraudulent concealment is a distinct concept from the discovery rule concerning the misrepresentation or concealment of facts forming the basis of a legal injury).  If the jury

concludes that State Farm intentionally concealed its incorporation of profits and expenses in its calculation of COI rates by making misrepresentations in policy illustrations, for example, this equitable rule would be a separate basis for delaying the accrual of class members' claims.

Finally, even if the discovery rule did not apply, Page's theory of his case is that each monthly deduction containing excessive COI charges, including hidden expense loads, was a separate breach of the Policy.  So at the very least, the statutes of limitations do not bar claims for overcharges occurring within four years prior to filing of the complaint.  In sum, the Court should deny State Farms motion for summary judgment on the governing statutes of limitations.

## V.  Conclusion and Recommendation

Having considered State Farm's motion, the responses and replies thereto, oral argument, the record, and governing law, the undersigned hereby **recommends** that Defendant State Farm Life Insurance Company's Motion for Summary Judgment [#105] be **GRANTED IN PART AND DENIED IN PART** as follows: State Farm is only entitled to summary judgment on Page's claim of conversion (Count III).  All other claims should proceed to trial.

## VI.  Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested.  Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The party shall file the objections with the Clerk of Court and serve the objections on all other parties.  A party filing objections must specifically identify those findings, conclusions or recommendations to which

objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections.   A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court.   *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root*, *Inc.,* 200 F.3d 335, 340 (5th Cir. 2000).   Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the un-objected-to proposed factual findings and legal conclusions accepted by the district court.   *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

SIGNED this 10th day of March, 2022.


ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE