**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | |
|---|---|
| ANNA GONZALEZ and RONALD K. PAGE, on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br>  v.<br><br>STATE FARM LIFE INSURANCE COMPANY,<br><br>    Defendant. | Civil Action No. SA-20-CV-617-FB |

**PLAINTIFF'S OBJECTIONS TO MAGISTRATE JUDGE'S REPORT AND**
**RECOMMENDATION THAT SUMMARY JUDGMENT BE GRANTED AGAINST**
**PLAINTIFF ON HIS CONVERSION CLAIM**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ......................................................................................................... 1

BACKGROUND ......................................................................................................... 2

    A.   Plaintiff's Claims ............................................................................................ 2

    B.   The Magistrate Judge's Report and Recommendation ...................................... 4

ARGUMENT ............................................................................................................... 6

    A.   The Economic Loss Doctrine Does Not Apply to Intentional Misappropriations In Violation of a Contract, As Compared to the Failure to Pay as Promised in a Contract. ... 6

    B.   Plaintiff's Injury Resulting from State Farm's Conversions Is Categorically Distinct from that Resulting from Its Contract Breaches. ............................................................ 12

CONCLUSION ........................................................................................................... 16

## **TABLE OF AUTHORITIES**

Cases

*Alleman v. State Farm Life Ins. Co.*,
  334 F. App'x 470 (3d Cir. 2009) .................................................................. 3

*Bates Energy Oil & Gas v. Complete Oilfield Servs.*,
  361 F. Supp. 3d 633 (W.D. Tex. 2019) .......................................... passim

*Bradley v. McKinzie*,
  226 S.W.2d 458 (Tex. Civ. App.—Eastland 1950, no writ) .................... 13

*Branham v. Prewitt*,
  636 S.W.2d 507 (Tex. App.—San Antonio 1982, writ ref'd n.r.e.) .......... 13

*City of Houston v. Petroleum Traders Corp*,
  261 S.W.3d 350 (Tex. App.—Houston [14th Dist.] 2008, no pet.) ............ 9

*ConocoPhillips Co. v. Koopmann*,
  542 S.W.3d 643 (Tex. App.—Corpus Christi 2016, pet. granted) ........ 9, 10, 11

*Cook v. John Hancock Life Ins. Co. (U.S.A)*,
  7:12-CV-00455, 2015 WL 178108 (W.D. Va. Jan. 14, 2015).................. 11

*D.S.A., Inc. v. Hillsboro Indep. Sch. Dist.*,
  973 S.W.2d 662 (Tex. 1998)...................................................................... 7

*Davidson v. Georgia-Pac., L.L.C.*,
  819 F.3d 758 (5th Cir. 2016) .................................................................... 6

*Eagle Oil & Gas Co. v. Shale Expl., LLC*,
  549 S.W.3d 256 (Tex. App.—Houston [1st Dist.] 2018, pet. dism'd) .................... 16

*Formosa Plastics Corp. USA v. Presidio Engineers & Contractors, Inc.*,
  960 S.W.2d 41 (Tex. 1998)...................................................................... 12

*In re Conseco Life Ins. Co. Life Trend Ins. Mktg. & Sales Practice Litig.*,
  920 F. Supp. 2d 1050 (N.D. Cal. 2013) .................................................... 3

*Jim Walter Homes, Inc. v. Reed*,
  711 S.W.2d 617 (Tex. 1986)...................................................................... 10

*LAN/STV v. Martin K. Eby Constr. Co.*,
  435 S.W.3d 234 (Tex. 2014)...................................................................... 7

*Life Ins. Co. of Virginia v. Murray Inv. Co.*,
  646 F.2d 224 (5th Cir. 1981) .................................................................... 14

*McCaig v. Wells Fargo Bank, N.A.*,
  788 F.3d 463 (5th Cir. 2015) .................................................................... 7

*McLeodUSA Telecomms. Servs., Inc. v. Qwest Corp.*,
  469 F. Supp. 2d 677 (N.D. Iowa 2007)...................................................... 13

*McVea v. Verkins*,
  587 S.W.2d 526 (Tex. Civ. App.—Corpus Christi 1979, no writ) ............ 9

*Montgomery Ward & Co. v. Scharrenbeck*,
  204 S.W.2d 508 (Tex. 1947) ........................................................................... 9, 11

*MSMTBR, Inc v. Mid–Atl. Fin. Co.*,
  No. 01-12-00501-CV, 2014 WL 3697736
  (Tex. App.—Houston [1st Dist.] July 24, 2014, no pet.) ...................................... 13, 14

*Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Care Flight Air Ambulance Serv., Inc.*,
  18 F.3d 323 (5th Cir. 1994) ...................................................................... 7, 10, 13

*Powell v. Forest Oil Corp.*,
  392 S.W.2d 549 (Tex. Civ. App.—Texarkana 1965, no writ) ..................................... 9

*Rhodes v. Bank of Am., N.A.*,
  No. EP-20-CV-281-KC, 2021 WL 3549160 (W.D. Tex. Feb. 10, 2021) ....................... 8

*Sharyland Water Supply v. City of Alton*,
  354 S.W.3d 407 (Tex. 2011) ......................................................................... 7

*SPP SWD Burns Ranch, LLC v. Kent*,
  No. 5:14-CV-88, 2015 WL 12841097 (S.D. Tex. Jan. 8, 2015) .......................... passim

*Taylor v. Midland Nat'l Life Ins. Co.*,
  No. 4:16-cv-00140-SMR-HCA, 2016 WL 9454075 (S.D. Iowa July 29, 2016) .............. 11

*Vickery v. Tex. Carpet Co., Inc.*,
  792 S.W.2d 759 (Tex. App.—Houston [14th Dist.] 1990, writ denied ..................... 14

*Vogt v. State Farm Life Ins. Co.*,
  No. 2:16–cv–04170–NKL, 2018 WL 1747336 (W.D. Mo. Apr. 10, 2018) ............... 3, 15

*Vogt v. State Farm Life Ins. Co.,*,
  2017 WL 1498073 (W.D. Mo. Apr. 26, 2017) .............................................. 10, 11

<u>Rules</u>

Fed. R. Civ. P. 8 .................................................................................... 15

<u>Other Authorities</u>

89 C.J.S. Trover & Conversion § 7 .................................................................. 9

A Restatement (Third) of Intentional Torts?,
  48 Ariz. L. Rev. 1061 (2006) ...................................................................... 9

**<u>INTRODUCTION</u>**

Plaintiff Ronald K. Page ("Plaintiff") is the owner of a universal life insurance policy (the "Policy") issued and administered by Defendant State Farm Life Insurance Company ("State Farm"). The Policy provides both a death benefit and a savings account called the "Account Value" where policy owners' premiums are deposited and earn interest. Plaintiff asserts that State Farm takes more money from policy owners' Account Values for policy charges than the Policy permits, making State Farm liable for breach of contract and conversion of policy owners' money. State Farm filed a motion for summary judgment on each of Plaintiff's claims, contending the Policy should be interpreted to authorize its deductions. The Magistrate Judge issued a Report and Recommendation (Dkt. 143 ("R&R")) rejecting State Farm's reading of the Policy as the only reasonable one, and thus recommending that State Farm's motion be denied, except as to Plaintiff's conversion claim. The Magistrate Judge concluded Plaintiff's conversion claim was barred by Texas's economic loss doctrine.

Plaintiff respectfully objects to the Magistrate Judge's recommendation that summary judgment be entered against Plaintiff on his conversion claim. The Magistrate Judge first correctly (1) rejected State Farm's argument that the money in the Account Value could not be the subject of a conversion claim under Texas law, and (2) agreed that Plaintiff could establish each of the elements of a conversion claim: that the money in the Account Value was Plaintiff's property, that Plaintiff delivered it to State Farm for his and his beneficiary's benefit and for its safekeeping with instructions as set forth in the Policy for its proper handling, and that State Farm misappropriated Plaintiff's money by taking it out of Plaintiff's Account Value contrary to its authority.

Next, the Magistrate Judge considered the interplay between Plaintiff's claims for breach of contract and conversion, and correctly assumed that Plaintiff could establish that State Farm owed a duty in tort to not take Plaintiff's property in excess of its authority that was independent

1

of State Farm's contractual duties as set forth in the Policy. Despite this analysis, the Magistrate Judge concluded that Plaintiff's conversion claim was barred by the economic loss doctrine because Plaintiff was seeking the same *money damages* for his breach of contract and conversion claims. This was error. While Plaintiff's quantification of the damages is the same for both claims, the *injury* resulting from State Farm's conversions is categorically distinct from that arising from its contract breaches. Plaintiff requests that this Court reject the Magistrate Judge's recommendation to enter summary judgment against Plaintiff on his conversion claim and issue an order denying State Farm's motion for summary judgment on all of Plaintiff's claims.

## <u>BACKGROUND</u>

### A.    **Plaintiff's Claims**

Plaintiff is the owner of a State Farm Form 94030 universal life insurance policy. Unlike standard "term" life insurance, universal life insurance is designed to provide a lifetime death benefit to the insured plus a savings component, called the Account Value, that allows the policy owner to earn interest on their accumulated premiums over time. Dkt. 79-2 (Declaration and Report of Scott J. Witt ("Witt Dec.")), ¶¶ 18-27. The Policy authorizes State Farm to take a "Monthly Deduction" from the policy owner's Account Value comprised of two relevant component charges: the cost of insurance charge (the "COI Charge") and the $5.00 expense charge (the "Expense Charge"). *Id.*, Ex. B ("Policy") at 3, 9. The Policy requires State Farm to calculate the COI Charge component of the Monthly Deduction using monthly cost of insurance rates ("COI Rates"). The Policy provides that the COI Rates "for each policy year are based on the Insured's age on the policy anniversary, sex, and applicable rate class," and that "[s]uch rates can be adjusted for projected changes in mortality." Policy at 10.

There is no dispute that the factors listed in the COI Rates provision are characteristics commonly understood and used within the life insurance industry, including by State Farm, to

determine the mortality expectations for an insured, *i.e.*, the risk that the insured will die, thus triggering the insurer's obligation to pay the policy's death benefit. Witt Dec., ¶¶ 29-31; *id.* at Ex. F (Phipps Tr.), 24:24-25:9; *id.* at Ex. E (Streily Tr.), 155:19-158:22, 159:6-160:20, 196:6-197:23; *see also Vogt v. State Farm Life Ins. Co.*, No. 2:16–cv–04170–NKL, 2018 WL 1747336, at *2 (W.D. Mo. Apr. 10, 2018) (recognizing that age, sex, and rate class are mortality factors), *aff'd*, 963 F.3d 753, 761 (8th Cir. 2020) ("These enumerated factors are so-called 'mortality factors' because they relate to a policyholder's mortality risk, which allows the insurer to determine the projected mortality estimate of a policyholder based on his specific circumstances."), *cert. denied*, 141 S. Ct. 2551 (Apr. 19, 2021); *Alleman v. State Farm Life Ins. Co.*, 334 F. App'x 470, 472 (3d Cir. 2009) (noting that age and sex are "mortality factors"); *In re Conseco Life Ins. Co. Life Trend Ins. Mktg. & Sales Practice Litig.*, 920 F. Supp. 2d 1050, 1061 (N.D. Cal. 2013), vacated pursuant to settlement, 2013 WL 10349975 (N.D. Cal. Nov. 8, 2013) ("Because age and sex are the guiding factors in the lifespan of a person, a layperson would ordinarily attach the rates to mortality.").

There is also no dispute that State Farm determined rates from only the listed mortality factors and then inflated those rates with undisclosed, non-mortality profit and expense loads, and used the inflated rates to determine policy owners' COI Charges. Witt Dec., ¶¶ 29-40; *id.* at Ex. E (Streily Tr.), 151:23-152:15, 160:15-20; *id.* at Ex. I (Holzbauer Tr.), 145:15-19; *see Vogt*, Dkt. 335; Witt Dec., Ex. G (New Jersey Actuarial Memorandum) at 5; *id.* at Ex. E (Streily Tr.), 144:20-24; 224:6-18 (admitting that "pricing mortality … was used to determine a cost of insurance rate, and that the cost of insurance rate was then loaded for expenses and profit," and that "expenses and profit" are not considered "to be mortality related"); *see also id.* at ¶¶ 41-45.

Plaintiff alleges State Farm's inclusion of non-mortality profit and expense loads in the COI Rates breached the Policy in two ways. First, Plaintiff alleges State Farm violates the Policy's

COI Rates provision, which requires State Farm to determine COI Rates using only the disclosed mortality factors (Count I). Second, Plaintiff alleges State Farm violates the $5.00 monthly Expense Charge provision, which limits State Farm to $5.00 in monthly expense deductions (Count II). Plaintiff further asserts that State Farm converts his and other policy owners' money by improperly diverting it from their Account Values without authorization, thus depriving policy owners of their funds (Count III). Plaintiff also asserts claims for State Farm's breach of the duty of good faith and fair dealing (Count IV), under the Texas Insurance Code and Deceptive Trade Practice Act for the same conduct (Counts V and VI), and seeks a declaratory judgment as to State Farm's obligations under the Policy and an associated injunction to prohibit State Farm from continuing to assess inflated COI Charges (Count VII).

**B.**      **The Magistrate Judge's Report and Recommendation**

State Farm moved for summary judgment on each of Plaintiff's claims, contending the Policy should be interpreted to permit State Farm to include non-mortality profit and expense loads in the Policy's COI Rates. Dkt. 105. The Magistrate Judge issued a detailed Report and Recommendation containing extensive analysis rejecting State Farm's interpretation of the Policy as the only reasonable one. The Magistrate Judge thus recommended that State Farm's motion for summary judgment be denied as to Plaintiff's claims for breach of contract. R&R at 6-24. However, the Magistrate Judge recommended that State Farm's motion be granted as to Plaintiff's conversion claim. *Id.* at 24-28. The Magistrate Judge first correctly rejected State Farm's argument that policy owners' money held by State Farm in their Account Values cannot be the subject of a conversion claim under Texas law. The Magistrate Judge recognized that the money at issue is Plaintiff's property that he delivered to State Farm for safekeeping in his Account Value for his and the policy beneficiary's benefit, with instructions for State Farm's use of the money as set

4

forth in the Policy. *Id.* at 26. The Magistrate Judge further recognized that Plaintiff presented a damages model identifying the specific funds converted. Thus, the Magistrate Judge concluded Plaintiff could "theoretically bring a claim for conversion regarding the misappropriation of the funds in his Account Value, even though the claim concerns the conversion of money." *Id.*

Next, the Magistrate Judge considered the interplay between Plaintiff's breach of contract and conversion claims. *Id.* at 27-28. Even though the Magistrate Judge assumed State Farm had a duty in tort to not take money from Plaintiff's Account Value without authorization that was independent from its contractual duties, the Magistrate Judge concluded that Plaintiff's conversion claim was barred by the economic loss doctrine, reasoning that Plaintiff had not identified any injury or loss separate and apart from the economic loss flowing from the alleged breach of contract. *Id.* at 27. The Magistrate Judge thus recommended that this Court grant State Farm's motion for summary judgment on Plaintiff's conversion claim.

The Magistrate Judge recommended summary judgment be denied on Plaintiff's remaining claims for breach of the duty of good faith and fair dealing, violation of the Texas Insurance Code and DTPA, and for declaratory judgment. *Id.* at 28-30. The Magistrate Judge rejected State Farm's contention that Plaintiff is improperly "attempting to shoehorn a breach of contract action into a statutory misrepresentation case," which the Magistrate Judge stated was similar to its attack on Plaintiff's conversion claim, *id.* at 29, concluding "State Farm's own summary judgment evidence" showed State Farm could be liable for statutory misrepresentation for describing the COI Charges as "mortality charges" in its illustrations provided to policy owners, *id.* at 30. The Magistrate Judge also concluded that State Farm was not entitled to summary judgment on its statute of limitations defense. *Id.* at 30-35.

## ARGUMENT

Plaintiff contends State Farm's conduct of misappropriating Plaintiff's money from his Account Value and depriving Plaintiff of those funds effectuated *both* a breach of the Policy *and* a conversion. The Magistrate Judge engaged in several steps of analysis on this claim; each layer of analysis was correct until the last. The Magistrate Judge recognized Plaintiff could establish each of the elements of his conversion claim, concluding that Plaintiff could show that the money in Plaintiff's Account Value was the proper subject of a claim for conversion because (1) it was Plaintiff's property, (2) Plaintiff delivered it to State Farm for his and his beneficiary's benefit for its safekeeping, (3) State Farm deducted and misappropriated portions of those funds in contravention of the terms of the Policy, and (4) Plaintiff presents a damages model that identifies the specific funds converted. R&R at 25-26. However, the Magistrate Judge concluded that Plaintiff's conversion claim is barred by the economic loss doctrine because, even if State Farm has an independent duty in tort to not misappropriate Plaintiff's money, Plaintiff sought the same damages for his conversion claim as his breach of contract claim. *Id.* at 27. This analysis was error and should be rejected by this Court on its *de novo* review. *See Davidson v. Georgia-Pac., L.L.C.*, 819 F.3d 758, 762 (5th Cir. 2016) (district court reviews magistrate judge's recommendation as to summary judgment *de novo*).

> **A.    The Economic Loss Doctrine Does Not Apply to Intentional Misappropriations In Violation of a Contract, As Compared to the Failure to Pay as Promised in a Contract.**

As an initial matter, while State Farm argued to the Magistrate Judge that "it is black-letter law [that] a plaintiff cannot pursue in tort . . . claims that in substance duplicate a breach of contract" (Dkt. 105 at 3), black letter Texas law is directly the opposite as it relates to claims for the intentional tort of conversion where money is misappropriated contrary to an agreement between the parties. In such circumstances, "Texas law imposes no limitation on bringing both

conversion and breach of contract claims based on a single set of facts and a single injury, nor is there a requirement that the damages stemming from such claims be separate and distinct." *SPP SWD Burns Ranch, LLC v. Kent*, No. 5:14-CV-88, 2015 WL 12841097, at *3 (S.D. Tex. Jan. 8, 2015) (citing *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Care Flight Air Ambulance Serv., Inc.*, 18 F.3d 323, 327-28 (5th Cir. 1994) (collecting cases)) (emphasis added).

Conversely, "the Texas Supreme Court has indicated that the economic loss rule primarily applies to 'actions for unintentional torts'" such as those alleging negligent performance of a contractual duty. *Bates Energy Oil & Gas v. Complete Oilfield Servs.*, 361 F. Supp. 3d 633, 652 (W.D. Tex. 2019) (quoting *LAN/STV v. Martin K. Eby Constr. Co.*, 435 S.W.3d 234, 235 (Tex. 2014)). It is such unintentional tort claims arising from a contractual relationship that are only viable "if a party sustains an injury independent from those stemming from a contractual breach" even if there is an independent tort duty. *Id.* (citing, *inter alia*, *D.S.A., Inc. v. Hillsboro Indep. Sch. Dist.*, 973 S.W.2d 662, 663 (Tex. 1998)). Thus, "it is not enough to simply say that all tort claims are barred when the economic loss is the subject of a contract, as 'there is not one economic loss rule broadly applicable throughout the field of torts, but rather several more limited rules that govern recovery of economic losses in selected areas of the law.' The rule is not generally applicable, and its application depends on an analysis of its rationales in a particular situation." *Id.* (quoting *Sharyland Water Supply v. City of Alton*, 354 S.W.3d 407, 415 (Tex. 2011) and citing *McCaig v. Wells Fargo Bank, N.A.*, 788 F.3d 463, 474 (5th Cir. 2015)).

Thus, in *Bates Energy*, after conducting an extensive analysis of the economic loss doctrine as applied under Texas law, Judge Rodriguez of this Court held that the economic loss doctrine barred the plaintiff's claims for negligent misrepresentation arising out of the defendant's commingling of funds in an escrow account contrary to the parties' agreement, but conversely held

that the plaintiff's theft claim arising from the same facts was not barred by the economic loss doctrine. *Compare id.* at 652-55, *with id.* at 656-59.

As the *Bates Energy* court recognized, Texas courts distinguish conversion claims where money is *entrusted* pursuant to a contract and *misappropriated*—which are not barred by the economic loss doctrine, from conversion claims asserting that the plaintiff is entitled to *receive* money pursuant to a contract and the defendant fails to perform by *not paying* under the contract— which are barred by the economic loss doctrine. 361 F. Supp. 3d at 657-58.[1] Thus, in rejecting application of the economic loss doctrine to the plaintiff's theft claim, even though the defendant's commingling of funds violated the escrow agreement, the court reasoned:

> [Plaintiff] seeks lost monies entrusted under a contract, but the contract did not define how much money [defendant] was to provide [plaintiff], and [plaintiff's] theft claim is not that it did not receive the money it contractually bargained-for. Rather, the contract defined an escrow relationship, and because [plaintiff's] theft claim is not that it failed to receive its contractual expectancy, the claim is not barred by the economic loss rule.

*Id.* at 658; *see also SPP SWD Burns Ranch*, 2015 WL 12841097, at *3-4 (rejecting application of economic loss doctrine to claim for conversion for the defendant's alleged improper use of plaintiff's funds held in joint operating account pursuant to agreement).

So too here. First, the Magistrate Judge recognized that Plaintiff's conversion claim asserts "State Farm *intentionally* and substantially interfered with [his] property interest by deducting COI charges and expense charges from his Account Values in excess of amounts permitted by the terms of the Policy." R&R at 24 (emphasis added); *see, e.g.*, *Rhodes v. Bank of Am., N.A.*, No. EP-20-CV-281-KC, 2021 WL 3549160, at *4 (W.D. Tex. Feb. 10, 2021) (concluding "conversion is an

---

[1] The *Bates Energy* court recognized that Fifth Circuit authority on this issue has been conflicting and has "create[d] some uncertainty" but concluded that Texas state courts have clarified the distinction. 361 F. Supp. 3d at 657-58.

intentional tort under Texas law") (citing *City of Houston v. Petroleum Traders Corp*, 261 S.W.3d 350, 361 (Tex. App.—Houston [14th Dist.] 2008, no pet.)).[2] Second, Plaintiff seeks the return of his money entrusted to State Farm and improperly diverted. Plaintiff's claim is not that State Farm is contractually obligated to *pay* money to Plaintiff and Plaintiff did not *receive* the money he contractually bargained for. Instead, the Policy defines the parties' relationship as to Plaintiff's property right to the funds in the Account Value, and Plaintiff's claim is that State Farm improperly *took Plaintiff's property out of his Account Value*, depriving him of those funds. *See Bates Energy*, 361 F. Supp. 3d at 657-58. Where Plaintiff entrusted money to State Farm pursuant to the Policy and State Farm intentionally misappropriated Plaintiff's money contrary to its authority to handle Plaintiff's money, these facts bring Plaintiff's conversion claim out of the scope of the economic loss doctrine, as the *Bates Energy* court recognized.

The Magistrate Judge cited only two cases in her application of the economic loss doctrine to Plaintiff's conversion claim, comparing *ConocoPhillips Co. v. Koopmann*, 542 S.W.3d 643, 666-67 (Tex. App.—Corpus Christi 2016, pet. granted), where the court applied the economic loss doctrine to bar a conversion claim concerning failure to pay royalties under a lease agreement, because the loss was limited to the contractual benefit of the lease itself—the royalties, with *Montgomery Ward & Co. v. Scharrenbeck*, 204 S.W.2d 508, 510 (Tex. 1947), where the court

---

[2] While "*intent to do an act amounting to a conversion* of personal property is necessary in order to constitute a conversion, . . . *[w]rongful intent* to convert another's property is not an essential element of conversion," though such wrongful intent would be relevant to the issue of the defendant's liability for punitive damages. *McVea v. Verkins*, 587 S.W.2d 526, 531 (Tex. Civ. App.—Corpus Christi 1979, no writ) (citing 89 C.J.S. Trover & Conversion § 7; *Powell v. Forest Oil Corp.*, 392 S.W.2d 549 (Tex. Civ. App.—Texarkana 1965, no writ); 14 Tex. Jur. 2d, Conversion, § 3); *see generally* Kenneth W. Simons, A Restatement (Third) of Intentional Torts?, 48 Ariz. L. Rev. 1061, 1079-80 (2006) (The "doctrinal differences between intentional torts and torts of negligence all turn at least in part on the idea that intentional tortfeasors display a more serious degree or type of fault than do negligent tortfeasors.").

rejected the applicability of the economic loss doctrine where the plaintiff lost not only the contractual benefit of a working water heater, but also his entire home. R&R at 27. As the *Bates Energy* court's analysis as to the distinction between a misappropriation and a failure to pay shows, neither of these cases support the Magistrate Judge's conclusion in this case. *ConocoPhillips* involved the latter category of failing *to pay royalties* pursuant to a contract. Likewise, in *ConocoPhillips*, there was no independent duty to pay the royalties that existed outside the contract, unlike State Farm's duty to *not take money that does not belong to it*, which, as the Magistrate Judge correctly assumed, exists here regardless of the Policy. *Compare ConocoPhillips*, 542 S.W.3d at 666 (defendants' "conduct would give rise to liability only because failing to pay royalties breaches the parties' lease agreement, not because there exists some general duty in tort law to pay royalties independent of a contractual duty to do so"), *with* R&R at 27 (assuming Plaintiff could establish State Farm had an independent duty not to appropriate Plaintiff's funds); *see also Vogt*, 2017 WL 1498073, at *2 (W.D. Mo. Apr. 26, 2017) (on same Policy, holding the plaintiff's "conversion claim arises from the independent duty not to appropriate another's funds, a duty that exists regardless of and independently of [the plaintiff's] life insurance contract with State Farm").

Indeed, "Texas courts have specifically recognized that because the law of conversion and bailment imposes legal duties outside any contractual agreements, separate causes of action for breach of contract and conversion may arise from the same facts." *Nat'l Union*, 18 F.3d at 326; *see also Bates Energy*, 361 F. Supp. 3d at 652 ("Contractual relationships may create duties under both contract and tort law.") (citing *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986)). Thus, while the extent of State Farm's authority to take Plaintiff's money is provided by the Policy, "whatever the contractual terms, the law of conversion . . . imposed an independent

duty on Defendant[] with respect to those funds." *SPP SWD Burns Ranch*, 2015 WL 12841097, at

*3. Nor is there any language in the Policy "abrogating [State Farm's] tort liability" or "duties" in

tort. *Id.* at *4; *Vogt*, 2017 WL 1498073, at *3 ("Vogt in no way 'bargained away' his right to not

have his money converted."). Accordingly, under similar circumstances, several courts have

recognized an independent duty in tort to not take another's property without authorization, even

if the extent of authorization is provided by the contract. *See* Dkt. 116 (Plaintiff's Summary

Judgment Opposition) at 31 (citing *Vogt*, 2017 WL 1498073, at *2; *Taylor v. Midland Nat'l Life

*Ins. Co.*, No. 4:16-cv-00140-SMR-HCA, 2016 WL 9454075, at *4-5 (S.D. Iowa July 29, 2016)

(evaluating breach of contract and conversion claims arising out of universal life insurer's account

deductions, concluding "the duty not to convert one's property is independent of contract")); *Cook*

*v. John Hancock Life Ins. Co. (U.S.A)*, No. 7:12-CV-00455, 2015 WL 178108, *20 (W.D. Va. Jan.

14, 2015) (also evaluating similar claims, concluding "the duty not to convert others' property is

a common law duty owed by all, and would exist even in the absence of a contract between the

parties."). Thus, where the Magistrate Judge correctly assumed State Farm had an independent

duty in tort to not take Plaintiff's money in excess of its authority, the Magistrate Judge's reliance

on *ConocoPhillips*, where the plaintiff's conversion claim was barred by the economic loss

doctrine because it asserted the failure to pay royalties pursuant to a contract for which there was

no independent tort duty to do so, was error.

The Magistrate Judge's reliance on *Montgomery Ward* as supporting her conclusion that

some additional damage beyond that sought under the contract must be established was also

misguided because that case involved a claim for negligent performance of a contract, which, as

explained above, is an unintentional tort with which the Texas economic loss doctrine primarily

concerns itself, and which requires a party to sustain "an injury independent from those stemming

from a contractual breach" even if an independent duty in tort exists. *Bates Energy*, 361 F. Supp. 3d at 652. The Magistrate Judge's broad application of the economic loss doctrine in this case, on the mistaken assumption that the same principles apply in all tort cases in which a contract claim is at issue and without considering the facts undergirding the claim, was an erroneous application of Texas law that should be rejected by this Court. *See id.* Notably, in rejecting State Farm's request for summary judgment on Plaintiff's statutory claims, the Magistrate Judge concluded Plaintiff had presented sufficient evidence that State Farm engaged in intentional misrepresentations related to its deductions of excessive COI Charges for non-mortality factors. R&R at 30. Texas law explicitly excludes claims sounding in fraud from the reach of the economic loss doctrine. *Formosa Plastics Corp. USA v. Presidio Engineers & Contractors, Inc.*, 960 S.W.2d 41, 45 (Tex. 1998). And, because the economic loss doctrine is not applied categorically to particular claims, and instead, the application of the doctrine must be considered under the particular circumstances of the case, the Magistrate Judge's rejection of State Farm's contention that Plaintiff's other claims were likewise precluded by his contract claims is further indication of an error in her analysis as to Plaintiff's conversion claim.

### B.    Plaintiff's Injury Resulting from State Farm's Conversions Is Categorically Distinct from that Resulting from Its Contract Breaches.

Even though the Magistrate Judge correctly assumed that State Farm had an independent duty in tort *and violated it*, the Magistrate Judge concluded Plaintiff's conversion claim still failed because Plaintiff had not "provided evidence that his injury stemming from the misappropriation of funds is distinct from his economic loss under the contract." *Id.* To the contrary, the *very nature* of the conversions at issue resulted in an *injury* distinct from that resulting from State Farm's breach of its contractual obligations. The injury resulting from State Farm's breach of the Policy is the "unauthorized use by [State Farm] of the funds in the [Account Value]." *SPP SWD Burns*

*Ranch*, 2015 WL 12841097, at *4. And, "[a]lthough the conversion claim is predicated in part on such unauthorized use, the *heart of the conversion injury relates to Plaintiffs' loss of control over the funds*." *Id.* (citing *Bradley v. McKinzie*, 226 S.W.2d 458, 460 (Tex. Civ. App.—Eastland 1950, no writ)) (emphasis added); *see also, e.g.*, *In McLeodUSA Telecomms. Servs., Inc. v. Qwest Corp.*, 469 F. Supp. 2d 677 (N.D. Iowa 2007) (considering claims for breach of contract and conversion, concluding "the right that has allegedly been violated is not merely a *contractual* right, but a *possessory* right in the property") (emphasis added). The Magistrate Judge recognized this very principle, stating "[t]he essence of a conversion claim is *not the actual taking of property* by the defendant but the *wrongful deprivation of property* from a person who is entitled to possession of the property." R&R at 25 (citing *Branham v. Prewitt*, 636 S.W.2d 507, 510 (Tex. App.—San Antonio 1982, writ ref'd n.r.e.)).

While the Magistrate Judge recognized the inherent distinction between the injury resulting from a conversion and that from a breach of contract, the Magistrate Judge appeared to improperly conflate the *remedy* Plaintiff seeks—money damages—with the nature of the *injury* suffered, and thus concluded that because Plaintiff sought the same *compensatory damages* for his conversion claim as his breach of contract claims, the *injury* was the same. R&R at 27. This was error. In assessing the injury arising from a tort in relation to a contract breach for purposes of evaluating the economic loss doctrine, "it is inconsequential that the *damages* for the two claims may be essentially the same." *SPP SWD Burns Ranch*, 2015 WL 12841097, at *4 (citing *Nat'l Union*, 18 F.3d at 327-28) (emphasis added); *id.* at *3 ("Texas law imposes no limitation on bringing both conversion and breach of contract claims based on a single set of facts and a single injury, *nor is there a requirement that the damages stemming from such claims be separate and distinct*."); *see also MSMTBR, Inc v. Mid–Atl. Fin. Co.*, No. 01-12-00501-CV, 2014 WL 3697736, *5 (Tex.

App.—Houston [1st Dist.] July 24, 2014, no pet.) (holding that injury for theft was independent from injury for breach of contract in part on the basis that "nothing in the Agreement contemplate[d] complete immunity from unlawful or wrongful appropriation").

Nevertheless, while Plaintiff seeks the same compensatory damages for his breach of contract and conversion claims, Plaintiff also seeks punitive damages for State Farm's conversions—a point the Magistrate Judge also recognized. R&R at 24 ("Page's conversion claim provides a vehicle for obtaining punitive damages on behalf of the class.") (citing Plaintiff's First Amended Complaint, Dkt. 72, at ¶ 113). The requested punitive damages "are damages independent of and generally unavailable for a breach of contract alone" for purposes of determining the applicability of the economic loss doctrine. *SPP SWD Burns Ranch*, 2015 WL 12841097, at *4 (citing *MSMTBR*, 2014 WL 3697736, at *5 (holding that injury for theft was independent from injury for breach of contract in part because the plaintiff sought and was awarded penalties under the Theft Liability Act which "arise from statute and common law" and "are independent of any benefit-of-the-bargain damages under the [contract]"); *Vickery v. Tex. Carpet Co., Inc.*, 792 S.W.2d 759, 763 (Tex. App.—Houston [14th Dist.] 1990, writ denied) ("A showing of a willful and knowing conversion, or a conversion in reckless disregard of the rights of others, is sufficient to sustain an assessment of exemplary damages."); *Life Ins. Co. of Virginia v. Murray Inv. Co.*, 646 F.2d 224, 228 (5th Cir. 1981) ("In Texas the general rule is that a breach of contract will not give rise to a recovery of exemplary damages," but "if the act complained of constitutes both a breach of contract and a willful tort, exemplary damages are recoverable.")); *see also Bates Energy*, 361 F. Supp. 3d at 657 (citing approvingly to *SPP SWD Burns Ranch*, stating although "the plaintiff suffered the same injury of unauthorized use of the funds, the conversion claim was

14

also predicated on the plaintiff's loss of control over the funds, and the plaintiff sought exemplary damages, which are unavailable for breach of contract").

The Magistrate Judge erred in failing to consider not only the difference in the nature of injury sustained, but also the additional form of damages Plaintiff seeks, in concluding Plaintiff had not identified any injury or loss resulting from State Farm's conversions different from those resulting from its breaches of contract. R&R at 27. Thus, where the Magistrate Judge concluded Plaintiff could establish each of the elements of his conversion claim and the only stated impediment to the claim was the fact that Plaintiff also had asserted and could establish State Farm had breached the Policy, the Magistrate Judge should have recommended that both claims be allowed to proceed.[3] This is particularly so where the claims do not necessarily rise or fall together. For example, even if it were ultimately determined that the Policy does not *expressly prohibit* State Farm from including profit and expense loads in the COI Rates, that would not negate a finding that nothing in the Policy provides State Farm with the *authority* to deduct profit and expense loads through the COI Charge to support a verdict in Plaintiff's favor for conversion. *See Vogt*, 2018 WL 1747336, at *8 (denying State Farm's motion for summary judgment on plaintiff's conversion claim, stating "[t]o the extent that State Farm deducted money for purported COI charges that in fact were *not expressly authorized* by the Policy, it diverted for an unauthorized purpose funds that were placed in its custody for a different purpose, and it can be held liable for conversion") (emphasis added), *aff'd*, 963 F.3d at 774. At a minimum, the Magistrate Judge should have allowed both sets of claims to proceed in the alternative. *See* Fed. R. Civ. P. 8(d)(2) (permitting a party to

---

[3] Plaintiff will not be entitled to duplicative damages if he prevails on both claims. For example, in *Vogt*, the jury entered verdicts in favor of the Missouri class for both breach of contract and conversion and awarded the same compensatory damages for both claims, entitling the Missouri class to that amount for both claims, not for each claim. *See Vogt*, Dkt. 358 (Jury Verdict).

"set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones"); *Eagle Oil & Gas Co. v. Shale Expl., LLC*, 549 S.W.3d 256, 268 (Tex. App.—Houston [1st Dist.] 2018, pet. dism'd) ("Even if the matter in dispute is the subject of a contract, *a party may elect a recovery in tort* if the duty breached stands independent from the contractual undertaking, and the alleged damages are not solely the result of a bargained-for contractual benefit.").

*     *     *

Thus, the Magistrate Judge erred in her analysis of the application of the economic loss doctrine to Plaintiff's conversion claim. This Court should reject the Magistrate Judge's recommendation that summary judgment be entered against Plaintiff on his conversion claim.

## **CONCLUSION**

For the foregoing reasons, this Court should decline the Magistrate Judge's recommendation that summary judgment be entered on Plaintiff's conversion claim and enter an order denying State Farm's motion for summary judgment in its entirety.

Dated: April 7, 2022

Respectfully Submitted,

STUEVE SIEGEL HANSON LLP

*/s/ Norman E. Siegel*
Norman E. Siegel (*pro hac vice*)
siegel@stuevesiegel.com
Lindsay Todd Perkins (*pro hac vice*)
perkins@stuevesiegel.com
Ethan M. Lange (Tex. Bar No. 24064150)
lange@stuevesiegel.com
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Tel: 816-714-7100
Fax: 816-714-7101

16

John J. Schirger *(pro hac vice)*
jschirger@millerschirger.com
Matthew W. Lytle *(pro hac vice)*
mlytle@millerschirger.com
Joseph M. Feierabend *(pro hac vice)*
jfeierabend@millerschirger.com
MILLER SCHIRGER, LLC
4520 Main Street, Suite 1570
Kansas City, Missouri 64111
Tel: 816-561-6500
Fax: 816-561-6501

James T. Clancy (Tex. Bar No. 00795292)
jclancy@branscomblaw.com
BRANSCOMB, PLLC
802 N. Carancahua, Suite 1900
Corpus Christi, Texas 78401-0036
Tel: (361) 886-3800
Fax: (361) 886-3805

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on April 7, 2022, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Norman E. Siegel*
Attorney for Plaintiffs

17